## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AARON HANSEN and** | ) | |
| | ) | |
| **JESSICA HANSEN,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | **1:07-cv-01107  PLF - JMF** |
| | ) | |
| **COUNTRYWIDE HOME LOANS, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION FOR SUMMARY JUDGMENT

Defendant Countrywide Home Loans, Inc. ("Countrywide"), by counsel, respectfully moves the Court to enter summary judgment, pursuant to Fed. R. Civ. P. 56(b), in favor of Countrywide, on the ground that there is no genuine issue of material fact and defendant is entitled to judgment as a matter of law.  To support this motion, Countrywide states:

1.      The Real Estate Purchase Addendum ("Addendum"), agreed to and signed by Plaintiffs and Countrywide, clearly recognized and expressed the possibility that Countrywide might not be able to deliver clear title to the real property located at 521 Quintana Place, N.W., Washington, D.C. 20011 (the "Property").  The Addendum recited that the Property had been in foreclosure.

2.      In the event that Countrywide was unable to secure clear title to the Property, the clear terms of the Addendum precluded the Hansens from seeking any monetary or equitable

1

remedy other than the return of their earnest money deposit. By signing the Addendum (and initialing every page), the Hansens agreed to these terms.

3.    When Countrywide, in fact, became unable to secure clear title to the Property, the Hansens refused to seek the return of their earnest money deposit as required by the Addendum. Instead, the Hansens sought monetary and equitable relief, including recording a lis pendens on the Property, in violation of the Addendum.

WHEREFORE, for these reasons, and as further explained in the attached Statement of Points and Authorities in Support of Countrywide Home Loans' Motion for Summary Judgment, fully incorporated herein by reference, Countrywide respectfully requests that this Court grant its motion for summary judgment, dismiss this cause with prejudice, and order the Hansens to withdraw their lis pendens.

Respectfully submitted,
Countrywide Home Loans, Inc.

By _____
Counsel

Mark B. Bierbower (D.C. Bar #320861)
Dianne M. Keppler (D.C. Bar #468580)
HUNTON & WILLIAMS, LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
(202) 955-1500
(202) 778-2201 (fax)
*Counsel for Defendant Countrywide Home Loans, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 11th day of December, 2007, copies of the foregoing **MOTION FOR SUMMARY JUDGMENT, STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTRYWIDE HOME LOANS, INC.'S MOTION FOR SUMMARY JUDGMENT,** and the proposed **ORDER GRANTING COUNTRYWIDE HOME LOANS, INC.'S MOTION FOR SUMMARY JUDGMENT** were served via electronic and U.S. mail upon the following:

Scott H. Rome
Andrew J. Kline
LAW OFFICES OF ANDREW J. KLINE
1225 19th Street, N.W.
Washington, D.C.  20036
*Counsel for Plaintiffs*

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AARON HANSEN and | ) | |
| | ) | |
| JESSICA HANSEN, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | 1:07-cv-01107  PLF - JMF |
| | ) | |
| COUNTRYWIDE HOME LOANS, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
COUNTRYWIDE HOME LOANS, INC.'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Defendant Countrywide Home Loans, Inc. ("Countrywide"), by counsel and pursuant to

Fed. R. Civ. P. 56, L.C.v.R. 7, and L.C.v.R. 56.1, submits this statement of points and authorities

in support of its Motion for Summary Judgment. Plaintiffs Aaron Hansen and Jessica Hansen

(collectively the "Hansens") filed the instant Complaint in the District of Columbia Superior

Court against Countrywide seeking monetary and equitable relief under the District of Columbia

Consumer Protection Procedures Act, specific performance under a claim of breach of contract,

and monetary relief under a claim of negligent misrepresentation. Countrywide removed the

case to this Court pursuant to 28 U.S.C. § 1446(d).

The undisputed facts demonstrate that the Hansens entered into an agreement to purchase

a foreclosure property. Further, they knowingly and voluntarily entered into a form contract,

1

regularly used by Countrywide for sales of property purchased out of foreclosure, which expressly acknowledges the possibility of complications with title that may arise with a property being purchased following a foreclosure. By entering into this contract, the Hansens agreed to relinquish certain rights in the event that Countrywide could not provide clear title to the property. The claims brought by the Hansens in the instant action are entirely predicated on the rights the Hansens agreed to relinquish. Further, the Hansens' claim that Countrywide violated the District of Columbia Consumer Protection Procedures Act is not supported by the plain terms of the contract or by the law. Accordingly, summary judgment is appropriate.

## II. STATEMENT OF UNDISPUTED FACTS

1.      On February 20, 2007, Countrywide and the Hansens entered into a Regional Sales Contract ("Contract") (attached as Exhibit A) and Real Estate Purchase Addendum ("Addendum") (attached as Exhibit B), whereby the Hansens agreed to purchase and Countrywide agreed to sell real property located at 521 Quintana Place, N.W., Washington, D.C. 20011 ("Property"). The Property came into the possession of Countrywide as the result of a foreclosure sale, and Countrywide fully disclosed this fact to the Hansens. Ex. B, Addendum at 1.

2.      Because of issues that may arise with securing title on foreclosed properties, Countrywide's standard form addendum for the resale of such properties includes a number of prominently displayed terms which limit the remedies available to purchasers in the event that Countrywide is unable to provide clear title to the properties. *See* Affidavit of Mari Parsamyan (attached as Exhibit C) ¶ 6. The Addendum signed by the Hansens was such a document and contained such limitations on remedies. *See* Ex. B, Addendum. The Hansens signed both the

2

Addendum and the Contract and initialed each page of the Contract and Addendum, including

those pages containing the limitations. *See* Exs. A and B.

3.     The first page of the Contract contains a stamped statement reading "SUBJECT

TO THE TERMS AND CONDITIONS OF CHL'S REAL ESTATE PURCHASE ADDENDUM

ATTACHED HERE TO." Ex. A, Contract at 1 (emphasis in original). The first page of the

Addendum reads, "**BUYER UNDERSTANDS AND ACKNOWLEDGES THAT SELLER**

**HAS ACQUIRED THE PROPERTY THROUGH FORECLOSURE,**" making clear this was

a foreclosure property. Ex. B, Addendum at 1 (emphasis in the original). Further, the page reads

as follows:

> **SELLER'S LIABILITY AND BUYER'S SOLE AND EXCLUSIVE**
> **REMEDY IN ALL CIRCUMSTANCES AND FOR ALL CLAIMS**
> **. . . ARISING OUT OF OR RELATING IN ANY WAY TO THE**
> **AGREEMENT OR THE SALE OF THE PROPERTY TO BUYER**
> **INCLUDING, BUT NOT LIMITED TO, SELLER'S BREACH OR**
> **TERMINATION OF THE AGREEMENT, . . . SELLER'S TITLE**
> **TO THE PROPERTY, . . . ANY COST OR EXPENSE INCURRED**
> **BY BUYER IN SELLING A CURRENT OR PRIOR RESIDENCE**
> **OR TERMINATING A LEASE ON A CURRENT OR PRIOR**
> **RESIDENCE,          OBTAINING          OTHER          LIVING**
> **ACCOMMODATIONS, MOVING, STORAGE, OR RELOCATION**
> **EXPENSES, OR ANY OTHER COSTS OR EXPENSES INCURRED**
> **BY BUYER IN CONNECTION WITH THE AGREEMENT SHALL**
> **BE LIMITED TO NO MORE THAN:**
>
> **(A)     A RETURN OF BUYER'S EARNEST MONEY DEPOSIT IF**
> **THE SALE TO BUYER DOES NOT CLOSE . . . BUYER AGREES**
> **THAT SELLER SHALL NOT BE LIABLE TO BUYER UNDER**
> **ANY          CIRCUMSTANCES          FOR          ANY          SPECIAL,**
> **CONSEQUENTIAL, OR PUNITIVE DAMAGES WHATSOEVER,**
> **WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE**
> **AND STRICT LIABILITY), OR ANY OTHER LEGAL OR**
> **EQUITABLE PRINCIPLE, THEORY, OR CAUSE OF ACTION**
> **ARISING OUT OF OR RELATED IN ANY WAY TO ANY CLAIM,**
> **INCLUDING, BUT NOT LIMITED TO, THE AFOREMENTIONED**
> **CLAUSES.**

Ex. B, Addendum at 1-2 (emphasis in original).

3

4.      In addition to the limitations expressed above, the Addendum also contains

additional express limitations to the remedies available to a purchaser.  It reads as follows:

> **THE BUYER FURTHER WAIVES THE FOLLOWING, TO THE
> FULLEST EXTENT PERMITTED BY THE LAW:**
>
> **(A) ALL RIGHTS TO FILE AND MAINTAIN AN ACTION
> AGAINST THE SELLER FOR SPECIFIC PERFORMANCE;**
>
> **(B) RIGHT TO RECORD A LIS PENDENS AGAINST THE
> PROPERTY OR TO RECORD THE AGREEMENT OR A
> MEMORANDUM THEREOF IN THE REAL PROPERTY
> RECORDS; . . .**
>
> **(E) ANY REMEDY OF ANY KIND THAT THE BUYER MIGHT
> OTHERWISE BE ENTITLED TO AT LAW OR EQUITY
> (INCLUDING, BUT NOT LIMITED TO, RESCISSION OF THE
> AGREEMENT), EXCEPT AS EXPRESSLY PROVIDED IN THIS
> ADDENDUM;**
>
> **(F) <u>ANY RIGHT TO A TRIAL BY JURY IN ANY LITIGATION
> ARISING FROM OR RELATED IN ANY WAY TO THE
> AGREEMENT.</u>**

Ex. B, Addendum at 2 (bold and underline emphasis in original).

5.      Paragraph 22 of the Addendum, entitled "<u>Defects in Title</u>" (underline emphasis in

original), reads, "[i]n the event the Seller is not able to (A) make the title insurable or correct all

title problems, or (B) obtain title insurance for the property from a reputable title insurance

company, either Party may terminate the Agreement and any earnest money deposit will be

returned to the Buyer *as the Buyer's sole remedy at law or equity*."  Ex. B, Addendum at 10-11

(italicized emphasis added).

6.      Paragraph 24 of the Addendum, entitled "<u>Conditions to the Seller's Performance</u>"

(underline emphasis in original), reads, in relevant part,

> The Seller shall have the right, at the Seller's sole discretion, to extend the
> Closing Date or the terminate the Agreement if: . . . (b)  the Seller

4

> determines that it is unable or it is economically not feasible to convey good and marketable title to the Property insurable by a reputable title insurance company at regular rates . . . In the event the Seller elects to terminate the Agreement as a result of . . . (b) . . . above, the Seller shall return the Buyer's earnest money deposit and the parties shall have no further obligation under the Agreement.

Ex. B, Addendum at 11-12.

7.    The Hansens were represented by a real estate broker at the time of their signing of both the Contract and the Addendum. *See* Ex. B, Addendum at 15; Ex. A, Contract at 10. Further, by signing the Addendum, the Hansens affirmed that they had the opportunity to consult with legal counsel concerning the terms of the Addendum. Ex. B, Addendum ¶ 41.

## III. <u>LEGAL STANDARD</u>

A motion for summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to survive a summary judgment motion, the non-moving party must raise "more than a mere scintilla of evidence in its favor" and may not simply rely on unsupported assertions, conclusory allegations, or mere suspicions. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Howard v. District of Columbia Public Schools*, 501 F. Supp. 2d 116, 122 (D.D.C. 2007); *Hopps v. Washington Metropolitan Area Transit Authority*, 480 F. Supp. 2d 243, 249-50 (D.D.C. 2007).

# IV. ARGUMENT

**A.     Countrywide is Entitled to Judgment on Count One As a Matter of Law Because the Addendum Does Not Violate the Consumer Protection Procedures Act**

The Hansens allege violations of Sections 28-3904(a), (e), (f), and (r) of the District of Columbia Consumer Protection Procedures Act ("Act"). Specifically, they aver that Countrywide misrepresented that it possessed title to the Property, that it failed to disclose that it did not possess title to the Property, that it falsely represented that it was the owner and seller of the Property, and that Countrywide knew the Hansens would be unable to enjoy the substantial benefits of the Property. Compl. ¶¶ 27-36. Further, the Hansens claim that the terms of the Addendum were *per se* unconscionable. Compl. ¶¶ 34-35.

**(i)     The Addendum contains no material misrepresentations, and Countrywide fully and conspicuously disclosed issues that may arise with respect to title for the Property.**

Sections 28-3904(a), (e), and (f) of the Act make it unlawful either to "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have," "misrepresent as to a material fact which has a tendency to mislead," or "fail to state a material fact if such failure tends to mislead." D.C. Code § 28-3904(a), (e), and (f). The Hansens allege that Countrywide violated these provisions by representing that it owned the Property and would convey possession to the Hansens, and failed to disclose that it did not gain proper legal title to the Property following foreclosure. *See* Compl. ¶¶ 27-28. However, the plain and conspicuous terms of the Addendum represented that the exact ***opposite*** of this may be the case.

The paragraph entitled "Defects in Title" made clear that title issues might arise, reading, "[i]n the event the Seller is not able to (A) make the title insurable or correct all title problems, or (B) obtain title insurance for the property from a reputable title insurance company, either Party

6

may terminate the Agreement and any earnest money deposit will be returned to the Buyer as the Buyer's sole remedy at law or equity." Ex. B, Addendum ¶ 22. The Addendum also provided that Countrywide could elect to terminate the sales agreement if it determined it was "unable or it [was] economically not feasible to convey good and marketable title to the Property insurable by a reputable title insurance company at regular rates." Ex. B, Addendum ¶ 24. Furthermore, the first page of the Addendum, in bold capitalized letters, expressly limited the Hansens' remedies **"FOR ALL CLAIMS . . . ARISING OUT OF OR RELATING IN ANY WAY TO . . . SELLER'S TITLE TO THE PROPERTY,"** emphasizing up front in the agreement that Countrywide may not, in fact, have possessed clear title and putting the Hansens on notice of their remedies in this circumstance. Ex. B, Addendum at 1 (bold emphasis in original). Thus, the Addendum clearly recognized and expressed, and the Hansens signaled their understanding of, the possibility that Countrywide might have been unable to deliver clear title to the Property.

Accordingly, there can be no violation of subsections (a), (e), and (f) of the Act, because all of these subsections would require either a false representation of title, which the Addendum did not do, or the knowledge that the Hansens would rely on such a representation, a situation that the Addendum was designed to avoid. Because of the Addendum's clear and express qualifications regarding the Property's title, and the Hansens' recognition of these qualifications, Countrywide cannot be found liable under these subsections of the Act as a matter of law.

    **(ii)**      **The terms of the Addendum are not unconscionable.**

The Hansens also allege that the Addendum is unconscionable, in violation of Section 28-3904(r) of the Act. *See* Compl. ¶ 33. Specifically, they contend that the Addendum violates subsection (r) because it "contains no mutuality of obligation," is "illusory," and "in reality bestows no benefit on the Purchaser whatsoever." Compl. ¶¶ 34-35.

7

Subsection (r) of the Act makes it unlawful to

> make or enforce unconscionable terms or provisions of sales or leases; in applying this subsection, consideration shall be given to the following, and other factors:
>
> (1) knowledge by the person at the time credit sales are consummated that there was no reasonable probability of payment in full of the obligation by the consumer;
>
> (2) knowledge by the person at the time of the sale or lease of the inability of the consumer to receive substantial benefits from the property or services sold or leased;
>
> (3) gross disparity between the price of the property or services sold or leased and the value of the property or services measured by the price at which similar property or services are readily obtainable in transactions by like buyers or lessees;
>
> (4) that the person contracted for or received separate charges for insurance with respect to credit sales with the effect of making the sales, considered as a whole, unconscionable; and
>
> (5) that the person has knowingly taken advantage of the inability of the consumer reasonably to protect his interests by reasons of age, physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement, or similar factors;

D.C. Code § 28-3904(r) (2003).

D.C. common law informs the unconscionability analysis further. In *Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d. 94 (D.D.C. 2004), this Court held that, when determining whether a contract is unconscionable, "[w]hat is important is [whether] plaintiff[s] had the *opportunity* to read and understand the Agreement before [they] signed it; that [they] 'may not have comprehended the implications of [their] decision is irrelevant as to whether the agreement is valid'." *Id.* at 102 (internal citations omitted) (emphasis in original). In *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965), the court emphasized in its analysis whether the contract at issue had important terms hidden in a maze of fine print or whether the important terms were minimized by deceptive sales practices. *Id.* at 449. The test is "whether

the terms are so extreme as to appear unconscionable according to the mores and business practices of the time and place." *Id.* at 450 (citations omitted).

With respect to the statutory factors under subsection (r)(2), Countrywide did not know at the time of the sale that it did not have clear title to the Property. *See* Affidavit of Mari Parsamyan ¶ 7. In any event, the Addendum repeatedly disclosed that there may be issues with title, as discussed fully above. Further, subsections (r)(1), (3), and (4) are simply inapposite to the Hansens' allegations. Finally, with respect to subsection (r)(5), the Hansens do not allege that Countrywide took advantage of an inability of the Hansens to protect their interests in any way. The fact that the Hansens had a buyer's agent representing them and confirmed that they had the opportunity to confer with an attorney before entering into the agreement precludes any argument that they were unable to protect their interests or that they did not have "the *opportunity* to read and understand the Agreement" before signing it. *See Booker* at 102. That they may not have comprehended the implications of their decision is irrelevant as to whether the agreement is valid. *Id.* Further, conspicuous, repeated disclosures throughout the Addendum demonstrate that terms concerning the possibility of title issues arising and the remedies flowing therefrom were not hidden in a maze of fine print or minimized by deceptive sales practices. *See Williams v. Walker-Thomas Furniture Co.*, 350 F.2d at 449. Finally, the terms of the Addendum were in no way "extreme" according to mores and business practices. *Id.* D.C. statutes expressly allow for limitations on liability like those in the Addendum. For example, the District of Columbia's Uniform Commercial Code allows damages to be limited to a return of the goods and repayment of the price, and consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. *See* D.C. Code § 28:2-719(1). The D.C. U.C.C. provides that consequential damages for personal injury are prima facie unconscionable, but

limitation of damages where the loss is commercial is not. *See* D.C. Code § 28:2-719(3). These statutory provisions demonstrate that limiting the Hansen's remedy to a return of their deposit is not "extreme" according to current mores and business practices.

For these reasons, the Addendum is not unconscionable, and Countrywide is entitled to judgment on this count as a matter of law.

**B.    Countrywide is Entitled to Judgment on Count Two As a Matter of Law Because Countrywide Did Not Breach the Contract**

It is black letter law that when a contract is clear and unambiguous, a court should interpret the contract terms as a matter of law. *Miller & Long Co., Inc. v. John J. Kirlin, Inc.*, 908 A.2d 1158, 1160 (D.C. 2006). The parol evidence rule bars the introduction of extrinsic evidence to contradict the terms of an unambiguous contract. *See District-Realty Title Ins. Corp. v. Ensmann*, 767 F.2d 1018, 1022 (D.C. Cir. 1985); *Fed. Dep't Insurance Corp. v. Interdonato*, 988 F.Supp. 1, 4 (D.D.C. 1997); *Apartment Specialists, Inc. v. Purolator Courier Corp.*, 628 F.Supp. 55, 58 (D.D.C. 1986). The Hansens claim that the Addendum wrongly states Countrywide is the owner and authorized seller of the Property and that Countrywide is in breach of the contract because it is actually not the owner and seller of the Property. *See* Compl. ¶ 39. In fact, what the Addendum clearly and repeatedly states is that Countrywide may not be able to deliver clear title to the Property and the Hansens' remedy in that circumstance. *See* Ex. B, Addendum at 1-3, ¶¶ 22, 24. Indeed, providing clear title was a condition of Countrywide's obligation to perform. *See id.*, ¶ 24. Accordingly, under the clear terms of the Addendum, Countrywide never agreed to sell the Property if it did not have clear title to the Property and, therefore, did not breach the contract by failing to close on the sale due to problems with the Property's title.

The Hansens seek specific performance of the Contract or, in the alternative, monetary damages. *See* Compl. at 7, 8, and 10. Both of these remedies are expressly prohibited by the Addendum. As noted above, the Addendum forbids the Hansens from seeking specific performance of the contract and repeatedly states that, by signing the Addendum, the Hansens agreed to limit their economic recovery to a return of their earnest money deposit if the sale did not close. *See* Ex. B, Addendum at 1, 2 and ¶¶ 22, 24. At no point in their Complaint did the Hansens ever contend that the terms of the Addendum were ambiguous. Despite this, the Hansens filed the instant suit in violation of the Addendum and base this action on rights they agreed to waive.

Because the Addendum predicates performance by Countrywide on its ability to secure clear title, and because the Hansens' breach of contract claim is based entirely on rights and remedies that they clearly relinquished in the contract, Countrywide is entitled to judgment on this count as a matter of law.

**C.    Countrywide is Entitled to Judgment on Count Three As a Matter of Law Because Countrywide Made No False Statement or Omission About the Property's Title and Because There Was No Reasonable Reliance**

The Hansens allege that Countrywide was negligent in representing that it possessed clear title to the Property, and that they suffered the loss of their deposit and incurred other unarticulated expenses in reliance on this representation. *See* Comp. ¶¶ 45-53. A claim of negligent misrepresentation requires proof that the defendant made a false statement or omitted a fact that it had a duty to disclose, the statement or omission involved a material issue, and the plaintiff reasonably relied upon the false statement or omission to his detriment for the period of time at issue in the case. *See, e.g., Redmond v. State Farm Ins. Co.*, 728 A.2d 1202 (D.C. 1999).

11

Countrywide is entitled to summary judgment on the Hansens' claim of negligent misrepresentation because the Addendum clearly and repeatedly disclosed the possibility that Countrywide would not be able to deliver clear title to the Property.  Ex. B, Addendum at 1, ¶¶ 22, 24.  Therefore, Countrywide never made a false statement or failed to disclose material facts concerning the Property's title.  Moreover, because the Addendum disclosed this fact, Countrywide made no representation of possessing clear title upon which the Hansens could reasonably rely.  Further, the Hansens' tort claim is predicated on rights and remedies they agreed to relinquish under the Addendum.

There were no material misrepresentations or omissions by Countrywide.  There is no basis for reasonable reliance by the Hansens.  The Hansens' tort claim is based entirely on rights and remedies that they clearly relinquished in the contract.  Countrywide is entitled to judgment on this count as a matter of law.

## V. **CONCLUSION**

Because the Hansens have no set of facts under which they can prevail, Countrywide respectfully requests that the Court grant its Motion for Summary Judgment and dismiss the Hansens' Complaint with prejudice.

Respectfully submitted,
Countrywide Home Loans, Inc.

By _____
                    Counsel

Mark B. Bierbower (D.C. Bar #320861)
Dianne M. Keppler (D.C. Bar #468580)
HUNTON & WILLIAMS, LLP
1900 K Street, N.W.
Washington, D.C.  20006-1109
(202) 955-1500
(202) 778-2201 (fax)
*Counsel for Defendant Countrywide Home Loans, Inc.*

# EXHIBIT A

Feb-28-07   01:22pm   From-REAL ESTATE MANAGEMENT 8055773481          805 577 3481          T-301   P.022/044   F-522
FEB-24-2007 02:41 PM   PATRICK ...




## GCAAR
## REGIONAL SALES CONTRACT

This SALES CONTRACT ("Contract") is made on __2/20/2007__ ("Contract Date") between __CHAIM HANSEN__ ("Purchaser") and __Chester Wilde Homes Loans Inc__ ("Seller") who, among other things, hereby confirm and acknowledge by their initials and signatures herein that by prior disclosure in this real estate transaction __Remax 300__ ("Listing Company") represents Seller, and __Long and Foster Inc__ ("Selling Company") represents and ☑ Purchaser or ☐ Seller. The Listing Company and Selling Company are collectively referred to as "Broker". (If the brokerage firm is acting as a dual representative for both Seller and Purchaser, then the appropriate disclosure form is attached to and made a part of this Contract.) In consideration of the mutual promises and covenants set forth below, and other good and valuable consideration the receipt and sufficiency of which is acknowledged, the parties agree as follows:

**1. REAL PROPERTY** Purchaser will buy and Seller will sell for the sales price ("Sales Price"), Seller's entire interest in the real property (with all improvements, rights and appurtenances) described as follows ("Property"):
TAX Map/ID # __3200    02660__         Legal Description: Lot(s) __2660__
Block/Square __5200__   Section _____ Subdivision or Condominium __original woods__
Parking Space(s) # _____   County/Municipality _____
Deed Book/Liber # _____         Page/Folio # _____
Street Address __621 Quintana Place NW__         State __D.C.__   Zip Code __20011-1??3__
Unit # _____   City __Washington__

**2. PRICE AND FINANCING**                                                                 $ __0__

   A. Down Payment

   B. Financing   1. First Trust (if applicable)          $ __80%__

                  2. Second Trust (if applicable)         $ __20%__

                  3. Seller Held Trust                    $ __0__
                     Addendum attached (if applicable)

      TOTAL FINANCING                                     $ __100%__

      SALES PRICE                                         $ __324,00__

**3. DEED(S) OF TRUST**

   A. **First Deed of Trust** Purchaser will ☑ Obtain or ☐ Assume a ☑ Conventional ☐ FHA ☐ VA ☐ Other _____ First Deed of Trust loan amortized over __30__ years at a ☐ Fixed or an ☐ Adjustable rate bearing (initial) interest of __N/A__ % per year or market rate available. Special Terms (if any): _____

   B. **Second Deed of Trust** Purchaser will ☑ Obtain or ☐ Assume a Second Deed of Trust loan amortized over __30__ years at a ☐ Fixed or an ☐ Adjustable rate bearing (initial) interest of __N/A__ % per year or market rate available. Special Terms (if any): _____

SUBJECT TO THE TERMS AND
CONDITIONS OF CHL'S REAL
ESTATE PURCHASE ADDENDUM
ATTACHED HERE TO

GCAAR Form # 1301 - Reg...

Please Initial: Seller __NP__   Purchaser __[signature]__

C. **Assumption Only** Assumption fee, if any, and all charges related to the assumption will be paid by the Purchaser. If Purchaser assumes Seller's loan(s): (i) Purchaser and Seller ☐ will, or ☐ will not obtain a release of Seller's liability to the U.S. Government for the repayment of the loan by Settlement, (ii) Purchaser and Seller ☐ will, or ☐ will not obtain substitution of Seller's VA entitlement by Settlement. Balances of any assumed loans, secondary financing and cash down payments are approximate.

4. **DEPOSIT**                                                                          _Long and ~~Foster~~_

A. Purchaser has delivered a deposit ("Deposit") to _Paragon Title_ ("Escrow Agent") of ☐ S _1000_ ____ by check and/or ☐ S _na_ ____ by note due and payable on ____ _na_ ____

B. The Deposit will be placed in an escrow account of the Escrow Agent after Date of Ratification in conformance with the laws and regulations of the appropriate jurisdiction and/or, if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and all parties waive any claim to interest resulting from the Deposit. The Deposit will be held in escrow until: (i) Credited toward the Sales Price at Settlement; (ii) All parties have agreed in writing as to its disposition; (iii) A court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) Disposed of in any other manner authorized by the laws and regulations of the appropriate jurisdiction. Seller and Purchaser agree that Escrow Agent will have no liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except in the event of the Escrow Agent's gross negligence or willful misconduct.

5. **DOWN PAYMENT** The balance of the down payment will be paid on or before the Settlement Date by certified or cashier's check or by bank-wired funds. An assignment of funds shall not be used without prior written consent of Seller.

6. **SETTLEMENT** Seller and Purchaser will make full settlement in accordance with the terms of this Contract ("Settlement") on, or with mutual consent before, _8/28/2007_ ("Settlement Date") except as otherwise provided in this Contract. Purchaser selects: _Paragon Title_ ("Settlement Agent") to conduct the Settlement. (For transactions in Virginia, use the Virginia Jurisdictional Addendum to select the Settlement Agent.) Either party may retain their own legal counsel. Purchaser agrees to contact the Settlement Agent within 10 Days after the Date of Ratification to schedule Settlement and to arrange for ordering the title exam and, if required, a survey.

7. **EQUIPMENT, MAINTENANCE AND CONDITION** Purchaser accepts the Property in the condition as of the Contract Date except as otherwise provided herein. Seller warrants that, except as otherwise provided, the existing appliances, heating, cooling, plumbing, electrical systems and equipment, and smoke and heat detectors (as required), will be in normal working order as of the Possession Date. Seller will deliver the Property in substantially the same condition as on the Contract Date and broom clean with all trash and debris removed. Purchaser and Seller will not hold the Broker liable for any breach of this paragraph. Seller will have all utilities in service through Settlement or as otherwise agreed.

8. **UTILITIES** - WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING (Check all that apply)

| | | | |
|---|---|---|---|
| Water Supply: | ☑ Public | ☐ Private Well | ☐ Community Well |
| Sewage Disposal: | ☑ Public | ☐ Septic for # BR ____ | ☐ Community Septic  ☐ Alternative Septic for # BR: ____ |
| Hot Water: | ☐ Oil | ☑ Gas | ☐ Elec.  ☐ Other ____ |
| Air Conditioning: | ☐ Oil | ☐ Gas | ☐ Elec.  ☐ Heat Pump  ☐ Other ____  ☐ Zones ____ |
| Heating: | ☐ Oil | ☑ Gas | ☐ Elec.  ☐ Heat Pump  ☐ Other ____  ☐ Zones ____ |

**9. PERSONAL PROPERTY AND FIXTURES** The Property includes the following existing personal property and fixtures: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, TV antennas, exterior trees and shrubs. Unless otherwise agreed to in writing, all surface or wall mounted electronic components/devices DO NOT convey. If more than one of an item convey, the number of items is noted.

**The items marked YES below are currently installed or offered.**

| Yes | No | # | Items | | Yes | No | # | Items | | Yes | No | # | Items |
|-----|----|---|-------|--|-----|----|---|-------|--|-----|----|---|-------|
| ☐ | ☐ | | Alarm System | | ☐ | ☐ | | Freezer | | ☐ | ☐ | | Satellite Dish |
| ☐ | ☐ | | Built-in Microwave | | ☐ | ☐ | | Furnace Humidifier | | ☐ | ☐ | | Storage Shed |
| ☐ | ☐ | | Ceiling Fan | | ☐ | ☐ | | Garage Opener | | ☐ | ☐ | | Stove or Range |
| ☐ | ☐ | | Central Vacuum | | ☐ | ☐ | | w/ remote | | ☐ | ☐ | | Trash Compactor |
| ☐ | ☐ | | Clothes Dryer | | ☐ | ☐ | | Gas Log | | ☐ | ☐ | | Wall Oven |
| ☒ | ☐ | | Clothes Washer | | ☐ | ☐ | | Hot Tub,Equip,& Cover | | ☐ | ☐ | | Water Treatment System |
| ☐ | ☐ | | Cooktop | | ☐ | ☐ | | Intercom | | ☐ | ☐ | | Window A/C Unit |
| ☐ | ☐ | | Dishwasher | | ☐ | ☐ | | Playground Equipment | | ☐ | ☐ | | Window Fan |
| ☐ | ☐ | | Disposer | | ☐ | ☐ | | Pool, Equip, & Cover | | ☐ | ☐ | | Window Treatments |
| ☐ | ☐ | | Electronic Air Filter | | ☐ | ☐ | | Refrigerator | | ☐ | ☐ | | Wood Stove |
| ☐ | ☐ | | Fireplace Screen/Door | | ☐ | ☐ | | w/ ice maker | | | | | |

**OTHER** _____
_____
_____

**AS IS ITEMS**
Seller does not warrant the condition or working order of the following items and/or systems:

_____ *ALL ITEMS* _____
_____

If entire Property is sold "As Is", appropriate addendum must be attached.

**LEASED ITEMS**
Any leased items, systems or service contracts (including, but not limited to, fuel tanks, water treatment systems, lawn contracts, security system monitoring, and satellite contracts) DO NOT CONVEY absent an express written agreement by Purchaser and Seller. The following is a list of the leased items within the Property:

_____
_____

**10. CONVENTIONAL FINANCING TERMS**

A. **SELLER SUBSIDY** Based on the financing terms specified in this Contract, Seller will pay at Settlement $ _4720_ _____ toward Purchaser's charges, (including but not limited to loan origination fees, discount fees, buy down or subsidy fees, prepaids or other charges as allowed by the lender). Purchaser will pay all remaining Purchaser's charges. If applicable, Purchaser will pay at Settlement or finance any initial private mortgage insurance required by lender. It is Purchaser's responsibility to confirm with his lender, if applicable, that the entire credit provided herein may be utilized. If lender prohibits Seller from the payment of any portion of this credit, then said credit shall be reduced to the amount allowed by the lender.

B. **APPRAISAL (Must Select Option 1 or 2)**

☐ **Option (1)** This Contract is contingent on Purchaser obtaining an Appraisal certifying the value of the Property to be no less than the Sales Price. See Attached Addendum. If the appropriate Appraisal Contingency Addendum is not attached, this Contract is not contingent on an Appraisal and Option (2) below will apply.

**OR**

☐ **Option (2)** This Contract is not contingent on an Appraisal. Purchaser shall complete Settlement without regard to the value of the Property set forth in any Appraisal and acknowledges that this may reduce the amount of financing available from lender and may require Purchaser to tender additional funds at Settlement. If Purchaser fails to settle except due to any Default by Seller, then the provisions of paragraph #26 (Default) shall apply.

C. **FINANCING (Must Select Option 1 or 2)** Not to be used with Seller Financing

☐ **Option (1)** This Contract is contingent on Purchaser obtaining approval for loan(s) to purchase the Property (The "Financing Contingency").

This Contract is contingent until 9 p.m. _____ Days after Date of Ratification ("Financing Deadline") upon Purchaser Delivering Notice to Seller on the Regional Form #100 removing this Financing Contingency. Such Notice ☑ **shall** or
☐ **shall not** be accompanied by a letter from the lender ("Lender's Letter"). Such Lender's Letter shall include the following statements or statements substantially similar thereto:

1) Purchaser is approved for the Specified Financing,
2) a ratified Contract has been received,
3) a written application for the financing has been made,
4) income, asset, and liability documentation on Purchaser have been received,
5) Purchaser's credit has been reviewed, and
6) the application has been reviewed and meets underwriter and investor guidelines.

If Purchaser fails to Deliver Regional Form #100 and Lender's Letter (if required) by the Financing Deadline, this contingency will continue, unless Seller at Seller's option gives Notice to Purchaser that this Contract will become void. If Seller Delivers such Notice this Contract will become void at 9 p.m. on the third day following Delivery of Seller's Notice unless prior to that date and time:

   a) Purchaser Delivers to Seller Regional Form #100 and Lender's Letter (if required); or

   b) Purchaser Delivers to Seller Regional Form #100 and provides Seller with evidence of sufficient funds available to complete Settlement without obtaining financing.

Upon Delivery to Seller of either (a) or (b) above, this Contract will no longer be contingent on Purchaser being approved for the Specified Financing and this Contract will remain in full force and effect.

Prior to satisfaction or removal of the Financing Contingency, if Purchaser receives a written rejection for the Specified Financing and Delivers a copy of the written rejection to Seller, this Contract will become void.

**OR**

☐ **Option (2)** This Contract is not contingent upon Purchaser obtaining approval for loan(s) to purchase the Property. Purchaser acknowledges that there is not a Financing Contingency. Purchaser has provided sufficient documentation to satisfy Seller that Purchaser has been approved for the Specified Financing or has sufficient funds available to complete Settlement without obtaining financing. If Purchaser fails to settle except due to any Default by Seller, then the provisions of paragraph #26 (DEFAULT) shall apply.

Feb-28-07   01:23pm   From-REAL ESTATE MANAGEMENT 8055773481        805 577 3481        T-301   P.028/044   F-522

11. ☐ VA or ☐ FHA FINANCING AND APPRAISAL
Purchaser will ☐ pay at Settlement, or ☐ finance any VA Funding Fee or FHA initial Mortgage Insurance Premium.
Based on the Specified Financing in this Contract, the Seller will pay $_____ toward Purchaser's charges
(including but not limited to loan origination fees, discount fees, buydown or subsidy fees, prepaids or other charges as
allowed by the lender) except that the total amount of any lender charges which cannot by law or regulation be charged to
Purchaser will be paid by the Seller. These charges, if any, will first be deducted from any Seller credit, and the remaining
balance, if any, will then be applied to Purchaser's other charges. Purchaser will pay all remaining Purchaser's charges. If VA
or FHA financing applies, it is expressly agreed that, notwithstanding any other provisions of this Contract, Purchaser will not
be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money
deposits or otherwise unless Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement
by the Federal Housing Commissioner or Direct Endorsement Lender/Department of Veterans Affairs or the Lender Approval
Processing Program (LAPP) underwriter setting forth the appraised value of the Property (excluding closing costs) of not less
than $_____. Purchaser will have the privilege and option of proceeding with consummation of
this Contract without regard to the amount of the appraised valuation. THE APPRAISED VALUATION IS ARRIVED AT
TO DETERMINE THE MAXIMUM MORTGAGE THE DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT/DEPARTMENT OF VETERANS AFFAIRS WILL INSURE/GUARANTEE. HUD/DEPARTMENT
OF VETERANS AFFAIRS AND THE MORTGAGEE DOES NOT WARRANT THE VALUE NOR THE CONDITION
OF THE PROPERTY. PURCHASER SHOULD SATISFY HIMSELF/HERSELF THAT THE PRICE AND CONDITION
OF THE PROPERTY ARE ACCEPTABLE. If VA Financing applies, Purchaser agrees that should Purchaser elect to
complete the purchase at an amount in excess of the reasonable value established by the Department of Veterans Affairs,
Purchaser shall pay such excess amount in cash from a source which Purchaser agrees to disclose to the Department of
Veterans Affairs, and which Purchaser represents will not be borrowed funds except as approved by the Department of
Veterans Affairs. Purchaser's exercise of the option shall be made in writing within 3 Days of the notification to Purchaser
of the appraised value, or this Contract shall become void. If FHA financing applies, Purchaser's exercise of the option of
proceeding with consummation of this Contract without regard to the amount of the appraised valuation shall be made in
writing within 3 Days of the notification to Purchaser of the appraised value, or this Contract shall become void.

12. FINANCING APPLICATION   If this Contract is contingent on financing, Purchaser will make written application
for the Specified Financing and any lender required property insurance no later than 7 days after the Date of Ratification.
Purchaser grants permission for the Selling Company and the lender to disclose to the Listing Company and the Seller
general information available about the progress of the loan application and loan approval process. If Purchaser fails to
settle except due to any Default by Seller, then the provisions of paragraph #26 (DEFAULT) shall apply.

13. ALTERNATE FINANCING   Purchaser may substitute alternative financing and/or an alternative lender for Specified
Financing provided:
   (a) Purchaser is qualified for alternative financing;
   (b) There is no additional expense to Seller;
   (c) The Settlement Date is not delayed; and
   (d) If Purchaser fails to settle except due to any Default by Seller, then the provisions of paragraph #26 (DEFAULT)
       shall apply.

14. PURCHASER'S REPRESENTATIONS   Purchaser ☑ will, or ☐ will not occupy the Property as Purchaser's
principal residence. Unless specified in a written contingency, neither this Contract nor the financing is dependent or
contingent on the sale and settlement or lease of other real property. The Selling Company ☑ is, or ☐ is not authorized
to disclose to the Listing Company and Seller the appropriate financial or credit information statement provided to the
Selling Company by Purchaser. Purchaser acknowledges that Seller is relying upon all of Purchaser's representations,
including without limitation, the accuracy of financial or credit information given to Seller, Broker or the lender by
Purchaser.

15. ACCESS TO PROPERTY   Seller will provide the Broker, Purchaser, inspectors representing Purchaser and
representatives of lending institutions for Appraisal purposes, reasonable access to the Property to comply with this Contract.
In addition, Purchaser and/or Purchaser's representative will have the right to make a final inspection within 5 days prior to
Settlement and/or occupancy, unless otherwise agreed to by Purchaser and Seller.

LF031                              Page 5 of 10            Please Initial: Seller _____ Purchaser _____        9/06
Regional Sales Contract

**16. TERMITE INSPECTION** The ☒ Purchaser at Purchaser's expense or ☐ Seller at Seller's expense, will furnish a written report from a pest control firm dated not more than 30 days prior to Settlement showing that all dwelling(s) and/or garage(s) within the Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) are free of visible evidence of active termites and other wood-destroying insects, and free from visible structural insect damage. Any extermination and structural repairs identified in the inspection report will be made at Seller's expense.

**17. REPAIRS** If, as a condition of providing financing under this Contract, the lender requires repairs to be made to the Property, then Purchaser will give Notice to Seller of the lender's required repairs. Within 5 Days after such Notice, Seller will give Notice to Purchaser as to whether Seller will make the repairs. If Seller will not make the repairs, Purchaser will give Notice to Seller within 5 Days after Seller's Notice as to whether Purchaser will make the repairs. If neither Seller nor Purchaser will make the repairs, then this Contract will become void. This clause will not release Seller from any responsibilities set forth in the paragraphs titled UTILITIES; PERSONAL PROPERTY AND FIXTURES; EQUIPMENT, MAINTENANCE AND CONDITION; WELL AND SEPTIC; TERMITE INSPECTION; or OTHER TERMS, or any terms specifically set forth in this Contract and any addenda. If the Property is sold "as is", Purchaser will be responsible for all repairs.

**18. DAMAGE OR LOSS** The risk of damage or loss to the Property by fire, act of God, or other casualty remains with Seller until the execution and delivery of the deed of conveyance to Purchaser at Settlement.

**19. TITLE** The title report and survey, if required, will be ordered promptly and, if not available on the Settlement Date, then Settlement may be delayed for up to 10 business days to obtain the title report and survey after which this Contract, at the option of Seller, may be terminated and the Deposit will be refunded in full to Purchaser according to the terms of the DEPOSIT paragraph. Fee simple title to the Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by Purchaser. Title is to be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any; otherwise, Purchaser may declare this Contract void, unless the defects are of such character that they may be remedied within 30 Days beyond the Settlement Date. In case action is required to perfect the title, such action must be taken promptly by Seller at Seller's expense. The Broker is hereby expressly released from all liability for damages by reason of any defect in the title. Seller will convey the Property by general warranty deed with English covenants of title (Virginia); general warranty deed (West Virginia); special warranty deed (D.C. and Maryland) ("Deed"). Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lenders. The manner of taking title may have significant legal and tax consequences. Purchaser is advised to seek the appropriate professional advice concerning the manner of taking title. Unless otherwise agreed to in writing, Seller will pay any special assessments and will comply with all orders, requirements, or notices of violations of any county or local authority, condominium unit owners' association, homeowners' or property owners' association or actions in any court on account thereof, against or affecting the Property on the Settlement Date.

**20. POSSESSION DATE** Unless otherwise agreed to in writing between Seller and Purchaser, Seller will give possession of the Property at Settlement, including delivery of keys, if any. If Seller fails to do so and occupies the Property beyond Settlement, Seller will be a tenant at sufferance of Purchaser and hereby expressly waives all notice to quit as provided by law. Purchaser will have the right to proceed by any legal means available to obtain possession of the Property. Seller will pay any damages and costs incurred by Purchaser including reasonable attorney fees.

**21. FEES** Fees for the preparation of the Deed, that portion of the Settlement Agent's fee billed to Seller, costs of releasing existing encumbrances, Seller's legal fees and any other proper charges assessed to Seller will be paid by Seller. Fees for the title exam (except as otherwise provided) survey, recording (including those for any purchase money trusts) and that portion of the Settlement Agent's fee billed to Purchaser, Purchaser's legal fees and any other proper charges assessed to Purchaser will be paid by Purchaser. Fees to be charged will be reasonable and customary for the jurisdiction in which the Property is located. (Recording, Transfer and Grantor's Taxes are covered in the appropriate jurisdictional addenda).

**22. BROKER'S FEE** Seller irrevocably instructs the Settlement Agent to pay the Broker compensation ("Broker's Fee") at Settlement as set forth in the listing agreement and to disburse the compensation offered by the Listing Company to the Selling Company in writing as of the Contract Date, and the remaining amount of Broker's compensation to the Listing Company.

23. **ADJUSTMENTS** Rents, taxes, water and sewer charges, front foot benefit and house connection charges, condominium unit owners' association, homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the day of Settlement. Any heating or cooking fuels remaining in supply tank (s) at Settlement will become the property of Purchaser, unless leased. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the collector of taxes, if any, except that recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by Seller or allowance made at Settlement. If a loan is assumed, interest will be adjusted to the Settlement Date and Purchaser will reimburse Seller for existing escrow accounts, if any.

24. **ATTORNEY'S FEES** In any action or proceeding involving a dispute between Purchaser and Seller arising out of this Contract, the prevailing party will be entitled to receive from the other party reasonable attorney's fees to be determined by the court or arbitrator(s). In the event a dispute arises resulting in the Broker being made a party to any litigation or if the Broker is required to bring litigation to collect the Broker's Fee, Purchaser and Seller agree to indemnify the Broker, its employees, and/or licensees for all attorney fees and costs of litigation against the responsible party, unless the litigation results in a judgment against the Broker, its employees and/or licensees.

25. **PERFORMANCE** Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

26. **DEFAULT** Purchaser will be in Default even if the Financing Contingency has not been removed if Settlement does not occur on the Settlement Date for any reason other than Default by Seller, including without limitation the following:

A. Failure to lock-in the interest rate(s) and the rate(s) increase so that Purchaser does not qualify for such financing; OR

B. Failure to comply with the lender's reasonable requirements in a timely and diligent manner; OR

C. Application is made with an alternative lender (one other than the lender who provided Lender's Letter) and the alternative lender fails to meet the Settlement Date; OR

D. Does not have the down payment, closing fees and any other required funds, including without limitation, any additional funds required to be tendered by Purchaser if the Appraisal is lower than the Sales Price; OR

E. Makes any deliberate misrepresentations, material omissions or inaccuracies in financial information that results in the Purchaser's inability to secure the financing; OR

F. Failure to make application for property insurance, if required, by lender within 7 days of Date of Ratification; OR

G. Does or fails to do any act following the Date of Ratification that prevents Purchaser from completing Settlement.

If Purchaser fails to complete Settlement for any reason other than Default by Seller, at the option of Seller, the Deposit may be forfeited as liquidated damages (not as a penalty) in which event Purchaser will be relieved from further liability to Seller. If Seller does not elect to accept the Deposit as liquidated damages, the Deposit may not be the limit of Purchaser's liability in the event of a Default. If the Deposit is forfeited, or if there is an award of damages by a court or a compromise agreement between Seller and Purchaser, the Broker may accept and Seller agrees to pay the Broker one-half of the Deposit in lieu of the Broker's Fee, (provided Broker's share of any forfeited Deposit will not exceed the amount due under the listing agreement). If Seller fails to perform or comply with any of the terms and conditions of this Contract or fails to complete Settlement for any reason other than Default by Purchaser, Purchaser will have the right to pursue all legal or equitable remedies, including specific performance and/or damages. If either Seller or Purchaser refuses to execute a release of Deposit ("Release") when requested to do so in writing and a court finds that such party should have executed the Release, the party who so refused to execute the Release will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation. Seller and Purchaser agree that no Escrow Agent will have any liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except only in the event of the Escrow Agent's gross negligence or willful misconduct. The parties further agree that the Escrow Agent will not be liable for the failure of any depository in which the Deposit is placed and that Seller and Purchaser each will indemnify, defend and save harmless the Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse the Deposit, except in the case of the Escrow Agent's gross negligence or willful misconduct. If either Purchaser or Seller is in default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for the title examination, Appraisal, survey and the Broker's Fee in full.

27. **OTHER DISCLOSURES** Purchaser and Seller should carefully read this Contract to be sure that the terms accurately express their respective understanding as to their intentions and agreements. The Broker can counsel on

real estate matters, but if legal advice is desired by either party, such party is advised to seek legal counsel. Purchaser and Seller are further advised to seek appropriate professional advice concerning the condition of the Property or tax and insurance matters. The following provisions of this paragraph disclose some matters which the parties may investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the following disclosures:

**A. PROPERTY CONDITION** See paragraph #7 (EQUIPMENT, MAINTENANCE AND CONDITION) Various inspection services and home warranty insurance programs are available. The Broker is not advising the parties as to certain other issues, including without limitation: water quality and quantity (including but not limited to, lead and other contaminants;) sewer or septic; soil condition; flood hazard areas; possible restrictions of the use of the Property due to restrictive covenants, zoning, subdivision, or environmental laws, easements or other documents; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including without limitation flame retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), mold, polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

**B. LEGAL REQUIREMENTS** All contracts for the sale of real property must be in writing to be enforceable. Upon ratification and Delivery, this Contract becomes a legally binding agreement. Any changes to this Contract must be made in writing for such changes to be enforceable.

**C. FINANCING** Mortgage rates and associated charges vary with financial institutions and the marketplace. Purchaser has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract. The financing may require substantial lump sum (balloon) payments on the due dates. Purchaser has not relied upon any representations regarding the future availability of mortgage money or interest rates for the refinancing of any such lump sum payments.

**D. BROKER** Purchaser and Seller acknowledge that the Broker is being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, mold or air quality expert, home inspector or other professional service provider. The Broker may from time to time engage in the general insurance, title insurance, mortgage loan, real estate settlement, home warranty and other real estate-related businesses and services. Therefore, in addition to the Broker's Fee specified herein, the Broker may receive compensation related to other services provided in the course of this transaction pursuant to the terms of a separate agreement/disclosure.

**E. PROPERTY TAXES** Your property tax bill could substantially increase following settlement. For more information on property taxes contact the appropriate taxing authority in the jurisdiction where the Property is located.

**F. PROPERTY INSURANCE** Obtaining property insurance is typically a requirement of the lender in order to secure financing. Insurance rates and availability are determined in part by the number and nature of claims and inquiries made on a property's policy as well as the number and nature of claims made by a prospective Purchaser. Property insurance has become difficult to secure in some cases. Seller should consult an insurance professional regarding maintaining and/or terminating insurance coverage.

**28. ASSIGNABILITY** This Contract may not be assigned without the written consent of Purchaser and Seller. If Purchaser and Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

Feb-28-07   01:25pm   From-REAL ESTATE MANAGEMENT 8055773481        805 577 3481        T-301   P.030/044   F-522

29. **DEFINITIONS**
   A. "Appraisal" means a written appraised valuation of the Property.
   B. "Day(s)" or "day(s)" means calendar day(s) unless otherwise specified in this Contract. For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9 p.m. on the Day specified. If the Settlement Date falls on a Saturday, Sunday, or legal holiday, then the Settlement will be on the prior business day.
   C. "Date of Ratification" means the date of final acceptance in writing of all the terms of this Contract (not the date of expiration or removal of any contingencies).
   D. For "Delivery" and "Notices" definitions, see appropriate Jurisdictional Addendum.
   E. "Specified Financing" means the loan type(s) and amount(s), if any, specified in both paragraph #2 (PRICE AND FINANCING) and paragraph #3 (DEEDS OF TRUST).
   F. The masculine includes the feminine and the singular includes the plural.
   G. "Possession Date" - See paragraph #20 (POSSESSION DATE).

30. **MISCELLANEOUS** This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Documents obtained via facsimile machines will also be considered as originals. Typewritten or handwritten provisions included in this Contract will control all pre-printed provisions that are in conflict.

31. **VOID CONTRACT** If this Contract becomes void and of no further force and effect, without Default by either party, both parties will immediately execute a release directing that the Deposit be refunded in full to Purchaser according to the terms of the paragraph # 4(DEPOSIT).

32. **ADDITIONS** The following forms, if ratified and attached, are made a part of this Contract. (This list is not all inclusive of addenda that may need to be attached)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☑Yes | | Jurisdictional Addendum for | ☐DC | ☐ VA | ☐MD/County _____ | |
| | | | ☐WVA | | ☐Other_____ | |
| ☑Yes | ☐ No | Addendum of Clauses (DC/MD) | ☐Yes | ☐ No | Lead Paint Inspection Contingency | |
| ☑Yes | ☑No | Contingency Clauses (NVAR) | ☐Yes | ☐ No | Pre Settlement Occupancy | |
| ☐Yes | ☑No | Condo/Coop Addendum | ☐Yes | ☐ No | Post Settlement Occupancy | |
| ☐Yes | ☑No | Dual Agency Form | ☐Yes | ☐ No | Property Disclosure or Disclaimer | |
| ☐Yes | ☑No | Designated Agency Form | ☐Yes | ☐ No | Radon Testing Contingency | |
| ☐Yes | ☑No | FHA Home Inspection Notice | ☐Yes | ☐ No | Sale of Home Contingency | |
| ☑Yes | ☐ No | Home Inspection Contingency | ☐Yes | ☐ No | Seller Held Trust | |
| ☑Yes | ☐ No | Lead Paint Disclosure | ☐Yes | ☐ No | Well and Septic Contingency | |
| ☑Yes | ☐ No | Other (specify): _Country Wide, McKenna Estate, DeBanca HOA_ | | | | |

33. **HOME WARRANTY** ☐Yes   ☐ No
Home Warranty Policy paid for and provided at Settlement by: ☐        Purchaser or ☐ Seller.

Cost not to exceed $_____        Warranty provider to be _____

34. **OTHER TERMS** _____
_____
_____
_____
_____



**35. ENTIRE AGREEMENT** This Contract will be binding upon the parties, and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions not satisfied at Settlement will survive the delivery of the deed and will not be merged therein. This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of this Contract will be governed by the laws of the jurisdiction where the Property is located.

SELLER:                                          PURCHASER:

2-28-07 _____(SEAL)    3/21/07 _____(SEAL)
Date      Signature                               Date      Signature

_____/_____(SEAL)    3/21/07 _____(SEAL)
Date      Signature                               Date      Signature

Date of Ratification see paragraph #29 (DEFINTIONS) _____

*****************************************************************************************

For information purposes only:

Listing Company's Name and Address:          Selling Company's Name and Address:

_____             Long and Foster
_____             4150 EAST WEST Highway
_____             Bethesda Mell

Office # _____ FAX # _____        Office # 301-         FAX # 301-681-9685
                                                      9077600
MRIS Broker Code and Office ID_____/___    MRIS Broker Code and Office ID 5201 LFS-1

Agent Name _____       Agent Name Kitty Sessions

_____             _____
Real Estate License Number & Jurisdiction    Real Estate License Number & Jurisdiction

Agent MRIS ID# _____       Agent MRIS ID# 5201

Team Leader/Agent _____        Team Leader/Agent _____

Agent Email Address _____        Agent Email Address Kitty Sessions@
                                                                  MRIS.COM

©2006. This is a suggested form owned by certain REALTOR® Associations ("Associations"). This form has been created and printed exclusively for the use of REALTORS® and members of the Associations, who may copy or otherwise reproduce this form in identical form with the addition of their company logo and with any other changes being set forth in a clearly marked separate addendum. Any other use of this form is prohibited without prior written authorized consent of the Associations.

LF031
Regional Sales Contract

**SUBJECT TO THE TERMS AND CONDITIONS OF CHL'S REAL ESTATE PURCHASE ADDENDUM ATTACHED HERE TO**

Page 10 of 10

Please Initial: Seller _____/_____   Purchaser _____/_____

9/06

Feb-28-07   01:26pm   From-REAL ESTATE MANAGEMENT 8055773481      805 577 3481      T-301   P.032/044   F-522

(12)





**THIS NOTICE IS REQUIRED BY LAW AND IS NOT A CONTRACT.**

**THIS DISCLOSURE DOES NOT CREATE A BROKERAGE RELATIONSHIP.**

## Disclosure of Brokerage Relationship
## District of Columbia

Prior to providing specific real estate assistance, District of Columbia law requires that a licensee disclose to any party who the licensee does NOT represent the identity of the party to the proposed transaction which the licensee does represent. Even though a licensee may not represent you, that licensee must still treat you honestly in the transaction.

We, the undersigned ☑ Buyer(s)/Tenant(s) or ☐ Seller(s)/Landlord(s) acknowledge receipt of this Disclosure, and understand we are NOT represented by the licensee identified below.

_Kathy Sessions_      and _Long & Foster Real Estate, Inc._
(Licensee & License #)           (Brokerage Firm)

The licensee and brokerage firm named above represent the following party in the real estate transaction:

☐ Seller(s)/Landlord(s) (The licensee has entered into a written listing agreement with the seller(s) or landlord(s) or is acting as a sub-agent of the listing broker.)

☑ Buyer(s)/Tenant(s) (The licensee has entered into a written agency agreement with the buyer/tenant.)

☐ Designated Agent of the ☐ Buyer(s)/Tenant(s) or ☐ Seller(s)/Landlord(s)
(Both the buyers and sellers have previously consented to "Designated Agency", and the licensee listed above is indicating the parties represented.

_[signature]_     _[signature]_   2/21/07
Acknowledged                 Date

_____
Acknowledged                 Date

Name of Person(s): _Kathy Sessions_
I certify on this date that I, the real estate agent, have delivered a copy of this disclosure to the person(s) identified above.

_[signature]_              2/21/2007
Signed (Licensee)              Date

©2005, The Greater Capital Area Association of REALTORS®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.

REALTOR®
LF232
GCAAR Form #1002- DC - Disclosure of Brokerage Relationship     Page 1 of 1          07/2005
(formerly form #143)

Feb-28-07   01:27pm   From-REAL ESTATE MANAGEMENT 8055773481       805 577 3481       T-301   P.033/044   F-522





## Addendum of Clauses

**FOR USE WITH EITHER THE MARYLAND ASSOCIATION OF REALTORS® (MAR) RESIDENTIAL CONTRACT OF SALE OR THE REGIONAL SALES CONTRACT**

The Contract of Sale dated 2/2/2007   Address 521 Quatana Place

City Washington   State DC   Zip 20011   between

Seller Chantay Wider House, Louis   and

Buyer M/M Houston   is

hereby amended by the incorporation of this Addendum, which shall supersede any provisions to the contrary in the Contract.

It is expressly provided that only the numbered paragraphs which are checked and initialed by all Parties shall be made a part of said contract. **TIME IS OF THE ESSENCE WITH REGARD TO EACH PROVISION OF THIS ADDENDUM WHICH CONTAINS TIMEFRAMES.**

☐ 1. **HOME INSPECTION CONTINGENCY.** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification ("Deadline") for inspection of the property, not including radon or lead-based paint inspections, which require separate contingencies, by the Buyer, a home inspection firm and/or other representative(s) at the Buyer's discretion and expense. The Seller will have all utilities in service at the time of inspection(s). This contingency will terminate at the Deadline unless by the Deadline the Buyer Delivers to the Seller either A or B:

A. A copy of the report(s) from the inspection(s) of the property together with a Home Inspection Notice (see GCAAR Home Inspection Notice) listing home inspection conditions or items that the Buyer requires the Seller to repair, and/or stipulating a dollar credit, as allowed by the lender, to be paid at settlement by the Seller toward the Buyer's charges to buy the property.

If the Seller elects not to perform in accordance with the Home Inspection Notice or makes another offer, the Seller will Deliver notice to the Buyer of such decision within 3 Days after Delivery of the Home Inspection Notice.

Within 3 Days after Delivery of a notice from one party, the other party may:

(i) Deliver notice accepting the terms contained in the other party's notice; or
(ii) Deliver notice continuing negotiations by making another offer; or
(iii) Deliver notice that this Contract will become void at 9 p.m. on the 3rd Day following Delivery, unless the recipient Delivers to the other party Notice of the acceptance of the last Delivered offer prior to that date and time, in which case this Contract will remain in full force and effect.

Failure of either party to respond within 3 Days after Delivery of Notice from the other party will result in acceptance by both parties of the terms of the most recent Notice.

B. Notice declaring this Contract void.

☐ 2. **GENERAL INSPECTION CONTINGENCY.** This Contract is contingent until 9 p.m. on the **10** Day after the Date of Ratification ("Deadline") for satisfactory inspections of the property by the Buyer, a home inspection firm and/or other representative(s) at the Buyer's discretion and expense. The Seller will have all utilities in service at the time of inspection(s). In the event of an unsatisfactory inspection, as determined by Buyer in his sole discretion, Buyer may, by Notice to Seller, declare this contract null and void in which case Buyer's deposit shall be refunded in full. In the event such Notice is not given by the Deadline, this contract will remain in full force and effect.

☐ 3. **"AS IS" PROPERTY CONDITION.** The Property, including but not limited to electrical, plumbing, heating, air conditioning, equipment and fixtures ("the Property") is sold and shall be delivered in "as is" physical condition, to be determined as of the ☐ Date of Ratification, ☑ the Date of the Home Inspection or ☐ (other) _____. The Seller makes no representation or warranty, express or implied, as to the condition of the Property or any equipment or System contained therein. All clauses in this Contract pertaining to Property condition, repairs or compliance with city, state or county regulations are hereby deleted from this Contract. Smoke detectors will be installed as required by the laws or regulations of the appropriate jurisdiction. The property shall be delivered free and clear of trash and debris and broom clean.

**SUBJECT TO THE TERMS AND CONDITIONS OF CHL'S REAL ESTATE PURCHASE ADDENDUM ATTACHED HERE TO**

©2007 The Greater Capital Area Association of REALTORS®, Inc.
This recommended form is the property of the The Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.

GCAAR Form # 1332 - MC & DC       1 of 6       2/2007

**4. RADON INSPECTION CONTINGENCY.** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification ("Deadline") to _____ allow the Buyer, at the Buyer's discretion and expense, to have the property inspected for the presence of radon by a Testing Firm listed with the U.S. Environmental Protection Agency ("EPA"), National Radon Safety Board ("NRSB"), or the National Environmental Health Association ("NEHA") using an EPA approved testing method. Testing device to be placed and retrieved by an EPA, NRSB or NEHA listed technician or their authorized subcontractor. This contingency will terminate at the Deadline unless by the Deadline, the Buyer Delivers to the Seller a copy of the radon testing report which confirms the presence of radon that equals or exceeds the action level established by the EPA together with either A or B:

A.  Radon Testing Notice requiring the Seller at Seller's expense prior to settlement to remediate the radon condition by contracting with an EPA, NRSB or NEHA listed remediation firm to reduce the presence of radon below the action level established by the EPA and to provide Buyer written verification that the required remediation has been performed.

If the Seller elects not to perform in accordance with the Radon Testing Notice or makes another offer, the Seller will Deliver notice to the Buyer of such decision within 3 Days after Delivery of the Radon Testing Notice.

Within 3 Days after Delivery of a notice from one party, the other party may:
   (i)   Deliver notice accepting the terms contained in the other party's notice; or
   (ii)   Deliver notice continuing negotiations by making another offer; or
   (iii)   Deliver notice that this Contract will become void at 9 p.m. on the 3rd Day following Delivery, unless the recipient delivers to the other party notice of the acceptance of the last Delivered offer prior to that date and time, in which case this Contract will remain in full force and effect.

Failure of either party to respond within 3 Days after Delivery of a Notice from the other party will result in acceptance by both parties of the terms of the most recent notice.

B.  Notice declaring this Contract void.

**5. LEAD-BASED PAINT INSPECTION CONTINGENCY** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification (must be 10 days or such other period as shall be mutually agreeable to the Buyer and Seller) ("Deadline") to allow Buyer, at Buyer's discretion and expense, to have a risk assessment or inspection of the interior and exterior of the subject property for the presence of lead paint and/or lead-based paint hazards ("Inspection"). Such Inspection shall be performed by an individual certified by the Maryland Department of the Environment ("MDE"), for Maryland properties, or the DC Department of Health Lead Based Paint Program, for DC Properties, to conduct such assessment or inspection ("Certified Inspector"). This contingency will terminate at the Deadline unless by the Deadline, Buyer Delivers to Seller a copy of the risk assessment report or inspection report which reveals conditions for which the Certified Inspector recommends corrective action together with either A or B.

A.  Lead-Based Paint Testing Notice identifying specific lead based paint hazards and requiring Seller at Seller's expense prior to settlement to perform requisite corrective action in abate such lead based paint hazards.  In the event Seller agrees to have the corrective action performed, Seller shall furnish, not later than the date of settlement, a written certification by a Certified Inspector demonstrating that the specified conditions have been remedied.

If Seller elects not to perform in accordance with the Lead Based Paint Notice or makes another offer, Seller will Deliver notice to Buyer of such decision within 3 Days after Delivery of the Lead Based Paint Notice.

Within 3 Days after Delivery of a notice from one party, the other party may:
   (i)   Deliver notice accepting the terms contained in the other party's notice; or
   (ii)   Deliver notice continuing negotiations by making another offer; or
   (iii)   Deliver notice that this Contract will become void at 9 p.m. on the 3rd Day following Delivery, unless the recipient delivers to the other party notice of the acceptance of the last Delivered offer prior to that date and time, in which case this Contract will remain in full force and effect.

Failure of either party to respond within 3 Days after Delivery of a Notice from the other party will result in acceptance by both parties of the terms of the most recent notice.

B.  Notice declaring this Contract void.

**6. POST SETTLEMENT AIR CONDITIONING AND/OR SWIMMING POOL INSPECTION CONTINGENCY**
These provisions shall apply to the following system(s) (the "System") (check appropriate system(s)):
☐ the Air Conditioning System; and/or   ☐ the Swimming Pool System (defined as the swimming pool and related equipment, including the structural integrity of the swimming pool).

Due to weather conditions, the System located at the Property cannot be adequately tested to ensure that it is in compliance with the Equipment, Maintenance and Condition paragraph or the Condition of Property and Possession paragraph, as applicable, of the Sales Contract and this Addendum (the "Required Condition").   Buyer and Seller agree that Buyer shall, at his expense, make an inspection of the System at the earliest practicable date, consistent with the weather conditions, but in no event later than the May 31 following ratification (the "Final Inspection Date"). Seller's agreement that the System will be in the Required Condition at the time of settlement or occupancy, whichever occurs first, is hereby extended through the date of the inspection of the System, but in no event later than these Final Inspection Date.

Buyer shall give Notice to Seller of the date and time on which the inspection is to be made, and Seller shall have the option of being present or represented at said inspection.  The inspection shall be conducted by a heating and air conditioning technician, or pool service company, as appropriate, licensed in the jurisdiction in which the Property is located.  Buyer agrees not to attempt to operate the System prior to the scheduled date for the inspection.  In the event Buyer attempts to operate the System prior to said inspection, then any warranty hereunder, express or implied, by Seller, shall be deemed to be null and void.

©2005 The Greater Capital Area Association of REALTORS, Inc.
This Recommended Form is the property of the The Greater Capital Area Association of REALTORS, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

LF236
GCAAR Form # 1332 - MC & DC                        Page 2 of 6                        10/2005

Feb-28-07   01:27pm   From-REAL ESTATE MANAGEMENT 8055773481      805 577 3481      T-301   P.035/044   F-522

In the event that the aforesaid inspection shows the System to be in the Required Condition, then Seller's obligations hereunder with respect to the System shall be deemed fulfilled. In the event that the aforesaid inspection shows the System not to be in the Required Condition, Buyer shall provide Notice of same to Seller no later than the Final Inspection Date, in which event Seller shall be responsible for the actual cost necessary to place the System in the Required Condition. All remedial action taken hereunder shall be performed in a good and workmanlike manner by a heating and air conditioning contractor or pool service company, as appropriate, selected by Seller who is licensed in the jurisdiction in which the Property is located, and shall be completed within 10 days after Buyer's Notice to Seller ("Seller's Timeframe"). Buyer shall make the Property available at reasonable times for the completion of such work. In the event that the System is not in the Required Condition by the expiration of Seller's Timeframe, Buyer shall be irrevocably authorized to have the required remedial action performed by a contractor meeting the aforesaid qualifications. Upon completion of the remedial action, but no later than 10 days following the expiration of Seller's Timeframe ("Buyer's Timeframe"), Buyer shall provide a Notice to Seller including a copy of the contractor's invoice and instructions as to whether the amount shown in said invoice shall be paid directly to said contractor or to Buyer as a reimbursement for covered expenses. Upon receipt of said Notice, Seller shall immediately make payment as instructed in the Notice.

In the event that any Notice required to be given in this Addendum is not given within the timeframe specified, then Seller's obligations hereunder with respect to the System shall be deemed fulfilled.

7. **SELLER'S CREDIT(S) TO BUYER** (For use with the MAR contract). In addition to any other amount(s) the Seller has agreed to pay under other provisions of this Contract, the Seller shall credit the Buyer at time of settlement with the sum of $_____ towards Buyer's settlement costs. It is the Buyer's responsibility to confirm with his lender, if applicable, that the entire credit provided for herein may be utilized. If lender prohibits the Seller from payment of any portion of this credit, then said credit shall be reduced to the amount allowed by the lender.

8. **HOLDING DEPOSIT CHECK** It is understood and agreed by all Parties that the Buyer has instructed the Escrow Agent to hold and not deposit the above described deposit check until _____ Days after Ratification at which time said check shall be deposited by the Broker. _Inspection Cont. is released_

9. **INTEREST-BEARING ACCOUNT DEPOSIT.** The Parties hereto agree and authorize _____ Jones and Foster to place the deposit in an interest-bearing escrow account. Interest shall accrue and be payable to the Buyer at time of settlement. In order to establish an Interest Bearing Account, the Buyer understands that a completed W-9 form and a copy of a government issued photo ID must be given to the Escrow Agent. A Processing fee of $_____ shall be charged to the party receiving the interest by the above Escrow Agent for this service. In the event of a forfeiture of deposit, any interest accrued shall be payable to the Seller.

10. **APPRAISAL CONTINGENCY.** This Contract IS CONTINGENT until 9:00 p.m. on the _____ day after the Date of Ratification ("Deadline") for Buyer to obtain a written appraised valuation of the property (hereinafter "Appraisal") certifying the value of the property to be no less than the sales price (Check with your lender to confirm that the Appraisal will be completed by the Deadline). If Buyer is obtaining financing, the Lender shall select the Appraiser. If this is a cash sale, the Buyer shall select the Appraiser. The Appraiser shall be licensed to perform appraisals in the jurisdiction in which the property is located. Seller shall make the property available for inspection by such Appraiser.

In the event that the Appraisal is lower than the Sales Price, the Buyer has the option of proceeding with this Contract at the stated Sales Price without regard to the Appraisal. However, should the Buyer decline to proceed with this Contract at the stated Sales Price (due to the Appraisal being lower than the stated Sales Price), Buyer shall deliver to Seller, by the Deadline, a Notice (See GCAAR Buyer's Appraisal Notice), requesting that the sales price be reduced to a specified lower amount of not less than the appraised value, together with a copy of the written Appraisal ("Buyer's Appraisal Notice").

Should Buyer fail to deliver Buyer's Appraisal Notice by the Deadline, Buyer's Appraisal Contingency will continue, unless Seller at Seller's option, prior to Seller's receipt of the Buyer's Appraisal Notice, gives Notice to Buyer that the Deadline has passed and the Contingency will EXPIRE If Seller Delivers such Notice this Contingency will EXPIRE at 9 p.m. on the third day following Delivery of Seller's Notice, unless prior to that date and time Buyer delivers Buyer's Appraisal Notice. If this Contingency expires pursuant to the terms of this paragraph, this contract will remain in full force and effect.

All Notices (under this Appraisal Contingency) delivered subsequent to the delivery of the Buyer's Appraisal Notice shall be treated as follows:

WITHIN 3 DAYS AFTER NOTICE DELIVERY FROM ONE PARTY, THE OTHER PARTY MAY:

1. Deliver notice accepting the terms contained in the other party's notice; OR
2. Deliver notice continuing negotiations by making another offer; OR
3. Deliver notice that this Contract will become void at 9:00 p.m. on the 3rd Day following Delivery, unless the recipient delivers to the other party Notice of the acceptance of the last Delivered offer prior to that date and time, in which case, this Contract will remain in full force and effect.

FAILURE OF EITHER PARTY TO RESPOND WITHIN 3 DAYS AFTER NOTICE DELIVERY WILL RESULT IN THE CONTRACT BECOMING VOID.

©2005 The Greater Capital Area Association of REALTORS, Inc.
This Recommended Form is the property of the The Greater Capital Area Association of REALTORS, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

(16)

**11. PREQUALIFICATION LETTER CONTINGENCY.** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification ("Deadline") upon the Buyer Delivering to the Seller a prequalification letter from an institutional lender stating that the financing described in this Contract is available to the Buyer and, based upon written loan application, a preliminary credit report, and the information provided by the Buyer, the financing should be committed subject to appropriate verification, approval and commitment. At anytime after the Deadline, but prior to Delivery to the Seller of the prequalification letter, the Seller may give notice to the Buyer declaring this Contract void.

**12. GIFT LETTER.** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification ("Deadline") upon the Buyer providing to the Seller a Gift Letter and necessary documentation satisfactory to the lender ("Gift Letter") in the amount of $_____ from _____. At any time after the Deadline, but prior to Delivery to the Seller of the Gift Letter, the Seller may give notice to the Buyer declaring this Contract void. Once the Gift Letter has been Delivered, if the Buyer does not have the gift funds to settle as provided in this Contract, the Buyer will be in default.

**13. SALE OF THE BUYER'S PROPERTY AND KICK-OUT.** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification ("Deadline") upon the sale of the Buyer's property located at _____ ("Buyer's Property"). If the Buyer does not satisfy or remove this contingency by the Deadline pursuant to paragraph 13C below, then at any time after the Deadline, but prior to the Buyer satisfying or removing this contingency, either the Seller or the Buyer may declare this Contract void by providing notice to the other party.

A. The Seller may continue to offer the Property for sale and accept bona fide back-up offers to this Contract. If during the term of this contingency, a back-up offer is accepted, the Seller will Deliver notice to the Buyer requiring that this contingency be satisfied or removed pursuant to paragraph 13C below not later than 9 p.m. on the _____ Day after Delivery of the notice, or this Contract will become void.

B. The Buyer's Property will be listed exclusively and actively marketed by a licensed real estate broker and entered into a multiple listing service within 3 Days after the Date of Ratification at a price not to exceed $_____ .

C. The Buyer may:
   (i) satisfy this contingency by Delivering to the Seller a copy of the ratified contract for the sale of the Buyer's Property with evidence that all contingencies, other than financing, have been removed or waived, together with a prequalification letter as described in the Prequalification Letter Contingency paragraph of this addendum for the Buyer of the Buyer's Property, or

   (i) remove this contingency by Delivering to the Seller (a) the lender's letter stating that the financing is not contingent in any manner upon the sale and settlement of any real estate or obtaining a lease of any real estate and that the Buyer has sufficient funds available for the down payment and closing costs necessary to complete settlement; or (b) evidence of sufficient funds available to complete settlement without obtaining financing.

D. If the Buyer satisfies the requirements of Paragraph 13C (i) above, this Contract will remain contingent upon the settlement of the sale of the Buyer's Property. Settlement under this Contract may not be delayed more than _____ Days after the settlement date (specified in this contract) without the parties' written consent. If a further delay is required to obtain coinciding settlements and the parties do not agree, then this Contract will become void. If at any time after the Date of Ratification the contract for the sale of the Buyer's Property becomes void, the Buyer will immediately Deliver notice to the Seller together with evidence of such voiding, at which time either the Seller or the Buyer may declare this Contract void by Delivering notice to the other party. This paragraph will survive the satisfaction of the contingency for the sale of the Buyer's Property.

**14. BACK-UP CONTRACT OR OFFER.** This Contract is first back-up to another contract or offer dated _____ , between the Seller and _____ as the Buyer. This Contract shall become the primary contract immediately upon Delivery of notice from the Seller that the other contract or offer is void along with a copy of the fully executed release. The Buyer may void this back-up contract at any time prior to its becoming primary by Delivering notice to the Seller. If the contract dated _____ settles, this back-up contract will become void. The rights and obligations of the parties under the primary contract are superior to the rights and obligations of the parties to this back-up contract. All timeframes contained in this contract shall not commence until the date this contract becomes primary. Additionally, the date for Settlement will be _____ days after the date this contract becomes primary.

©2005 The Greater Capital Area Association of REALTORS, Inc.
This Recommended Form is the property of the The Greater Capital Area Association of REALTORS, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

**15. COINCIDING SETTLEMENTS.** Settlement on this Contract is contingent upon the settlement on the contract for the sale of the Buyer's Property located at _____ ("Buyer's Property"). A copy of said contract is attached evidencing that all contingencies, other than financing, have been removed or waived, along with a prequalification letter as described in the Prequalification Letter Contingency paragraph of this addendum for the Buyer of the Buyer's Property. Settlement under this Contract may not be delayed more than _____ Days after the settlement date (specified in this Contract) without the parties' written consent. If a further delay is required to obtain the settlement of coinciding settlements and the parties do not agree, then this Contract will become void. If at any time after the Date of Ratification the contract for the sale of the Buyer's Property becomes void, the Buyer will immediately Deliver notice to the Seller together with evidence of such voiding, at which time either the Seller or the Buyer may declare this Contract void by Delivering notice to the other party.

**16. OPTION TO KEEP HOUSE ON MARKET.** The Seller may continue to offer this property for sale and accept bona fide back-up offers to this Contract. If during the contingency period (s) as set forth in paragraph #'s _____ of this Contract or paragraph #'s _____ of form #_____, a back-up offer is accepted, the Seller will Deliver notice to the Buyer together with a copy of the back-up Contract requiring that said contingency(ies) be satisfied or removed no later than 9 p.m. on the _____ Day after Delivery of the notice, or this Contract will become void.

**17. CONTINGENT ON THE SELLER PURCHASING ANOTHER HOME.** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification ("Deadline") to allow the Seller to obtain a ratified contract to purchase another home. This provision will terminate at the Deadline and this Contract will remain in full force and effect unless the Seller declares this Contract void by Delivering notice to the Buyer by the Deadline.

**18. THIRD PARTY APPROVAL.** This Contract is contingent upon the approval of _____ by 9 p.m. on the _____ Day after the Date of Ratification ("Deadline"). If notice of disapproval is not Delivered to the other party by the Deadline, this contingency will terminate and this Contract will remain in full force and effect. No notice of approval is required. If notice of disapproval is Delivered by the Deadline, this Contract will become void.

**19. ITEMS TO BE REMOVED.** Notwithstanding the provisions of this Contract, the following fixtures and/or items of personal property shall not convey and shall be removed from the subject property by the Seller prior to settlement and will not be replaced: _____

**20. POST-SETTLEMENT OCCUPANCY AGREEMENT.** The Parties agree that the Seller shall occupy the property for a period of _____ days following settlement at the rate of $_____ per day. Seller shall pay a security deposit of $_____ at the time of settlement. The Seller and the Buyer acknowledge that they have read and executed, or will execute at settlement, the GCAAR Post-Settlement Occupancy Agreement and agree to be bound by its terms and provisions.

**21. PRE-SETTLEMENT OCCUPANCY AGREEMENT.** The Parties agree that Buyer shall occupy the property prior to settlement commencing on the _____ day of _____ at the rate of $_____ per day. The Seller and the Buyer acknowledge that they have read and executed, or will execute prior to occupancy, the GCAAR Pre-Settlement Occupancy Agreement and agree to be bound by its terms and provisions.

**22. LICENSED SELLER/BUYER AGENT.** (NOTE: This clause should be used when Buyer or Seller is a licensed real estate agent or is related to one of the Parties. Failure to include could result in violation of the law.) The Parties acknowledge that _____ is a licensed real estate agent in _____ (DC, MD, VA) associated with _____ and may share in the brokerage fee to be paid and is the Buyer, Seller or is related to one of the Parties hereto.

**23. BROKERAGE FEE PAID BY THE BUYER.** It is understood and agreed by all parties that (company name) _____, is _____ (agent's name) acting as an agent solely representing the Buyer in this transaction ("Buyer's Broker.") The Seller has no obligation to the Buyer's Broker, and does not owe a brokerage fee or other consideration of any nature to said Buyer's Broker. The settlement office is directed to collect from the Buyer funds, at settlement, and to disburse said fee, as per the separate Buyer's Broker Agreement between the Buyer's Broker and the Buyer. This Buyer's Broker's fee is separate and apart from any brokerage fee owed to the Seller's Listing Broker pursuant to the agency paragraph of the contract. The parties acknowledge that the said Buyer's Broker relationship was disclosed to the Seller and/or the Seller's agent prior to showing the property to the Buyer.

**24. AGREEMENT BETWEEN SELLER (FSBO/BUILDER) AND BUYER'S BROKER.** It is understood and agreed by all Parties that (agent's name) _____, of (company name) _____ is acting as an agent solely representing the Buyer in this transaction ("Buyer's Broker.") The Seller agrees to pay to the Buyer's Broker a cash payment of $_____. The settlement office is hereby irrevocably directed to deduct from the proceeds of the sale at settlement and pay the said Buyer's Broker fee. This fee is separate and apart from, and is in addition to, any brokerage fee owed to any Listing Broker pursuant to the agency paragraph of this Contract. The Parties acknowledge that said Buyer's Broker relationship was disclosed to the Seller and/or the Seller's agent prior to showing the property to the Buyer.

©2005 The Greater Capital Area Association of REALTORS, Inc.
This Recommended Form is the property of the The Greater Capital Area Association of REALTORS, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

Feb-28-07   01:30pm   From-REAL ESTATE MANAGEMENT 8055773481        805 577 3481            T-301  P.038/044  F-522

**25. MASTER PLAN REVIEW FOR MONTGOMERY COUNTY PROPERTIES.** (except City of Rockville.) Notwithstanding any provisions to the contrary, this Contract is contingent until 9:00 P.M. on the _____ Day after the Date of Ratification ("Deadline"), to allow the Buyer the opportunity to review the applicable County Master Plan and the municipal land use plan for the area in which the property is located as well as any amendment to either plan and any approved official map showing planned uses, roads and highways, parks and other public facilities affecting the property ("Master Plan"). In the event the Buyer is dissatisfied with anything contained in the applicable Master Plan or municipal land use plan, in the Buyer's sole discretion, the Buyer shall Deliver notice of disapproval to the Seller on or before the Deadline specified in this paragraph, in which event this Contract shall be null and void and the Buyer's deposit shall be returned. If no such notice is received by said Deadline, this contingency shall automatically expire and be of no force and effect. (This clause may not be used for property within the corporate limits of the City of Rockville.)

**26. ADDITIONAL PROVISIONS:**

**THE FOLLOWING GENERAL PROVISIONS PARAGRAPH SHALL APPLY TO THIS ENTIRE CONTRACT AND THE NOTICES PARAGRAPH SHALL SUPERSEDE ANY OTHER NOTICE PROVISION IN THIS ENTIRE CONTRACT.**

**GENERAL PROVISIONS.** This Contract shall be deemed ratified when the contract, all addenda and any modifications thereto have been signed and initialed, where required by all parties, and Delivered to the other party pursuant to the Notices paragraph.

**NOTICES.** All notices under the contract shall be in writing. Notices to the Seller shall be effective when delivered to the Seller or an Agent of the Seller named in the contract (including a Dual Agent, Intra-Company Agent, or Designated Representative assigned to the Seller, as applicable, or alternatively, to the Agent's Supervising Manager.) Notices to the Buyer shall be effective when delivered to the Buyer or an Agent of the Buyer named in the contract (including a Dual Agent, Intra-Company Agent, or Designated Representative assigned to the Buyer, as applicable, or alternatively, to the Agent's Supervising Manager). "Purchaser" means "Buyer" and vice versa. "Delivery" means hand carried, sent by overnight delivery service, sent by wired or electronic medium which produces a tangible record of the transmission (such as telegram, mailgram, telecopier or "Fax", email which includes an attachment with an actual copy of the executed instruments being transmitted, or U.S. Postal mailing.) In the event of overnight delivery service, Delivery will be deemed to have been made on the next business Day (Monday through Friday excluding federal holidays) following the sending, unless earlier receipt is acknowledged in writing. In the event of U.S. Postal mailing, Delivery will be deemed to have been made on the third business Day (Monday through Saturday, excluding federal holidays) following the mailing, unless earlier receipt is acknowledged in writing. "Day" or "Days" means calendar days unless otherwise specified. For the purpose of computing time periods, the first Day will be the Day following Delivery, and the time period will end at 9 p.m. on the Day specified. The provisions of this paragraph regarding delivery of notices shall also be applicable to delivery of resale packages for condominiums, cooperatives and/or homeowners associations as may be required in a separate addendum.

Except as modified by this Addendum, all of the terms and provisions of this Contract are hereby expressly ratified and confirmed and will remain in full force and effect. The captions and headings are for convenience of reference only.

_____  2-28-07        _____  2/21/07
SELLER                    DATE           BUYER                     DATE

_____  _____        _____  2/21/07
SELLER                    DATE           BUYER                     DATE

_____/_____        _____/_____
HOME TELEPHONE NUMBER                   HOME TELEPHONE NUMBER

_____/_____        _____/_____
OFFICE TELEPHONE NUMBER                 OFFICE TELEPHONE NUMBER

_____/_____        _____/_____
FAX NUMBER                              FAX NUMBER

LISTING AGENT:                          SELLING AGENT/BUYER'S AGENT:

_____                 _____
Name                                    Name

_____                 _____
Real Estate License Number and Jurisdiction   Real Estate License Number and Jurisdiction

©2005 The Greater Capital Area Association of REALTORS, Inc.
This Recommended Form is the property of the The Greater Capital Area Association of REALTORS, Inc.
Previous editions of this Form should be destroyed.

SUBJECT TO THE TERMS AND
CONDITIONS OF CHL'S REAL
ESTATE PURCHASE ADDENDUM
ATTACHED HERE TO

LF236
GCAAR Form # 1332 - MC & DC        Page 6 of 6

Feb-28-07  01:31pm  From-REAL ESTATE MANAGEMENT 8055773481        805 577 3481        T-301  P.039/044  F-522

  

## Washington, DC Jurisdictional Addendum
### (REQUIRED NOTICE AND DISCLOSURE ADDENDUM
### FOR USE WITH THE REGIONAL CONTRACT)

The Contract of Sale dated 2/8/2007 Address 521 - Quintana Plaza NW
City Washington State DC Zip 20011 Lot: Sale
Block/Square: 3200 Unit: Section: Tax ID # 3200/0266
Parking Space(s) # Storage Unit(s) # Subdivision/Project: Bright Wood
between Seller Quintana Five, Gloria Lease Thai and
Buyer Phim Hansen is hereby amended by the
incorporation of this Addendum, which shall supersede any provisions to the contrary in the Contract.

**1. LEAD - BASED PAINT HAZARD.** A Seller who fails to give the required Lead-Based Paint Disclosure Form and Pamphlet may be liable under the Act for three times the amount of damages. The Seller represents that residential Property ☒ was built prior to 1978 OR ☐ was not built prior to 1078 OR ☐ building date is uncertain. If the dwelling(s) was built prior to 1978 or if the building date is uncertain, this Contract is not complete and not ratified unless it includes, and the Seller and Buyer both accept the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards, whereby the Buyer acknowledges receipt of required Lead Paint information and has either taken the opportunity to incorporate a Lead-Based Paint inspection contingency or waived such a right. The Seller and any agent involved in the transaction are required to retain a copy of the completed Lead-Based Paint Disclosure Form for a period of 3 years following the date of settlement. The Seller and Buyer acknowledge by their respective initials below that they have read and understand the provisions of this paragraph.

_____/_____ Seller's Initials            _____ Buyer's Initials

**2. SELLER DISCLOSURE.** Buyer acknowledges receipt of the Seller's Disclosure Statement pursuant to D.C. Code 45-451 prior to the submission of the offer ☐ Yes ☒ No.

_____ Buyer's Initials

**3. RECORDATION AND TRANSFER TAXES.** The D.C. Recordation Tax will be paid by the Buyer and the D.C. Transfer Tax will be paid by the Seller.

**4. D.C. SOIL DISCLOSURE REQUIREMENTS.** The characteristic of the soil on the subject Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976 and as shown on the Soil Maps of the District of Columbia at the back of that publication is _____

For further information, the Buyer can contact a soil testing laboratory, the District of Columbia Department of Environmental Services, or the Soil Conservation Service of the Department of Agriculture.

**5. TENANCY.** Seller represents that property ☐ is ☒ is not subject to an existing residential lease or tenancy.
  a. If the Property is tenant occupied, Buyer hereby certifies that Buyer ☐ will ☐ will not occupy the Property.

  b. The Property is sold and shall be conveyed free of existing tenancy except as follows: _____ (hereinafter the "Tenant(s)"). Without the prior written consent of Buyer (which shall not be unreasonably withheld) Seller shall not modify the terms of or terminate such tenancy, except for non-payment of rent or enter into any new leases or tenancies with respect to the Property. Seller represents to Buyer and Agents that on _____ (date), Seller has provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale or will provide same pursuant to the following paragraph. Seller and Buyer further acknowledge that, in addition to the rights under the bona fide offer of sale, the Tenant(s) has an additional fifteen (15) day right of first refusal to purchase the Property during the period specified by District of Columbia law and regulations.

© 2005, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.
GCAAR Form # 1313 Washington DC Jurisdictional Addendum            Page 1 of 2
(Previously Form #114)

SUBJECT TO THE TERMS AND
CONDITIONS OF CHL'S REAL
ESTATE PURCHASE ADDENDUM
ATTACHED HERE TO

Seller further represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver to the Tenant(s) and send by first-class mail the notice of right of first refusal required by District of Columbia law and regulations and a copy of this Contract. In the event that prior to the date of this Contract Seller has not provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale, Seller represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver and send by first class mail to the Tenant(s) a written notice of the intended sale of the Property, a bona fide offer of sale, the required notice of right of first refusal and a copy of this Contract. Upon or after execution of a Contract of sale of the Property between Seller and the Tenant(s), at the option of Buyer (exercisable by written notice to Seller) this Contract shall be void and the deposit hereunder shall be returned to Buyer. If, however, the Tenant(s) shall fail to exercise the foregoing rights to purchase the Property as shall execute and deliver a valid rejection of said rights, then this Contract shall remain in full force and effect. The Seller shall keep Buyer and the Agents apprised of all negotiations, correspondence, Contracts and other developments with respect to negotiations with the Tenant(s). All actions required hereunder to be taken by Seller shall be taken in accordance with District of Columbia law and regulations.

6. **UNDERGROUND STORAGE TANK DISCLOSURE:** (Applicable to single family sales only.) In accordance with the requirements of Section 8(g) of the District of Columbia Underground Storage Tank Management Act of 1990 (D.C. Code Section 6-995.2), as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (the "Act") and the regulations adopted thereunder by the District of Columbia (the "Regulations"), Seller hereby informs Buyer that Seller has no knowledge of the existence or removal during Seller's ownership of the Property of any underground storage tanks on that term is defined in the Act and the Regulations, except as follows: _____

I hereby certify that I have received and read a copy of the disclosure notice in this paragraph prior to signing this Contract.
Buyer: _____

7. **FOREIGN INVESTMENT TAXES-FIRPTA:** Section 1445 of the United States Internal Revenue Code of 1986 provides that a buyer of a residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if (a) the purchase price exceeds $300,000.00 or the purchase price is less than or equal to $300,000.00 and the property will not be owner occupied and (b) Seller is a foreign person for purposes of U.S. income taxation (foreign person). A foreign person includes, but is not limited to, a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined by the Internal Revenue Code and applicable regulations). Seller represents that Seller is not a foreign person and agrees to execute an affidavit to this effect at the time of settlement.

8. **CONDOMINIUM/COOPERATIVE/HOMEOWNERS ASSOCIATION:** Seller represents that this property ☐ is ☐ is not subject to a condominium, cooperative or homeowners association that is entitled to assess a mandatory fee. The current fee is $_____

9. **NOTICES.** All notices under the contract shall be in writing. Notices to the Seller shall be effective when delivered to the Seller or an Agent of the Seller named in the contract (including a Dual Agent, Intra-Company Agent, or Designated Representative assigned to the Seller, as applicable, or alternatively, to the Agent's Supervising Manager.) Notices to the Buyer shall be effective when delivered to the Buyer or an Agent of the Buyer named in the contract (including a Dual Agent, Intra-Company Agent, or Designated Representative assigned to the Buyer, as applicable, or alternatively, to the Agent's Supervising Manager). "Purchaser" means "Buyer" and vice versa. "Delivery" means hand carried, sent by overnight delivery service, sent by wired or electronic medium which produces a tangible record of the transmission (such as telegram, mailgram, telecopier or "fax", email which includes an attachment with an actual copy of the executed instruments being transmitted, or U.S. Postal mailing.) In the event of overnight delivery service, Delivery will be deemed to have been made on the next business Day (Monday through Friday-excluding federal holidays) following the sending, unless earlier receipt is acknowledged in writing. In the event of U.S. Postal mailing, Delivery will be deemed to have been made on the third business Day (Monday through Saturday, excluding federal holidays) following the mailing, unless earlier receipt is acknowledged in writing. "Day" or "Days" means calendar days. For the purpose of computing time periods, the first Day will be the Day following Delivery; and the time period will end at 9 p.m. on the Day specified. The provisions of this paragraph regarding delivery of notices shall also be applicable to delivery of resale packages for condominiums, cooperatives and/or homeowners associations as may be required in a separate addendum.

_____  2-28-07                _____  2/8/07
Seller            Date                   Buyer            Date

                                         _____  2/8/07
Seller            Date                   Buyer            Date

© 2006, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only
Previous editions of this Form should be destroyed.

GCAAR Form # 1313  Washington DC Jurisdictional Addendum          Page 2 of 2          10/2005
(Previously Form #114)

Feb-28-07   01:32pm   From-REAL ESTATE MANAGEMENT 8055773481          805 577 3481          T-301   P.041/044   F-522
FEB-24-2007 02:32 PM   PHIMUM-CRE...

  

## Lead Paint – Federal Disclosure
### Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards

RE: 521 Quintana Place NW
Property Address

**LEAD WARNING STATEMENT**
Every purchaser/tenant of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller/landlord of any interest in residential real property is required to provide the buyer/tenant with any information on lead-based paint hazards from risk assessments or inspections in the seller's/landlord's possession and notify the buyer/tenant of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase/lease.

**SELLER'S/LANDLORD'S DISCLOSURE** (initial)

(a)  ☐  Presence of lead-based paint and/or lead-based paint hazards (check one below):
     ☐  Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

     ☐  Seller/Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)  ☐  Records and reports available to the seller/landlord (check one below):
     ☐  Seller/Landlord has provided the purchaser/tenant with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

     ☐  Seller/Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**PURCHASER'S/TENANT'S ACKNOWLEDGMENT** (initial)
Purchaser/Tenant has read the Lead Warning Statement above.  ☐ Yes ☐ No ☑ None listed
Purchaser/Tenant has received copies of all information listed above. ☐ Yes ☐ No
Purchaser/Tenant has received the pamphlet Protect Your Family From Lead in Your Home. ☑ Yes ☐ No
Purchaser has (check one below):
☐  Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
☑  Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**AGENT'S ACKNOWLEDGMENT** (initial)
     Agent has informed the seller/landlord of the seller's/landlord's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**CERTIFICATION OF ACCURACY**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

_____  2-28-07          _____  2/21/07
Seller/Landlord            Date             Buyer/Tenant              Date

_____  _____           _____  2/21/07
Seller/Landlord            Date             Buyer/Tenant              Date

_____  _____           _____  2/21/07
Agent                     Date             Agent                     Date

©2001. The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by REALTORS® members only.
Previous editions of this Form should be destroyed.

GCAAR # 907 Federal Lead Disclosure – MD & DC               Page 1 of 1
(Formerly form # 500)

SUBJECT TO THE TERMS AND CONDITIONS OF CHL'S REAL ESTATE PURCHASE ADDENDUM ATTACHED HERE TO

Feb-28-07   01:32pm   From-REAL ESTATE MANAGEMENT 8055773481          805 577 3481          T-301   P.042/044   F-522



**AFFILIATED BUSINESS ARRANGEMENT**
**DISCLOSURE STATEMENT**

| For Agent Use: |
| Agent Name: |
| First        Last |
| Office Name: |

Please Check One:  ☐ Buyer  ☑ M/m  ☐ Seller   *Hanson*

To (Client's Name):  M/m. *Hanson*

Client Phone Number(s):   Home:_____   Work:_____   Cell:_____

Property Address: (Street)  57 *Dunbar* (City) *East Wash DC* (State)____ (Zip) 20011

From:   Long & Foster Real Estate, Inc.   MLS #:_____   Email:_____

Property Type (check one):
☑ Single-family   ☐ Townhouse   ☐ Condo
☐ Multi-family    ☐ Lot / Land   ☐ Co-op

In connection with the sale and purchase of this property, you may need to obtain certain settlement services. This is to give you notice that Long & Foster Real Estate, Inc. ("Long & Foster") has business relationships (e.g., direct or indirect ownership interests, joint ventures and/or contractual relationships including marketing agreements and/or office leases) with the following mortgage, title, closing, and insurance service providers:

For mortgage financing:
Prosperity Mortgage Company

To close your loan and/or for title insurance:
Bon Air Title *and its affiliate* Bon Air/Long & Foster Title Agency LLC       (Richmond)
Brennan Title Company *and its affiliate* Positive Title LLC       (Virginia, Maryland, DC and Delaware)
RGS Fountainhead Title *and its affiliate* Assurance Title LLC       (Maryland, DC, Delaware and Pennsylvania)
RGS Title *and its affiliate* Mid-States Title of Virginia LLC       (Virginia, Maryland, DC and Delaware)
Universal Settlements *and its affiliate* Mid-States Title of Maryland LLC       (Virginia, Maryland and DC)
MBH Settlement Group LC *and its affiliate* Eastern Title LLC       (Virginia)
Shaheen & Shaheen *and its affiliate* Long & Foster Great American Title LLC       (Hampton Roads)
Shaffer Title & Escrow Inc. *and its affiliate* Long & Foster Shaffer Title Services LLC       (Hampton Roads)
Trump & Trump *and its affiliate* Long & Foster of WV Title Insurance Agency LLC       (West Virginia)
Homestead Settlement Services LLC *and its affiliate* Mid-States Title of Roanoke LLC       (SW Virginia)
Mid States Title of Southwest Virginia LLC       (SW Virginia)
Long & Foster Harbor Title LLC       (Hampton Roads)
Long & Foster Settlement Services LLC       (Philadelphia / NJ)
Long & Foster Title of Tidewater LLC       (Hampton Roads)
Southern Title Settlement LLC       (SW Virginia)

For insurance, including property and hazard:
Long & Foster Insurance Agency, Inc.

As a result of these relationships, referrals to any of the above-listed entities may provide Long & Foster (and/or any of its subsidies or affiliates) with a financial or other benefit.

Set forth below are estimated charges or a range of charges for the settlement services listed. You are NOT required to use the listed providers as a condition for purchase of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.



Page 1 of 2


LF172

07/06

Feb-28-07    01:33pm    From-REAL ESTATE MANAGEMENT 8055773481        805 577 3481        T-301   P.043/044   F-522

## LENDER CHARGES

PROSPERITY MORTGAGE COMPANY charges fees which may include discount points and an origination fee (which accompany the interest rate you choose and which are listed as percentages of the loan amount).

Discount Points:  0% - 4%              Origination Fee:    0% - 1%

Amounts required for special credit reports such as business credit reports or for appraisals of larger properties are collected when when the work is done. Any excess fees collected are returned to you at loan closing. A lender is allowed to require the use of an attorney, credit reporting agency or real estate appraiser chosen to represent the lender's interest. Set forth below is the estimated charge or range of charges for the settlement services of a credit reporting agency and real estate appraiser that Prosperity will require you to use, as a condition of your loan on this property, to represent Prosperity's interests in the transaction.  If the undersigned make(s) use of Prosperity Mortgage Company, then you acknowledge and consent that Long & Foster Real Estate, Inc.may receive a financial or other benefit as a result of this referral.

Credit Report:    $60              Appraisal:    $375-$850 (if property value is over $2M, ask for quote)

## TITLE INSURANCE CHARGES

Estimated owners' title insurance premiums (per $1,000 of sales price):

| Virginia | | West Virginia | | Pennsylvania | |
|---|---|---|---|---|---|
| First $100,000 | $4.90 | First $100,000 | $4.76 | First $30,000 | $16.10 |
| $100,000-$500,000 | $4.40 | $100,000-$500,000 | $4.06 | $30,000-$45,000 | $8.34 |
| $500,000 to $1,000,000 | $3.75 | $500,000-$5,000,000 | $3.50 | $45,000-$100,000 | $6.90 |
| Over $1,000,000 | Ask for quote | | | $100,000-$500,000 | $5.75 |
| | | | | $500,000-$1,000,000 | $4.31 |

Simultaneous issue of Lenders' Policy (VA) is $100.00.
Title insurance commitment fee per owner/lender policy will not exceed $125.00.

Simultaneous issue of Lenders' Policy (WV) is $30.00.
Title insurance commitment fee per owner/lender policy will not exceed $50.00.

Lender required endorsements (PA) approx. $150.00.

| Maryland | | District of Columbia | |
|---|---|---|---|
| First $250,000 | $4.20 | First $250,000 | $5.70 |
| $250,000-$500,000 | $3.60 | $250,000-$500,000 | $5.10 |
| $500,000-$750,000 | $3.30 | $500,000-$1,000,000 | $4.50 |
| $750,000-$1,000,000 | $3.00 | | |

Simultaneous issue of Lenders' Policy (MD and DC) is $35.00.
Title insurance commitment fee per owner/lender policy will not exceed $75.00.

| Delaware | | New Jersey | |
|---|---|---|---|
| First $100,000 | $4.20 | First $100,000 | $6.30 |
| $100,000-$1,000,000 | $3.60 | $100,000-$500,000 | $4.60 |
| $1,000,000-$5,000,000 | $3.00 | $500,000-$2,000,000 | $3.30 |
| | | Over $2,000,000 | $2.40 |

Simultaneous issue of Lenders' Policy (DE) is $25.00.
Title insurance commitment fee per owner/lender policy will not exceed $75.00.

Simultaneous issue of Lender's Policy (NJ) is $25.00.
Lender required endorsements are $25.00 each. Miscellaneous charges are approx. $125.00. Out of pocket costs are approx. $170.00.

## INSURANCE CHARGES

LONG & FOSTER INSURANCE AGENCY, INC. is an insurance agency representing many different insurers. The only cost is the insurance policy coverage chosen by you.  Homeowners insurance premium:    $300-$1,600+ per year

## HOME WARRANTY DISCLOSURE

No Long & Foster affiliated company has an ownership interest in any company offering home warranty insurance; however, when a Seller or Purchaser purchases a home warranty insurance policy through a Long & Foster sales associate, Long & Foster Real Estate, Inc. receives a maximum of $90.00 of the premium paid for services performed in the placement of the warranty.

## ACKNOWLEDGMENT

I/we have read this disclosure form, and understand that Long & Foster Real Estate, Inc. is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

_____        2/21/07        _____        12/21/07
Signature                        Date        Signature                        Date

REALTOR®
07/06



LF172

**To our Purchaser:**

In order to facilitate your real estate transaction in DC, we want to alert you to a recently passed DC statute which may require your spouse/domestic partner to sign certain documents at the settlement (closing) for the property you are considering purchasing. The following excerpt was written by one of our title companies, Universal Settlements, LLC:

> Section 15-502 of the D.C. Code requires that under certain circumstances, owners of real property located in the District of Columbia who are married or registered domestic partners and whose spouses or domestic partners are not in title must have his or her spouse or domestic partner execute security instruments such as mortgages and deeds of trust. The real property which is subject to this requirement is defined in Section 15-501(a)(14) as a property which is owned by a debtor as his or her residence where the debtor is the head of a family or householder or a person who earns the major portion of his or her livelihood in the District of Columbia. In such cases, the security instrument such as a mortgage or deed of trust must be signed by the non-title spouse or domestic partner if such spouse or domestic partner is living with the spouse or domestic partner who is in title.

As such, spouses or registered domestic partners may need to attend closing and/or sign certain documents related to your purchase. Should you have any questions about the foregoing, please let us know so that we can direct you to the appropriate title attorney.

Sincerely,
LONG & FOSTER REAL ESTATE, INC.

_____
Associate



LF1768



05/06

# EXHIBIT B

RBO # 16404

## Countrywide Home Loans, Inc.

## REAL ESTATE PURCHASE ADDENDUM

This Real Estate Purchase Addendum ("Addendum") is to be made part of, and incorporated into, the Real Estate/Purchase Contract dated _____, 200__ ("Contract") between _____ (and Countrywide Home Loans, Inc.) and _____ ("Buyer") for the property and improvements located at the following address: _____ ("Property"). Buyer and Seller may each be referred to herein as a "Party" and collectively as the "Parties." The Contract and this Addendum together constitute the "Agreement".

The Seller and the Buyer agree as follows:

1.  **LIMITATION OF SELLER'S LIABILITY AND BUYER'S WAIVER OF IMPORTANT RIGHTS:**

    BUYER UNDERSTANDS AND ACKNOWLEDGES THAT SELLER HAS ACQUIRED THE PROPERTY THROUGH FORECLOSURE, DEED-IN-LIEU OF FORECLOSURE, OR SIMILAR PROCESS, SELLER HAS NEVER OCCUPIED THE PROPERTY, AND SELLER HAS LITTLE OR NO DIRECT KNOWLEDGE ABOUT THE CONDITION OF THE PROPERTY. BUYER AGREES THAT BUYER IS BUYING THE PROPERTY "AS IS" (AS MORE FULLY SET FORTH IN SECTION 13 OF THIS ADDENDUM).

    NOTWITHSTANDING ANY PROVISION TO THE CONTRARY IN THE AGREEMENT, SELLER'S LIABILITY AND BUYER'S SOLE AND EXCLUSIVE REMEDY IN ALL CIRCUMSTANCES AND FOR ALL CLAIMS (AS THE TERM IS DEFINED IN SECTION 26 OF THIS ADDENDUM, AND ALL REFERENCES IN THIS ADDENDUM TO "CLAIMS," "CLAIM," "Claims," or "Claim" SHALL HAVE SUCH MEANING) ARISING OUT OF OR RELATING IN ANY WAY TO THE AGREEMENT OR THE SALE OF THE PROPERTY TO BUYER INCLUDING, BUT NOT LIMITED TO, SELLER'S BREACH OR TERMINATION OF THE AGREEMENT, THE CONDITION OF THE PROPERTY, SELLER'S TITLE TO THE PROPERTY, THE OCCUPANCY STATUS OF THE PROPERTY, THE SIZE, SQUARE FOOTAGE, BOUNDARIES, OR LOCATION OF THE PROPERTY, ANY COST OR EXPENSE INCURRED BY BUYER IN SELLING A CURRENT OR PRIOR RESIDENCE OR TERMINATING A LEASE ON A CURRENT OR PRIOR RESIDENCE, OBTAINING OTHER LIVING ACCOMMODATIONS, MOVING, STORAGE OR RELOCATION EXPENSES, OR ANY OTHER COSTS OR EXPENSES INCURRED BY BUYER IN CONNECTION WITH THE AGREEMENT SHALL BE LIMITED TO NO MORE THAN:

    (A) A RETURN OF BUYER'S EARNEST MONEY DEPOSIT IF THE SALE TO BUYER DOES NOT CLOSE; AND

    (B) THE LESSER OF BUYER'S ACTUAL DAMAGES OR $5,000.00 IF THE SALE TO BUYER CLOSES.

    BUYER SHALL NOT BE ENTITLED TO A RETURN OF BUYER'S EARNEST MONEY DEPOSIT IF BUYER MATERIALLY BREACHES THE AGREEMENT.

    BUYER AGREES THAT SELLER SHALL NOT BE LIABLE TO BUYER UNDER ANY CIRCUMSTANCES FOR ANY SPECIAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES WHATSOEVER, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY), OR ANY OTHER LEGAL OR EQUITABLE PRINCIPLE, THEORY, OR CAUSE OF

BUYER (Initials) _____

SELLER (Initials) _____

-1-

ACTION ARISING OUT OF OR RELATED IN ANY WAY TO ANY CLAIM, INCLUDING, BUT NOT LIMITED TO, THE AFOREMENTIONED CLAIMS.

ANY REFERENCE TO A RETURN OF THE BUYER'S EARNEST MONEY DEPOSIT CONTAINED IN THE AGREEMENT SHALL MEAN A RETURN OF THE EARNEST MONEY DEPOSIT, LESS ANY ESCROW CANCELLATION FEES APPLICABLE TO THE BUYER UNDER THE AGREEMENT AND LESS FEES AND COSTS PAYABLE FOR SERVICES AND PRODUCTS PROVIDED DURING ESCROW AT THE BUYER'S REQUEST. TO THE FULLEST EXTENT PERMITTED BY LAW THE BUYER WAIVES ANY CLAIMS THAT THE PROPERTY IS UNIQUE AND THE BUYER ACKNOWLEDGES THAT A RETURN OF ITS EARNEST MONEY DEPOSIT CAN ADEQUATELY AND FAIRLY COMPENSATE THE BUYER FOR ALL CLAIMS. UPON RETURN OF THE EARNEST MONEY DEPOSIT TO THE BUYER, THE AGREEMENT SHALL BE TERMINATED, AND THE BUYER AND THE SELLER SHALL HAVE NO FURTHER LIABILITY, OBLIGATION, OR RESPONSIBILITY TO EACH OTHER IN CONNECTION WITH THE AGREEMENT. IF THE SALE TO BUYER CLOSES AND SELLER COMPENSATES BUYER AS PROVIDED ABOVE FOR BUYER'S ACTUAL DAMAGES, IF ANY, THEN THE BUYER AND THE SELLER SHALL HAVE NO FURTHER LIABILITY, OBLIGATION, OR RESPONSIBILITY TO EACH OTHER IN CONNECTION WITH THE AGREEMENT.

SELLER'S LIMITATION OF LIABILITY AND BUYER'S WAIVERS PROVIDED IN THE AGREEMENT ARE A MATERIAL PART OF THE CONSIDERATION TO BE RECEIVED BY THE SELLER UNDER THE AGREEMENT AS NEGOTIATED AND AGREED TO BY THE BUYER AND THE SELLER.

THE BUYER FURTHER WAIVES THE FOLLOWING, TO THE FULLEST EXTENT PERMITTED BY LAW:

(A) ALL RIGHTS TO FILE AND MAINTAIN AN ACTION AGAINST THE SELLER FOR SPECIFIC PERFORMANCE;

(B) RIGHT TO RECORD A LIS PENDENS AGAINST THE PROPERTY OR TO RECORD THE AGREEMENT OR A MEMORANDUM THEREOF IN THE REAL PROPERTY RECORDS;

(C) RIGHT TO INVOKE ANY EQUITABLE REMEDY THAT WOULD PREVENT THE SELLER FROM CONVEYING THE PROPERTY TO A THIRD PARTY BUYER;

(D) ANY CLAIMS ARISING FROM THE ADJUSTMENTS OR PRORATIONS OR ERRORS IN CALCULATING THE ADJUSTMENTS OR PRORATIONS THAT ARE OR MAY BE DISCOVERED AFTER CLOSING UNLESS SUCH CLAIMS ARE MATERIAL AND BUYER NOTIFIES SELLER IN WRITING OF SUCH CLAIMS WITHIN THIRTY (30) DAYS OF THE CLOSING DATE;

(E) ANY REMEDY OF ANY KIND THAT THE BUYER MIGHT OTHERWISE BE ENTITLED TO AT LAW OR EQUITY (INCLUDING, BUT NOT LIMITED TO, RESCISSION OF THE AGREEMENT), EXCEPT AS EXPRESSLY PROVIDED IN THIS ADDENDUM;

(F) ANY RIGHT TO A TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THE AGREEMENT;

(H) ANY RIGHT TO AVOID THE SALE OF THE PROPERTY OR REDUCE THE PRICE OR HOLD THE SELLER LIABLE FOR ANY CLAIMS ARISING OUT OF OR RELATED IN ANY WAY TO THE CONDITION, CONSTRUCTION. REPAIR, OR TREATMENT OF THE PROPERTY, OR ANY DEFECTS, APPARENT OR LATENT, THAT MAY NOW OR HEREAFTER EXIST WITH RESPECT TO THE PROPERTY;

BUYER (Initials) _____

SELLER (Initials) MAP _____

-2-



(J) ANY CLAIMS ARISING OUT OF OR RELATING IN ANY WAY TO ENCROACHMENTS, EASEMENTS, BOUNDARIES, SHORTAGES IN AREA OR ANY OTHER MATTER THAT WOULD BE DISCLOSED OR REVEALED BY A SURVEY OR INSPECTION OF THE PROPERTY OR SEARCH OF PUBLIC RECORDS; AND

(K) ANY CLAIMS ARISING OUT OF OR RELATING IN ANY WAY TO THE SQUARE FOOTAGE, SIZE, OR LOCATION OF THE PROPERTY, OR ANY INFORMATION PROVIDED ON THE MULTIPLE LISTING SERVICE, OR BROCHURES OR WEB SITES OF SELLER OR SELLER'S AGENT OR BROKER.

References to the "Seller" in this Section 1 of this Addendum shall include the Seller and the Indemnified Parties (as defined in Section 26 of this Addendum, and all references in this Addendum to "Indemnified Parties" or "INDEMNIFIED PARTIES" shall have the meaning set forth in Section 26).

Buyer initials _____

2.  **Effective Date:**  The date of Seller's execution of this Addendum shall be the "Effective Date" of the Agreement, notwithstanding any prior understanding or agreement with respect to the financial terms set forth herein. The Agreement shall be null and void if the Agreement signed by the Buyer is not actually received by the Seller before the Seller accepts a competing offer, or gives verbal or written notice of revocation to the Buyer, the Buyer's agent or attorney, or the listing agent. The Agreement must be approved by the Seller's management, and it must be signed by all parties in order to be binding.

3.  **Purchase Price:**

Purchase Price:          $ 324,000
Down Payment:            $ 0
Loan Amount (nte):       $ 324,000

4.  **Earnest Money Deposit:**

If applicable, escrow will be opened by both parties immediately following the Effective Date with an escrow/closing agent acceptable to the Seller. The Buyer's earnest money deposit of $ 1000 is to be delivered to Seller's listing agent to be held pursuant to local law and custom, within 24 hours of the Effective Date.

5.  **Financing:** The Agreement (check one): ( ) is ( ) is not contingent on the Buyer obtaining financing for the purchase of the Property. If the Agreement is contingent on financing, the type of financing shall be the following (check one):

X  Conventional
___  FHA
___  VA
___  Other (specify: _____ )

(a)  If the Agreement is contingent on financing, the Buyer shall apply for a loan in the amount of $ 324,000 with a term of 30 years, at prevailing rates, terms and conditions. The Buyer shall complete and submit to a mortgage lender an application for a mortgage loan containing the terms set forth in this paragraph within three (3) business days of the Effective Date, and shall use diligent efforts to obtain a mortgage loan commitment within fifteen (15) calendar days from the said date. If, despite the Buyer's diligent efforts, the Buyer cannot obtain a mortgage loan commitment by the specified date, then either the Buyer or the Seller may terminate the Agreement by giving written notice to the other Party. The Buyer's notice must include a copy of the loan application, proof of the application date, and a copy of the denial letter from the prospective lender. In the event of a proper termination of the Agreement under this paragraph, the earnest money deposit shall be returned to the Buyer and the parties shall have no further obligation to each other under the Agreement. The Buyer agrees to

-3-

BUYER (Initials) _____

SELLER (Initials) _____



cooperate and comply with all requests for documents and information from the Buyer's chosen lender during the loan application process. Failure of the Buyer to comply with such requests from the lender that results in the denial of the mortgage loan shall be considered a material breach of the Agreement and the Seller shall be entitled to retain any earnest money deposited by Buyer.

If the Agreement is contingent on financing, as a sales condition, Buyer must obtain a pre-approval letter from a branch office of Countrywide Home Loans, Inc. ("CHL") for a mortgage loan in an amount and under terms sufficient for Buyer to perform its obligations under the Agreement, and such letter must accompany the Agreement. The pre-approval shall include, but is not limited to, the pre-approval letter, a satisfactory credit report, and proof of funds sufficient to meet Buyer's obligations under the Agreement. Buyer's submission of proof of pre-approval is a condition precedent to Seller's acceptance of Buyer's offer. Seller may require Buyer to obtain, at no cost to Buyer, loan pre-approval as Seller may direct. Notwithstanding any Seller required pre-approval, Buyer is not required to obtain financing from CHL or Seller. Buyer may obtain financing from any source. As an incentive for the Buyer to obtain financing from CHL, CHL will offer a free appraisal and a free credit report if the Buyer finances and closes the purchase of the Property through financing from CHL.

(b) Cash Offer: Buyer shall provide Seller proof of liquid funds on deposit in the United States sufficient to close this transaction. Such proof shall be provided within three (3) business days of the Effective Date and shall be subject to Seller's approval. The Property shall remain on the market until such proof of funds is accepted by Seller. Notwithstanding the terms provided in Section 12 for inspection of the Property, in the event of a noncontingent cash offer all inspections shall be completed and any notice of disapproval shall be given to Seller within seven (7) calendar days of the Effective Date. Failure to timely notify Seller of any disapproval shall be deemed acceptance by Buyer of the inspection results and the condition of the Property. Cash offers shall not be subject to any contingency, unless specifically described in Section 10 of this Addendum.

(c) The Buyer is aware that the price and terms of this transaction were negotiated on the basis of the type of financing selected by the Buyer. Any change of the loan type, loan terms, financing, or Buyer's lender after the Agreement has been entered into shall be subject to Seller's approval and may require, at Seller's sole discretion, renegotiation of all or some of the terms of the Agreement.

6. **Other Financial Terms:**

**Estimated Closing Costs to Be Paid by Seller on Behalf of Buyer:**
(limited to loan guidelines)

| | |
|---|---|
| FHA/VA Allowable Costs: | $_____ |
| Other Loan Types Non Allowable: | $ 50% SPLIT 50%/50% 3564 |
| Property Transfer Taxes: | $ _____ |
| Home Protection Policy: | $ 9725  — SUBSIDY |
| Other: _____ | |
| Other: _____ | |
| | $ 13284 |
| **TOTAL:** | |

**Requested Repairs:**

| | |
|---|---|
| By Buyer/Lender (mc): | $_____ |
| Fumigation/Chemical only: | $_____ |
| Termite Repairs (mc): | $ ____ No termite required |
| Pest Report Fee (mc): | $_____ |
| Other: _____ | $_____ |
| **TOTAL:** | $ 0 |

BUYER (Initials): _____

SELLER (Initials): _____

Revised 1/06

-4-

Notwithstanding any provision in the Agreement to the contrary, if Seller agrees in the Agreement to pay any of Buyer's closing costs, then Seller shall only pay the lesser of Buyer's actual closing costs and the closing costs that Seller has agreed to pay in the Agreement.  Section 17 has additional provisions pertaining to closing costs.

7.   <u>Time of the Essence: Closing Date:</u>

(a)  It is agreed that time is of the essence with respect to all dates specified in the Agreement and any addenda, riders, or amendments thereto, meaning that all deadlines are intended to be strict and absolute.  The Agreement shall terminate automatically, and without notice, if it is not concluded by the Closing Date, or any extension thereof.

(b)  The closing shall take place on or before _____3/23_____, 20_07_ or within five (5) calendar days of final loan approval by the lender, whichever is earlier ("Closing Date"), unless the Closing Date is extended in writing signed by the Seller and the Buyer, or extended by the Seller under the terms of the Agreement.  The closing shall be held in the offices of the Seller's attorney or agent, or at a place so designated and approved by the Seller, unless otherwise required by applicable law.  If the closing does not occur (through no fault of Seller) by the date specified in this Section 7 of this Addendum or in any extension, the Agreement is automatically terminated and the Seller shall retain any earnest money deposit as liquidated damages.

8.   <u>Extension of Closing Date: Per Diem Interest:</u>  Any request for extension of the Closing Date by Buyer must be in writing and approved by the Seller, and the Buyer agrees to pay to the Seller a per diem of one-tenth (1/10th) of one percent (1%) of the purchase price, but not less than $50.00 per day, towards Seller's carrying costs, through and including the Closing Date specified in the written extension.  If the sale does not close by the date specified in the written extension agreement, the Seller may retain the earnest money deposit and the accrued per diem payment as liquidated damages.  This provision is not applicable if Buyer obtains FHA/VA financing for the purchase, or for delays caused by Seller.

Buyer initials _____

9.   The Buyer (check one): (X) does (__) does not intend to use and occupy the Property as Buyer's primary residence.

10.   <u>Additional Terms or Conditions:</u>

_____

_____

_____

_____

_____

11.   Attachments:   _Regional Contract_

_____

_____

BUYER (Initials) _____                    -5-

SELLER (Initials) _____

Revised 3/06

(30)

12.   Inspections:

(a)   On or before ten (10) calendar days (seven days for noncontingent cash offers as indicated in Section 5 (b) above) from the Effective Date, the Buyer shall inspect the Property or obtain for its own use, benefit and reliance, inspections and/or reports on the condition of the Property, or Buyer shall be deemed to have 1) waived such inspections and any objections to the condition of the Property, and 2) accepted the condition of the Property. The Buyer shall keep the Property free and clear of liens and indemnify and hold the Seller and the Indemnified Parties harmless from all Claims arising out of or relating in any way to the Buyer's inspections, and the Buyer shall repair the Property, at Buyer's sole expense, for all such Claims. The Buyer shall not directly or indirectly cause any inspections to be made by any government building or zoning inspectors or government employees without the prior written consent of the Seller, unless required by law, in which case, the Buyer shall provide reasonable notice to the Seller prior to any such inspection. If the Seller has winterized the Property and the Buyer desires to have the Property inspected, the listing agent will have the Property dewinterized prior to inspection and rewinterized after inspection. The Buyer agrees to pay this expense in advance to the listing agent. The amount paid under this provision shall be nonrefundable.

Within five (5) calendar days of receipt of any inspection report prepared by or for the Buyer, but not later than ten (15) calendar days (seven days for noncontingent cash offers as indicated in Section 5 (b) above) from the Effective Date, whichever first occurs, the Buyer shall provide written notice to the Seller of any items disapproved or problems with the condition of the Property. The Buyer's failure to provide such written notice to Seller shall be deemed as Buyer's acceptance of the condition of the Property. The Buyer shall immediately provide to the Seller, at no cost, upon request by the Seller, complete copies of all inspection reports upon which the Buyer's disapproval of the condition of the Property is based. In no event shall the Seller be obligated to make any repairs or replacements, or correct any problems or defects that may be indicated in the Buyer's inspection reports. The Seller may, at its sole discretion, make such repairs, replacements, or corrections to the Property. If the Seller elects not to repair or correct the Property, the Buyer may cancel the Agreement within five (5) calendar days of receiving notice from Seller that Seller elects not to repair or correct the Property. If Buyer timely notifies Seller of such cancellation, then Buyer shall receive all earnest money deposited. If the Seller elects to make any such repairs or corrections to the Property, the Seller shall notify the Buyer after completion of the repairs or corrections and the Buyer shall have five (5) calendar days from the date of such notice, to inspect the repairs or corrections and notify the Seller of any items disapproved. The Buyer's failure to notify Seller of any items disapproved shall be deemed acceptance by Buyer of the condition of the Property.

In situations that are applicable, a structural, electrical, mechanical or termite inspection report may have been prepared for the benefit of the Seller. Upon Buyer's request, the Buyer may review such reports, but the Buyer acknowledges that such inspection reports were prepared for the sole use and benefit of the Seller. Buyer shall not rely upon any such inspection reports obtained by the Seller in making a decision to purchase the Property, and such reports shall not serve as a basis for Buyer to terminate the Agreement.

(b)   If the Property is a condominium or planned unit development or co-operative, unless otherwise required by law, the Buyer, at the Buyer's own expense, is responsible for obtaining and reviewing the covenants, conditions and restrictions, and bylaws of the condominium or planned unit development or cooperative within ten (10) calendar days of the Effective Date. The Seller agrees to use reasonable efforts, as determined at the Seller's sole discretion, to assist the Buyer in obtaining a copy of the covenants, conditions and restrictions, and bylaws. The Buyer will be deemed to have accepted the covenants, conditions and restrictions, and bylaws if the Buyer does not notify the Seller in writing within fifteen (15) calendar days of the Effective Date of the Buyer's objection to the covenants, conditions and restrictions, and/or bylaws.

13.   CONDITION OF PROPERTY: THE BUYER UNDERSTANDS THAT THE SELLER ACQUIRED THE PROPERTY BY FORECLOSURE, DEED-IN-LIEU OF FORECLOSURE, FORFEITURE, TAX SALE, OR SIMILAR PROCESS, AND CONSEQUENTLY, THE SELLER HAS LITTLE OR NO DIRECT

BUYER (Initials) _____            -6-

SELLER (Initials) _____

KNOWLEDGE CONCERNING THE CONDITION OF THE PROPERTY. AS A MATERIAL PART OF THE CONSIDERATION TO BE RECEIVED BY THE SELLER UNDER THE AGREEMENT AS NEGOTIATED AND AGREED TO BY THE BUYER AND THE SELLER, THE BUYER ACKNOWLEDGES AND AGREES TO ACCEPT THE PROPERTY IN "AS IS" CONDITION AT THE TIME OF CLOSING, INCLUDING, WITHOUT LIMITATION, ANY HIDDEN DEFECTS OR ENVIRONMENTAL CONDITIONS AFFECTING THE PROPERTY, WHETHER KNOWN OR UNKNOWN, WHETHER SUCH DEFECTS OR CONDITIONS WERE DISCOVERABLE THROUGH INSPECTION OR NOT. THE BUYER ACKNOWLEDGES THAT THE SELLER, AND ITS AGENTS, BROKERS, AND REPRESENTATIVES HAVE NOT MADE, AND THE SELLER SPECIFICALLY NEGATES AND DISCLAIMS, ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTEES, IMPLIED OR EXPRESS, ORAL OR WRITTEN, WITH RESPECT TO:

(A) THE PHYSICAL CONDITION OR ANY OTHER ASPECT OF THE PROPERTY INCLUDING, BUT NOT LIMITED TO, THE STRUCTURAL INTEGRITY OR THE QUALITY OR CHARACTER OF MATERIALS USED IN CONSTRUCTION OF ANY IMPROVEMENTS, AVAILABILITY AND QUANTITY OR QUALITY OF WATER, STABILITY OF THE SOIL, SUSCEPTIBILITY TO LANDSLIDE OR FLOODING, SUFFICIENCY OF DRAINAGE, WATER LEAKS, WATER DAMAGE, MOLD OR ANY OTHER MATTER AFFECTING THE STABILITY OR INTEGRITY OF THE PROPERTY;

(B) THE CONFORMITY OF THE PROPERTY TO ANY ZONING, LAND USE OR BUILDING CODE REQUIREMENTS OR COMPLIANCE WITH ANY LAWS, STATUTES, RULES, ORDINANCES, OR REGULATIONS OF ANY FEDERAL, STATE OR LOCAL GOVERNMENTAL AUTHORITY, OR THE GRANTING OF ANY REQUIRED PERMITS OR APPROVALS, IF ANY, OF ANY GOVERNMENTAL BODIES THAT HAD JURISDICTION OVER THE CONSTRUCTION OF THE ORIGINAL STRUCTURE, ANY IMPROVEMENTS, AND/OR ANY REMODELING OF THE STRUCTURE;

(C) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, INCLUDING REDHIBITORY VICES AND DEFECTS, APPARENT OR NON-APPARENT OR LATENT, THAT NOW EXIST OR MAY HEREAFTER EXIST AND THAT, IF KNOWN TO BUYER, WOULD CAUSE BUYER TO REFUSE TO PURCHASE THE PROPERTY; AND

(D) THE EXISTENCE, LOCATION, SIZE, OR CONDITION OF ANY OUTBUILDINGS OR SHEDS ON THE PROPERTY.

Mold, mildew, spores and/or other microscopic organisms and/or allergens (collectively referred to in the Agreement as "Mold") are environmental conditions that are common in residential properties and may affect the Property. Mold, in some forms, has been reported to be toxic and to cause serious physical injuries, including but not limited to, allergic and/or respiratory reactions or other problems, particularly in young children, elderly persons, persons with immune system problems, allergies, or respiratory problems, and pets. Mold has also been reported to cause extensive damage to personal and real property. Buyer is advised to thoroughly inspect the Property for Mold. Mold may appear as discolored patches or cottony or speckled growth on walls, furniture or floors, behind walls and above ceilings. Any and all presence of moisture, water stains, mildew odors, condensation, and obvious Mold growth, are all possible indicators of a Mold condition, which may or may not be toxic. Mold may have been removed or covered in the course of any cleaning or repairing of the Property. Buyer acknowledges that, if Seller, or any of Seller's employees, contractors, representatives, brokers, or agents cleaned or repaired the Property or remediated the Mold contamination, that Seller does not in any way warrant the cleaning, repairs, or remediation, or that the Property is free of Mold. Buyer is further advised to have the Property thoroughly inspected for Mold, any hidden defects, and/or environmental conditions or hazards affecting the Property. Buyer is also advised that all areas contaminated with Mold should be properly and thoroughly remediated. Buyer represents and warrants that: (A) Buyer accepts full responsibility and liability for all hazards, and Claims that may result from the presence of Mold in or around the Property; (B) If Buyer proceeds to close on the purchase of the Property, then Buyer has inspected and evaluated the condition of the Property to Buyer's complete satisfaction, and Buyer is satisfied with the condition of the Property notwithstanding the past or present

- 7 -

BUYER (initials) _____

SELLER (initials) _____

FEB-28-07  01:18PM  FROM-REAL ESTATE MANAGEMENT 8005773461    805 577 3461    T-301  P.008/044  F-622

existence of Mold in or around the Property; and (C) Buyer has not, in any way, relied upon any representations or warranties of Seller, or Seller's employees, officers, directors, contractors, representatives, brokers, or agents concerning the past or present existence of Mold or any environmental hazards in or around the Property.

In the event the Property is affected by an environmental hazard either Party may terminate the Agreement. In the event the Seller decides to sell the Property to the Buyer and the Buyer agrees to purchase the Property (as evidenced by Buyer and Seller proceeding to close) despite the presence of an environmental hazard, the Buyer releases the Seller and the Indemnified Parties from any Claims arising out of or relating in any way to the environmental hazard or conditions of the Property, and Buyer agrees to also execute an additional general release at closing, in a form acceptable to Seller, related to the environmental hazard if Seller so requests. In the event the Buyer elects not to execute the additional release, Seller may, at the Seller's sole discretion, terminate the Agreement upon notice given to Buyer.

In the event the Seller has received official notice that the Property is in violation of building codes or similar laws or regulations, the Seller may terminate the Agreement or delay the date of closing or the Buyer may terminate the Agreement. In the event the Agreement is terminated by either Buyer or Seller pursuant to this Section 13, any earnest money deposit will be returned to the Buyer. If there is an enforcement proceeding arising from allegations of such violations before an enforcement board, special master, court or similar enforcement body, and neither the Buyer nor the Seller terminate the Agreement, the Buyer agrees (A) to accept the Property subject to the violations, and (B) to be responsible for compliance with the applicable code and with orders issued in any code enforcement proceedings. Buyer agrees to execute for closing any and all documents necessary or required by any agency with jurisdiction over the Property and to resolve the deficiencies as soon as possible after the closing.

The closing of this sale shall constitute acknowledgement by the Buyer that Buyer had the opportunity to retain an independent, qualified professional to inspect the Property and that the condition of the Property is acceptable to the Buyer at the time of closing. The Buyer agrees that Seller and the Indemnified Parties shall have no liability for any Claims that the Buyer or the Buyer's successors or assigns may incur as a result of construction or other defects that may now or hereafter exist with respect to the Property.

The Seller may be exempt from filing a disclosure statement regarding the condition of the Property because the Property was acquired through foreclosure, deed-in-lieu of foreclosure, forfeiture, tax sale, eminent domain or similar process. To the fullest extent allowed by law, Buyer waives any right to receive a disclosure statement from Seller, and Buyer agrees to execute a separate waiver, in a form acceptable to Seller, if the law requires the waiver to be in a separate form.

Buyer initials

14. **Repairs:** All treatments for wood infesting organisms and all repairs shall be completed by a vendor approved by the Seller, and shall be subject to the Seller's satisfaction only. If the Seller has agreed to pay for treatment of wood infesting organisms, the Seller shall treat only active infestation. Neither the Buyer, nor its representatives, shall enter upon the Property to make any repairs and/or treatments prior to closing without the prior written consent of the Seller. To the extent that the Buyer, or its representatives, make repairs and/or treatments to the Property prior to closing, the Buyer hereby agrees to release and indemnify the Seller and the Indemnified Parties from and against any and all Claims related in any way to the repairs and/or treatments, and Buyer further agrees, at Seller's request, to execute a separate release and indemnification in a form acceptable to the Seller prior to the commencement of any such repairs or treatments. The Buyer acknowledges that all repairs and treatments are done for the benefit of the Seller and not for the benefit of the Buyer unless and until the sale of the Property closes in accordance with the Agreement, and if Buyer closes Buyer acknowledges that the Buyer has inspected or has been given the opportunity to inspect all repairs and treatments. Any repairs or treatments made, or caused to be made, by the Seller shall be completed prior to the closing. Under no circumstances shall the Seller be required to make any repairs or treatments after the Closing Date. The Buyer acknowledges that closing on this transaction shall be deemed to be the Buyer's reaffirmation that the Buyer is satisfied with the condition of the Property and with all repairs and treatments to the Property. Further, if Buyer closes, Buyer waives all Claims arising out of relating in any way to the condition of, or treatments or repairs to, the Property. Any

- 8 -

BUYER (Initials)

SELLER (Initials)

repairs or treatments shall be performed for functional purposes only and exact restoration of appearance or cosmetic items following any repairs or treatments shall not be required. The Seller shall not be obligated to obtain or provide to the Buyer any receipts for repairs or treatments, written statements indicating dates or types of repairs and/or treatments, copies of such receipts or statements, or any other documentation regarding any repairs and treatments to the Property. **THE SELLER DOES NOT WARRANT OR GUARANTEE ANY WORK, REPAIRS, OR TREATMENTS TO THE PROPERTY.**

15. <u>Occupancy Status of Property.</u> The Buyer acknowledges that neither the Seller, nor its representatives, brokers, agents or assigns, has made any warranties or representations, implied or express, relating to the existence of any tenants or occupants at the Property unless otherwise noted in Section 10 of this Addendum. The Seller, and its representatives, brokers, agents, and assigns, shall not be responsible for evicting or relocating any tenants, occupants or personal property at the Property prior to or subsequent to closing unless otherwise noted in Section 10 of this Addendum.

The Buyer further acknowledges that, to the best of the Buyer's knowledge, the Seller (A) is not holding any security deposits from former or current tenants, and (B) has no information as to any security deposits that may have been paid by former or current tenants to anyone. Buyer agrees that no sums representing such tenant security deposits or any rights, title, or interest in such deposits shall be transferred to the Buyer as part of this transaction. The Buyer further agrees to assume all responsibility and liability for the refund of such security deposits to any tenants pursuant to the provisions of applicable laws and regulations. All rents that are due and payable and collected from tenants for the month in which closing occurs will be prorated according to the provisions of Section 17 of this Addendum.

The Buyer acknowledges that this Property may be subject to the provisions of local rent control ordinances and regulations. The Buyer agrees that upon the closing all eviction proceedings and other duties and responsibilities of a property owner and landlord, including, but not limited to, those proceedings required for compliance with such local rent control ordinances and regulations, will be the Buyer's sole responsibility.

Buyer understands that the Property may be subject to redemption by the prior owner upon payment of certain sums, and Buyer may be dispossessed of the Property. Buyer is advised to consult with an attorney to fully understand the import and impact of the foregoing. Buyer agrees Buyer shall have no recourse against Seller in the event the right of redemption is exercised.

16. <u>Personal Property.</u> Items of personal property, including but not limited to, window coverings, appliances, manufactured homes, mobile homes, vehicles, spas, antennas, satellite dishes, and garage door openers, now or hereafter located on the Property, are not included in this sale or the purchase price unless the personal property is specifically described and referenced in Section 10 of this Addendum. Any personal property at or on the Property may be subject to claims by third parties, and therefore, may be removed from the Property prior to or after the Closing Date. The Seller makes no representations or warranties as to the condition of any personal property, title thereto, or whether any personal property is encumbered by any liens. The Buyer assumes responsibility for any personal property remaining on the Property at the time of closing.

17. <u>Closing Costs and Adjustments:</u>

(a) The Buyer and the Seller agree to prorate the following expenses as of closing and funding: municipal water and sewer charges, utility charges, real estate taxes and assessments, common area charges, condominium or planned unit development or similar community assessments, co-operative fees, maintenance fees, and rents, if any. In determining prorations, the Closing Date shall be allocated to the Buyer. Payment of special assessment district bonds and assessments, and payment of homeowner's association or special assessments shall be paid current and prorated between the Buyer and the Seller as of the Closing Date with payments not yet due and owing to be assumed by the Buyer without credit toward the purchase price. The Property taxes shall be prorated based on an estimate or actual taxes from the previous year on the Property. All prorations shall be based upon a 30-day month and all such prorations shall be final. The Seller shall not be responsible for any amounts due, paid, or to be paid after closing, including, but not limited to, any taxes, penalties or interest assessed or due as a result of retroactive, postponed or additional taxes resulting from any change in use of, or construction on, or improvement to the Property, or an adjustment in the appraised or assessed value of the Property. If the Property is heated by, or has

BUYER (Initials) _____                            -9-

SELLER (Initials) _____

storage tanks for fuel oil, liquefied petroleum gases, or similar fuels, the Buyer will buy the fuel in the tank at closing at the current price as calculated by the supplier. In the event the Seller has paid any taxes, special assessments, or other fees and there is a refund of any such taxes, assessments, or fees after closing, Buyer, as the then current owner of the Property, or the closing agent, in the event of a holdback for payment of such items, shall immediately remit the refund to the Seller.

(b) Seller shall only pay those closing costs and fees associated with the transfer of the Property that local custom or practice clearly allocates to Seller and any closing costs and fees specifically agreed to in Section 6, and Buyer shall pay all remaining fees and costs. Notwithstanding the foregoing, FHA/VA allocation of closing costs shall apply when applicable.

(c) The Seller shall pay the real estate commission per the listing agreement between the Seller and the Seller's listing broker. Unless disclosed to Seller, Buyer represents that Buyer is not a real estate licensee, and that the real estate licensee representing Buyer is not related to, or affiliated with Buyer.

18.   **Delivery of Funds:** Regardless of local custom or practice, Buyer shall deliver all funds due the Seller from the sale by wire transfer or in the form of cash, bank check, or certified check to the closing agent prior to delivery of the deed by the Seller to the Buyer.

19.   **Certificate of Occupancy:** If the Property is located in a jurisdiction that requires a certificate of occupancy, smoke detector certification, septic certification, or any similar certification or permit ("Certificate of Occupancy") or any form of improvement or repair to the Property to obtain such Certificate of Occupancy necessary for the Property to be occupied, the Buyer understands that the Seller requires the Certificate of Occupancy to be obtained by the Buyer at the Buyer's sole cost and expense. The Buyer shall make application for all required Certificates of Occupancy within ten (10) calendar days of the Effective Date. The Buyer shall not have the right to delay the closing due to the Buyer's failure or inability to obtain any required Certificate of Occupancy. Failure of the Buyer to obtain and furnish the Certificate of Occupancy shall be a material breach of the Agreement.

20.   **Delivery of Possession of Property:** The Seller shall deliver possession of the Property to the Buyer at closing and funding of the sale. The delivery of possession shall be subject to the rights of any tenants or parties in possession per Section 15 of this Addendum. If the Buyer alters the Property or causes the Property to be altered in any way and/or occupies the Property or allows any other person to occupy the Property prior to closing and funding without the prior written consent of the Seller, then: (A) Such event shall constitute a material breach by the Buyer under the Agreement; (B) The Seller may terminate the Agreement; (C) The Buyer shall be liable to the Seller for all Claims caused by any such alteration or occupation of the Property prior to closing and funding; and (D) Buyer waives all Claims for improvements made by the Buyer to the Property including, but not limited to, any Claims for unjust enrichment.

21.   **Deed:** The deed to be delivered at closing shall be a deed that covenants that grantor grants only that title that grantor may have and that grantor will only defend title against persons claiming by, through, or under the grantor, but not otherwise (which deed may be known as a Special Warranty, Limited Warranty, Quitclaim or Bargain and Sale Deed). Any reference to the term "deed" or "Special Warranty Deed" herein shall be construed to refer to such form of deed.

22.   **Defects in Title:** If the Buyer raises an objection to the Seller's title to the Property, which, if valid, would make title to the Property uninsurable, the Seller shall have the right unilaterally to terminate the Agreement by giving written notice of the termination to the Buyer. However, if the Seller is able to correct the problem through reasonable efforts, as the Seller determines, at its sole and absolute discretion, prior to the closing date set forth in the Agreement, including any written extensions, or if title insurance is available from a reputable title insurance company at regular rates containing affirmative coverage for the title objections, then the Agreement shall remain in full force and the Buyer shall perform pursuant to the terms set forth in the Agreement. The Seller is not obligated to (A) remove any exception, (B) bring any action or proceeding or bear any expense in order to convey title to the Property, or (C) make the title marketable or insurable. Any attempt by the Seller to remove such title exceptions shall not impose an obligation upon the Seller to remove those exceptions. The Buyer acknowledges that the Seller's title to the Property may be subject to court approval of foreclosure or to a mortgagor's right of redemption. In the event the Seller is not able to (A) make the title insurable or correct all title problems, or (B) obtain title insurance for the Property from a reputable title insurance company,

- 10 -

BUYER (Initials) _____

SELLER (Initials) _____

either Party may terminate the Agreement and any earnest money deposit will be returned to the Buyer as the Buyer's sole remedy at law or equity.

23.   **Representations and Warranties:**

In addition to Buyer's representations and warranties made elsewhere herein, such as those found in Section 13 of this Addendum, the Buyer represents and warrants to the Seller the following:

(a)   The Buyer is purchasing the Property solely in reliance on its own investigation and inspection of the Property and not on any information, representation or warranty provided or to be provided by the Seller, its servicers, representatives, brokers, employees, agents, or assigns, including, but not limited to, any information provided on any brochures or web sites of Seller or Seller's agents or brokers, or any information on the Multiple Listing Service;

(b)   Neither the Seller, nor its servicers, employees, representatives, brokers, agents or assigns, has made any representations or warranties, implied or express, relating to the condition of the Property or the contents thereof, except as expressly set forth in Section 10 of this Addendum;

(c)   The Buyer has not relied on any representation or warranty from the Seller, or Seller's agents or brokers regarding the nature, quality, or workmanship of any repairs made by the Seller;

(d)   The Buyer will not occupy, or cause or permit others to occupy, the Property prior to closing and funding, and, unless and until any necessary Certificate of Occupancy has been obtained from the appropriate governmental entity, Buyer will not occupy or cause or permit others to occupy the Property after closing; and

(e)   Buyer is not an officer, an employee, a director, or a Business Partner (as defined below) of Countrywide Home Loans, Inc., or its parent company, subsidiaries, or affiliated companies. Buyer understands and acknowledges that Seller prohibits such persons from purchasing the Property, directly, indirectly, or through a family member or an interest in a partnership, corporation, joint venture, trust, or other entity. "Business Partner" shall mean any agent, broker, appraiser, attorney, trustee, property inspection or preservation company, title company, representative, or vendor of Countrywide Home Loans, Inc., or its parent company, subsidiaries, or affiliated companies.

Buyer initials _____

24.   **Conditions to the Seller's Performance:** The Seller shall have the right, at the Seller's sole discretion, to extend the Closing Date or to terminate the Agreement if:

(a)   full payment of any mortgage insurance claim related to the loan previously secured by the Property is not confirmed prior to the Closing Date or the mortgage insurance company exercises its right to acquire title to the Property;

(b)   the Seller determines that it is unable or it is economically not feasible to convey good and marketable title to the Property insurable by a reputable title insurance company at regular rates;

(c)   a third party having an interest in the Property (or the loan that was secured by the Property) has requested that the servicing lender, or any other party, release the servicing of or repurchase such loan or the Property;

(d)   full payment of any property, fire or hazard insurance claim is not confirmed prior to the Closing Date;

(e)   any third party, whether tenant, homeowner's association, or otherwise, exercises rights under a right of first refusal to purchase the Property;

BUYER (Initials) _____

SELLER (Initials) _____

- 11 -

(f) the Buyer is the former mortgagor of the Property whose interest was foreclosed, or is related to or affiliated in any way with the former mortgagor, and the Buyer has not disclosed this fact to the Seller prior to the Seller's acceptance of the Agreement. Such failure to disclose shall constitute a material breach under the Agreement, entitling the Seller to exercise any of its rights and remedies, including, without limitation, retaining the earnest money deposit; or

(g) the Seller, at the Seller's sole discretion, determines that the sale of the Property to the Buyer, or any related transactions, are in any way associated with illegal activity of any kind.

In the event the Seller elects to terminate the Agreement as a result of (a), (b), (c), (d), (e) or (g) above, the Seller shall return the Buyer's earnest money deposit and the parties shall have no further obligation under the Agreement, except as to any provision that survives termination pursuant to Section 30 of this Addendum.

25.   <u>Seller's Remedies for Buyer's Default</u>:

In the event of Buyer's material breach or material misrepresentation of any fact under the terms of the Agreement, (1) the Seller, at its option, may retain the earnest money deposit and any other funds then paid by the Buyer as liquidated damages and/or invoke any other remedy expressly set out in the Agreement or available under applicable law, (2) the Seller is automatically released from the obligation to sell the Property to the Buyer, and (3) Seller and the Indemnified Parties shall not be liable to the Buyer for any Claims arising out of or relating in any way to the Seller's failure to sell and convey the Property to Buyer.

26.   <u>Indemnification</u>: The Buyer agrees to indemnify, defend and hold harmless Seller, and its affiliates, subsidiaries, parent company, representatives, agents, officers, directors, employees, attorneys, shareholders, servicers, tenants, brokers, predecessors, successors, and assigns ("Indemnified Parties") from and against any and all claims, causes of action, whether administrative or judicial, losses, costs (including any and all reasonable attorneys' fees, court costs, and reasonable costs of investigation, litigation, and settlement), expenses, sanctions, curtailments, interest, liabilities, penalties, fines, demands, liens, judgments, compensation, fees, loss of profits, injuries, death, and/or damages, of any kind whatsoever, whether known or unknown, fixed or contingent, joint or several, criminal or civil, or in law or in equity ("Claims") arising from, in connection with, or in any way relating to:

(a) inspections or repairs made by the Buyer or its agents, representatives, brokers, employees, contractors, successors or assigns;

(b) the imposition of any fine or penalty imposed by any governmental entity resulting from the Buyer's failure to timely obtain any Certificate of Occupancy or to comply with equivalent laws and regulations;

(c) claims for amounts due and owed by the Seller for real property taxes, homeowner's association dues or assessment, or any other items prorated at closing under Section 17 of this Addendum, including any penalty or interest and other charges, arising from the proration of such amounts for which the Buyer received a credit at closing under Section 17 of this Addendum;

(d) the Buyer or the Buyer's tenants, agents or representatives use and/or occupancy of the Property prior to closing and/or issuance of required Certificates of Occupancy; or

(e) The Buyer's breach of or failure to comply fully with any provision in the Agreement.          Buyer initials _M_ _JH_

27.   <u>Risk of Loss</u>: In the event of fire, destruction, or other casualty loss to the Property after the Seller's acceptance of the Agreement and prior to closing and funding, the Seller may, at its sole discretion, repair or restore the Property, or either Party may terminate the Agreement. If the Seller elects to repair or restore the Property, then the Seller may, at its sole discretion, limit the amount to be expended. If the Seller elects to repair or restore the Property, the Buyer shall either (a) acquire the Property in its AS-IS condition at the time of such acquisition at the purchase price provided in Section 3

BUYER (initials) _M_ _JH_                        - 12 -

SELLER (initials) _MP_

herein with no reduction for such loss, or (b) terminate the Agreement and receive a refund of any earnest money deposit.

28. **Eminent Domain:** In the event that the Seller's interest in the Property, or any part thereof, shall have been taken by eminent domain, or shall be in the process of being taken on or before the Closing Date, either Party may terminate the Agreement and the earnest money deposit shall be returned to the Buyer and neither Party shall have any further rights or liabilities hereunder, except as provided in Section 30 of this Addendum.

29. **Keys:** Buyer is aware that the property may be on a master key system. Buyer is encouraged to re-key the property after closing. Buyer agrees to hold Seller and the Indemnified Parties harmless for any Claims relating in any way to any theft or damage of personal property that occurs after the Closing Date.

30. **Survival:** Delivery of the deed to the Property to the Buyer by the Seller shall be deemed to be full performance and discharge of all of the Seller's obligations under the Agreement. Notwithstanding anything to the contrary in the Agreement, the provisions of Sections 1, 13, 14, 15, 17, 19, 20, 23, 25, 26, 27, 28, 30, and 47 of this Addendum, as well as any other provisions that contemplate performance or observance subsequent to any termination or expiration of the Agreement, shall survive the closing, funding and the delivery of the deed and/or termination of the Agreement by any Party and such provisions shall continue in full force and effect.

31. **Title and Closing:** The providers of title and escrow/closing services shall be designated by Seller. Seller shall pay for Standard ALTA Homeowners policy of title insurance. Buyer is hereby notified that LandSafe Title Company is an affiliate of Seller.

32. **Severability:** If any provision of the Agreement is determined to be invalid, illegal or unenforceable, the remaining provisions shall not be affected or impaired thereby, and no provision shall be deemed dependent upon any other provision unless so expressed herein.

33. **Termination of Agreement:** If either Party terminates the Agreement when permitted to do so, the Parties shall have no further obligation to each other, except as to any provision that survives the termination of the Agreement pursuant to Section 30 of this Addendum

34. **Assignment of Agreement:** The Buyer shall not assign the Agreement. The Seller may assign the Agreement at its sole discretion without prior notice to, or consent of, the Buyer.

35. **Modification and Waiver:** No provision, term or clause of the Agreement shall be revised, modified, amended or waived, except by an instrument in writing signed by the Buyer and the Seller. The waiver by any Party of a breach of the Agreement shall not operate or be construed as a waiver of any other or subsequent breach. No course of dealing between the Parties shall operate as a waiver of any provision of the Agreement.

36. **Rights of Others:** The Agreement does not create any rights, claims or benefits inuring to any person or entity, other than Seller's successors and/or assigns, that is not a Party to the Agreement, nor does it create or establish any third party beneficiary to the Agreement.

37. **Counterparts and Facsimile:** The Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. A signed facsimile or photocopy of the Agreement shall be treated as an original, and shall be deemed to be as binding, valid, genuine, and authentic as an originally signed agreement for all purposes, including all matters of evidence and the "best evidence" rule.

38. **Headings:** The titles to the sections and headings of various paragraphs of the Agreement are placed for convenience of reference only, and in case of conflict the text of the Agreement, rather than such titles or headings, shall control.

BUYER (initials)

SELLER (initials)

- 13 -

39. **Gender:** Unless the context otherwise requires, singular nouns and pronouns, when used herein, shall be deemed to include the plural of such nouns or pronouns, and pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender.

40. **Force Majeure:** Except as provided in Section 27 to this Addendum, no Party shall be responsible for delays or failure of performance resulting from acts of God, riots, acts of war, epidemics, power failures, earthquakes or other disasters, providing such delay or failure of performance could not have been prevented by reasonable precautions and cannot reasonably be circumvented by such Party through use of alternate sources, workaround plans, or other means.

41. **Attorney Review:** The Buyer acknowledges that Buyer has had the opportunity to consult with its legal counsel regarding the Agreement and that accordingly the terms of the Agreement are not to be construed against any Party because that Party drafted the Agreement or construed in favor of any Party because that Party failed to understand the legal effect of the provisions of the Agreement.

42. **Notices:** Any notices required to be given under the Agreement shall be deemed to have been delivered when actually received in the case of hand or overnight delivery or by fax with confirmation of transmission to the numbers below, or five (5) calendar days after mailing by first class mail, postage paid. All notices to the Seller will be deemed sent or delivered to the Seller when sent or delivered to Seller's listing broker or agent or Seller's attorney, at the address or fax number shown below. All notices to the Buyer shall be deemed sent or delivered and effective when sent or delivered to the Buyer or the Buyer's attorney or agent at the address or fax number shown below.

43. **Dispute Resolution:** At the request of either Party, any dispute arising under this Agreement shall be submitted to mediation before resorting to arbitration or court action. Mediation fees shall be divided equally and each Party shall bear his or its own attorney's fees and costs. Neither Party may require binding arbitration prior to commencement of court action, although the parties may mutually agree to such arbitration.

44. **EFFECT OF ADDENDUM:** THIS REAL ESTATE PURCHASE ADDENDUM AMENDS AND SUPPLEMENTS THE CONTRACT AND, IF APPLICABLE, ESCROW INSTRUCTIONS.   IN THE EVENT THERE IS ANY CONFLICT BETWEEN THIS ADDENDUM AND THE CONTRACT OR ESCROW INSTRUCTIONS OR NOTICE OR OTHER DOCUMENTS ATTACHED AND MADE A PART OF THE AGREEMENT, THE TERMS OF THIS ADDENDUM TAKE PRECEDENCE AND SHALL PREVAIL, EXCEPT AS OTHERWISE PROVIDED BY APPLICABLE LAW. The undersigned, if executing the Agreement on behalf of a Seller and/or a Buyer that is a corporation, partnership, trust or other entity, represents and warrants that he/she is authorized by that entity to enter into the Agreement and bind the entity to perform all duties and obligations stated in the Agreement and shall provide Seller with proof of such authority upon execution of the Agreement.

45. **Initials:** Buyer and Seller agree to all of the terms in the Agreement whether any provision or page is separately initialed or not. For emphasis some sections or provisions in the Agreement contain a place for Buyer and/or Seller to separately initial, but the failure by Buyer or Seller to initial any section, provision, or page in the Agreement shall not affect the enforceability of any term or provision in the Agreement.

46. **Entire Agreement:** The Agreement (including any disclosure of information on lead based paint or hazards, and other disclosure forms or notices required by law to be provided to Buyer) constitutes the entire agreement between the Buyer and the Seller concerning the subject matter hereof and supersedes all previous written and oral communications, understandings, representations, warranties, covenants, and agreements. Further, Buyer and Seller represent that there are no oral or other written agreements between the Parties. ALL NEGOTIATIONS ARE MERGED INTO THE AGREEMENT, AND NO ORAL OR WRITTEN, EXPRESS OR IMPLIED, PROMISES, REPRESENTATIONS, WARRANTIES, COVENANTS, UNDERSTANDINGS, COMMUNICATIONS, AGREEMENTS, OR INFORMATION MADE OR PROVIDED BY THE SELLER, OR SELLER'S EMPLOYEES, AGENTS, REPRESENTATIVES, OR BROKERS, INCLUDING, BUT NOT LIMITED TO ANY INFORMATION ON SELLER'S OR SELLER'S AGENT OR BROKER'S WEB SITES, SALES

BUYER (Initials) _____                - 14 -

SELLER (Initials) _____

BROCHURES, OR ON THE MULTIPLE LISTING SERVICE SHALL BE DEEMED VALID OR BINDING UPON THE SELLER, UNLESS EXPRESSLY INCLUDED IN THE AGREEMENT. .

47.   Attorneys' Fees, Court Costs, and Legal Expenses:   In any action, proceeding, or arbitration arising out of, brought under, or relating to the terms or enforceability of the Agreement the prevailing Party shall be entitled to recover from the losing Party all reasonable attorneys' fees, costs, and expenses incurred in such action, proceeding, or arbitration.

48.   **LANGUAGE IN BOLD OR CAPITALIZED:   FOR EMPHASIS AND BUYER'S BENEFIT SOME PROVISIONS HAVE BEEN BOLDED AND/OR CAPITALIZED (LIKE THIS SECTION), BUT EACH AND EVERY PROVISION IN THIS ADDENDUM IS SIGNIFICANT AND SHOULD BE REVIEWED AND UNDERSTOOD. NO PROVISION SHOULD BE IGNORED OR DISREGARDED BECAUSE IT IS NOT IN BOLD OR EMPHASIZED IN SOME MANNER, AND THE FAILURE TO BOLD, CAPITALIZE, OR EMPHASIZE IN SOME MANNER ANY TERMS OR PROVISIONS IN THIS ADDENDUM SHALL NOT AFFECT THE ENFORCEABILITY OF ANY TERMS OR PROVISIONS.**

IN WITNESS WHEREOF, the Buyer and the Seller have entered into the Agreement effective as of the date it is executed by Seller as set forth below.

**BUYER(S):**

Signature: _____

Date: 2/21/07

Print Name: Aaron Hansen

Address: 8403 Greenwood Ave #2

Takoma, MD 20912

Telephone: 202-230-6065

Fax: _____

Signature: Jessica Hansen

Date: 2-21-07

Print Name: Jessica Hansen

Address: 8403 Greenwood Ave #2

Takoma, MD 20912

Telephone: 202-230-6064

Fax: _____

**SELLER:**

Countrywide Home Loans, Inc.:

Countrywide Home Loans, Inc., as Agent in Fact For:

By: _____

Title: Asset Manager

Date: 8-28-07

**BUYER'S AGENT:**

Buyer's Agent Name: Kitty Jessims

BUYER (Initials): _____

SELLER (Initials): _____

**SELLER'S AGENT:**

Seller's Agent Name: _____

- 15 -

Feb-28-07    01:20pm    From-REAL ESTATE MANAGEMENT 8055773481          805 577 3481          T-301   P.017/044   F-522

Address:_____        Address:_____
       _____               _____

Telephone:_____        Telephone:_____
Fax:_____        Fax:_____


**BUYER'S ATTORNEY:**                    **SELLER'S ATTORNEY:**

Name:_____        Name:_____
Address:_____        Address:_____
Telephone:_____        Telephone:_____
Fax:_____        Fax:_____


**CLOSER:**                              **TITLE COMPANY:**

Company Name: *COLCHESTER HUNT TITLE*    Company Name:_____
Contact Person: *NATE PARKS*  R  *EX.*   Contact Person:_____
Telephone: *(703) 426 - 4966*            Telephone:_____
Fax:_____        Fax:_____

*e-mail NATE@COLCHESTERHUNT.COM*


**COUNTRYWIDE CLOSING CONTACT:**

Escrow/Closing Officer Name:_____
Escrow/Closing Officer Phone No.:_____
Escrow/Closing Asst. Name:_____
Escrow/Closing Asst. Phone No.:_____


                              - 16 -

BUYER (Initials)_____

SELLER (Initials) *MP*

FEB-28-07  01:20PM  FROM-REAL ESTATE MANAGEMENT 8005773481      805 577 3481      T-901  P.018/044  F-522
MAR-01-2007 03:14 PM  FATHOM CREATIVE                           2025888396               P.01

## WATER DAMAGE, TOXIC MOLD & ENVIRONMENTAL DISCLOSURE, RELEASE AND INDEMNIFICATION AGREEMENT

The undersigned parties to a purchase contract dated _____, 20___, for the purchase of the property and the improvements commonly known as _____ (the "Property") between _____ ("Buyer") and Countrywide Home Loans, Inc. ("Seller"), acknowledge and agree as follows:

Seller hereby advises Buyer that the Property (including, but not limited to, the basement) is or may be affected by water or moisture damage, toxic mold, and/or other environmental hazards or conditions. Seller further advises Buyer that as a consequence of possible water damage and/or excessive moisture, the Property may be or has been irrevocably contaminated with mildew, mold, and/or other microscopic organisms. Buyer is being advised that exposure to certain species of mold may pose serious health risks, and that individuals with immune system deficiencies, infants, children, the elderly, individuals with allergies or respiratory problems, and pets are particularly susceptible to experiencing adverse health effects from mold exposure.

Buyer acknowledges that Seller has advised Buyer to make his/her own evaluation of the Property and to have the Property thoroughly inspected. Buyer has been further advised by Seller that all areas contaminated with mold, and/or other environmental hazards or conditions, should be properly and thoroughly remediated. Additionally, Buyer has been advised by Sellers that habitation of the Property without complete remediation may subject the inhabitants to potentially serious health risks and/or bodily injury. Buyer acknowledges that it is the sole responsibility of Buyer to conduct any remediation on the Property.

Buyer also acknowledges that Buyer is buying the Property AS-IS. Buyer represents and warrants to Seller that Buyer has made (or will make before closing on the purchase of the Property) his/her own inspection and evaluation of the Property to Buyer's complete satisfaction, and Buyer accepts the Property AS-IS at the time of closing. Buyer is electing to purchase the Property from Seller in an AS-IS condition with full knowledge of the potential condition of the Property, the potentially serious health risks, and the potential liability that Buyer could incur as the owner of the Property for claims, losses, and damages arising out of any toxic mold contamination, and/or other environmental hazards or conditions on the Property. Buyer agrees that the purchase price of the Property reflects the agreed upon value of the Property AS-IS taking into account the aforementioned disclosures.

Buyer understands and acknowledges that the Property was acquired by Seller through foreclosure, deed-in-lieu of foreclosure, or similar process, that Seller has never occupied the Property, and that Seller has little or no direct knowledge regarding the condition of the Property. Buyer further acknowledges that Seller has not made and does not make any express or implied representations or warranties of any kind with respect to the environmental condition of the Property or whether the Property is in compliance with applicable local, state, or federal environmental or other laws, statutes, regulations, rules, ordinances, codes, or standards ("Laws"). Buyer hereby agrees not to pursue any claims, losses, or damages, against Seller, or

Revised 3/06

Feb-28-07    01:21pm    From-REAL ESTATE MANAGEMENT 8055773481    805 577 3481    T-301    P.018/044    F-522
MAR-01-2007 03:15 PM   FATHOM_CREATIVE    2025885396    P.02

Seller's parent company, subsidiaries, affiliates, directors, officers, employees, partners, shareholders, representatives, agents, brokers, predecessors, successors, or assigns, arising out of or relating in any way to any violations of Laws, or for costs, fees, or expenses incurred in conducting investigations relating to Laws or the Property. In addition, to the fullest extent permitted by law, Buyer, for himself/herself, and for all Buyer's invitees, agents, heirs, executors, devisees, and assigns hereby forever waives and fully releases Seller, and Seller's parent company, subsidiaries, affiliates, directors, officers, employees, partners, shareholders, representatives, agents, brokers, predecessors, successors, and assigns (the "Released Parties") from and against any and all claims, causes of action, whether administrative or judicial, losses, costs (including any and all reasonable attorneys' fees, court costs, and reasonable costs of investigation, litigation, and settlement), expenses, sanctions, curtailments, interest, liabilities, penalties, fines, demands, liens, judgments, compensation, fees, loss of profits, injuries, death, and/or damages, of any kind whatsoever, whether known or unknown, fixed or contingent, joint or several, criminal or civil, or in law or in equity arising from, in connection with, or in any way relating to any known or unknown conditions of the Property, including but not limited to, the existence of toxic mold, and/or any other environmental hazards or conditions on the Property ("Claims").

Buyer also agrees to fully indemnify, protect, defend, and hold the Released Parties harmless from and against any and all Claims.

BUYER:

Dated: 2/28, 20 07

SELLER:

Countrywide Home Loans, Inc.

By: _____

Title: Asset Manager

Dated: 2-28, 20 07

Feb-28-07    01:21pm    From-REAL ESTATE MANAGEMENT 8055773481    805 577 3481    T-301    P.020/044    F-522

002-318-465G



## CUSTOMER INFORMATION SHEET
*(to be completed and signed by purchaser)*

THIS INFORMATION IS PRESENTED WITH THE UNDERSTANDING THAT IT MAY BE USED AS A BASIS FOR THE ACCEPTANCE OF A CONTRACT BY THE SELLER. THE UNDERSIGNED HEREBY AUTHORIZES THE AGENT TO DISCLOSE TO THE SELLER, SELLER'S AGENT, DUAL AGENTS, INTRA-COMPANY AGENTS, COOPERATING AGENTS AND ANY LENDER ALL OR ANY PORTION OF THE INFORMATION CONTAINED IN THIS FINANCIAL INFORMATION SHEET. ANY MISREPRESENTATIONS, FRAUDULENT ENTRIES AND/OR OMISSIONS ON THIS FORM MAY BE USED AS A BASIS FOR LEGAL ACTION.

How did you happen to contact Long & Foster Realtors?

Referred [✓]  By Whom _____  Called on ad [ ]  Which paper [ ] Post  [ ] Sun  [ ] Other  Saw Sign on Property [ ]

Other – please explain briefly: _____

**PURCHASER I:**

Name: Aaron Hansen
Address: 8403 Greenwood Ave #2
Takoma Park, MD. 20912

Phone: 202-230-6065

[ ] Own  [✓] Rent; Lease Expires _____

Employed by: Fathom Creative, Inc
Address: 1606 20th St NW
Washington DC 20007
Occupation: Graphic Designer
Salary: (Gross) $ 65,000   No. of years 1
Overtime _____  Phone: 202-588-8100

If Self-Employed – Gross Income _____
Year to Date Net Income _____

PREVIOUS EMPLOYMENT, if on present job less than two years:
Employed by: Greenfield/Belzer
Address: 19th + N St NW, Washington DC

Occupation: Graphic Designer
Salary: (Gross) $ 70,000   No. of years 1
Reason for leaving: Better Job/opportunity
_____
_____
_____

**PURCHASER II:**

Name: Jessica Hansen
Address: 8403 Greenwood Ave, Apt #2
Takoma Park, MD 20912
Phone: 202-230-6064
Employed by: Self
Address: _____

Occupation: Actress
Salary: (Gross) $ 20 K   No. of years 9
Phone: 202-230-6064

EXTRA EMPLOYMENT OF PURCHASER I OR PURCHASER II, if applicable:
Employed by: _____
Address: _____

Occupation: _____
Salary: (Gross) $ _____ No. of years _____
Phone: _____

Other extra income: (if applicable): _____

Reserve Unit: $ _____  Disability: $ _____
Investments: _____  Remarks: _____
Rental Income: _____
Other: _____





LF022
10/05

| ASSETS: | Type of Account | | LIABILITIES | TOTAL | Monthly Payment |
|---|---|---|---|---|---|

Bank accounts: (Name) (Savings/Checking)   Balance on Deposit

Bank of America (checking) $ 2000°°
          " (savings) $ 14,500°°

Automobile: $ _____ $ _____

Property: $ _____ $ _____
$ _____ $ _____
$ _____ $ _____
$ _____ $ _____

U.S. Savings Bonds: $ _____
Stocks or other Bonds: (Current Value) $ _____
Life Insurance: (Face Value) $ _____
Cash surrender value of insurance $ _____

Payments made to: _____

Other: (Installment   Balance Due   Monthly Payment
accounts, etc.)

Property owned:          Current Value

Address: _____
     Equity: $ _____ $ _____   $ _____ $ _____
Address: _____   $ _____ $ _____
     Equity: $ _____ $ _____   $ _____ $ _____
Address: _____   $ _____ $ _____
     Equity: $ _____ $ _____   $ _____ $ _____

Support payments (Alimony, parents)   $ _____

Household furnishings: (current value) $ _____
Automobile: Yr. 1995 Make Saturn $ _____
Yr. 2000 Make Hyundai  2 payments left $ _____
Other assets: $ _____

Rent Payments   $ _____
Has purchaser declared bankruptcy in past 5 years?   Yes ☐ No ☐

Unusual remarks: _____

What is source of money needed for down payment and settlement charges (bank accounts, bonds, insurance, etc.)   Savings Account

Are there any outstanding judgements, lawsuits or tax liens current:   ☐ Yes   ☐ No
Amount $ _____                                      If yes, use reverse side for details.
Are you aware of any factors or conditions that could adversely affect your ability to obtain a mortgage loan?   ☐ Yes ☐ No   If yes, use reverse side for details.

The foregoing information is true and accurate to the best of my knowledge and belief. Purchaser expressly permits the revelation of the above information to the Seller and Seller's agent only for the purpose of establishing Purchaser's reported ability to consummate this transaction.

I/We acknowledge that I/we have read and understood pages 1 and 2 of this form.

SIGNED: _____          SIGNED: _____

DATE: 2/21/07          DATE: 2/21/07


LF022
10/05

Page 2 of 2



**EXHIBIT C**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AARON HANSEN and | ) |
| | ) |
| JESSICA HANSEN, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) 1:07-cv-01107  PLF - JMF |
| | ) |
| COUNTRYWIDE HOME LOANS, INC. | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

<u>**AFFIDAVIT OF MARI PARSAMYAN**</u>

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) ss. |
| COUNTY OF _____ | ) |

Before me, the undersigned Notary Public in and for the said State and County, came Countrywide Home Loans, Inc. ("Countrywide"), by and through its duly authorized representative Mari Parsamyan, who being duly sworn according to law, does hereby depose and state that the following is true to the best of her knowledge, information and belief:

1.    I am over 18 years of age, and I have personal knowledge of the facts stated in this Affidavit.

2.      My name is Mari Parsamyan, and I am an asset manager for Countrywide.  In this capacity, I market and contract to sell properties that Countrywide has acquired after foreclosure.

3.      Countrywide acquired the real property at issue in this lawsuit, 521 Quintana Place, N.W., Washington, D.C., 20011 (the "Property") after foreclosing on it on January 4, 2007.

4.      I was the Countrywide asset manager responsible for marketing the Property after Countrywide acquired the it, and in February 2007, I entered into a Regional Sales Contract and Real Estate Purchase Addendum on behalf of Countrywide with Plaintiffs in this case, Aaron and Jessica Hansen.

5.      A true and correct copy of the Regional Sales Contract and the Real Estate Purchase Addendum are attached as Exhibits A and B, respectively, to the Statement of Points and Authorities in Support of Countrywide Home Loans, Inc.'s Motion for Summary Judgment.

6.      A Real Estate Purchase Addendum is a standard form contract that Countrywide incorporates into contracts for the sale of real property that Countrywide acquires after foreclosure.

7.      At the time I entered into the Regional Sales Contract and the Real Estate Purchase Addendum on behalf of Countrywide, I was not aware of any problems with title to the Property and had no reason to believe the sale would not close.

FURTHER AFFIANT SAYETH NOT.

COUNTRYWIDE HOME LOANS, INC.

By: _____
       Mari Parsamyan

SWORN TO AND SUBSCRIBED before me
this 10 day of December, 2007.

_____
Notary Public

K. GOULD
Commission # 1739697
Notary Public - California
Ventura County
My Comm. Expires Apr 17, 2011

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AARON HANSEN and | ) |
| | ) |
| JESSICA HANSEN, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   **Civil Action No.:** |
| | )   **1:07-cv-01107 PLF - JMF** |
| | ) |
| COUNTRYWIDE HOME LOANS, INC., | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING**
**COUNTRYWIDE HOME LOANS, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

Upon consideration of Countrywide Home Loan, Inc.'s Motion for Summary Judgment, the Statement of Points and Authorities in support thereof, Plaintiffs' response thereto, and good cause appearing, it is hereby

ORDERED, pursuant to Fed. R. Civ. P. 56(b), that Defendant's Motion for Summary Judgment is granted, that Plaintiffs' complaint be dismissed with prejudice, and that Plaintiffs withdraw their lis pendens on 521 Quintana Place, N.W., Washington, D.C. 20011 within 10 days from the date of this Order.

Dated _____.

_____
PAUL L. FRIEDMAN
United States District Judge

## **PERSONS TO BE SERVED**

Mark B. Bierbower
Dianne M. Keppler
HUNTON & WILLIAMS, LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
(202) 955-1500
(202) 778-2201 (fax)
*Counsel for Defendant Countrywide Home Loans, Inc.*

Scott H. Rome
Andrew J. Kline
LAW OFFICES OF ANDREW J. KLINE
1225 19th Street, N.W.
Washington, D.C. 20036
*Counsel for Plaintiffs Aaron and Jessica Hansen*