IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON HANSEN and                        )
                                        )
JESSICA HANSEN,                         )
                                        )
                                        )
          Plaintiffs,                   )
                                        )
v.                                      )     Civil Action No.:
                                        )     1:07-cv-01107  PLF - JMF
                                        )
COUNTRYWIDE HOME LOANS, INC.,           )
                                        )
                                        )
                                        )
          Defendant.                    )

COUNTRYWIDE HOME LOANS, INC.'S
REPLY MEMORANDUM IN FURTHER SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT

The fundamental facts, which are beyond dispute, are that there was an undisclosed title

defect arising from foreclosure on the real property at issue, 521 Quintana Place, Washington,

DC 20011 (the "Property"), and that defect prevented Defendant Countrywide Home Loans, Inc.

("Countrywide") from subsequently closing on the sale of the Property with Plaintiffs Aaron and

Jessica Hansen (the "Hansens").  The Hansens seek to ignore these basic facts as well as the

clear, bolded terms of the contract which they signed, and they should not be allowed to proceed

with this case.

I.     There Are No Disputable Material Facts

In their Opposition ("Opp. Br."), the Hansens attempt to avoid summary judgment by

manufacturing a laundry list of allegedly disputed facts.  There are only two fact questions

relevant to whether the Court can rule on Countrywide's motion as a matter of law:  (1) did

Countrywide have authority to sell the Property to the Hansens, and (2) did a title defect prevent Countrywide from going to closing?  The answer to both questions is yes, and no amount of discovery will change that.  The remaining questions are questions of law for the Court.

The Hansens do not dispute that they voluntarily entered into the Contract and Addendum to purchase the Property.  Aff. of Jessica Hansen ¶ 3; Aff. of Aaron Hansen ¶ 3.  Nor do they dispute that by the express and obvious terms of the Addendum, the Hansens waived certain rights in the event that Countrywide could not provide clear title to the Property.  While presenting no evidence to the contrary, they assert that Countrywide may not have had title to the Property and that Countrywide did not present evidence of a defect in title with its motion.  *See* Opp. Br. at 16, 5.

> **A.      Countrywide was authorized to sell the Property when it entered the Contract.**

Countrywide was the authorized loan servicer for the Property and was the attorney in fact of the loan's owner, FV-1, a Morgan Stanley entity.  Aff. of Patricia Rubel ("Rubel Aff.") ¶ 4, attached as Ex. D.  As such, it had authority as the agent of FV-1 to sell the property on behalf of FV-1.  *Id.* at 3-4.

> **B.      An issue arose with title at the time of foreclosure.**

Under D.C. law, a lender or lender's agent may foreclose on a property if a mortgagee fails to maintain current payments on the mortgage secured by the property.  *See* D.C. Code § 42-815 (setting forth requirement for foreclosing pursuant to deed of trust, mortgage or other security instrument).  Countrywide, as the loan servicer for FV-1, foreclosed on the Property. *See* Rubel Aff. ¶ 3-4.  However, an issue with respect to the foreclosure itself made the Property's title imperfect.

2

The Notice of Foreclosure stated that the foreclosure was being conducted on behalf of Morgan Stanley Mortgage Capital Inc. *See* Notice of Foreclosure, attached as Countrywide Ex. E. However, the Deed of Appointment of Substitute Trustee, which authorizes the entity conducting the foreclosure sale to do so, stated that the substitute trustee was appointed by FV-1, the Morgan Stanley entity for whom Countrywide was servicing the loan. *See* Deed of Appointment of Substitute Trustee, attached as Countrywide Ex. F; Rubel Aff. ¶ 4. The inconsistency in the loan owner's name on these documents created a chain of title problem in connection with the foreclosure. Moreover, the foreclosure took place on January 4, 2007, but the Deed of Appointment of Substitute Trustee was not recorded until after the foreclosure, on January 18, 2007. *See* Notice of Foreclosure; Deed of Appointment of Substitute Trustee.[1]

Following foreclosure, Countrywide asset manager Mari Parsamyan entered into the Contract and Addendum on behalf of Countrywide to sell the Property to the Hansens, unaware of these issues with foreclosure. Parsamyan Aff. ¶¶ 4, 7. Nate Parks of Colchester Hunt Title and Escrow was the third-party closing agent for the sale. *See* Addendum at 16; Rubel Aff. ¶ 5. In March 2007, Countrywide became aware of a title issue with the foreclosure deed. Rubel Aff. ¶ 6. Although that issue with the foreclosure deed delayed closing, Countrywide expected that issue to be resolved so that the sale would still close. Rubel Aff. ¶ 7.

---

[1] The Court may take judicial notice of public record facts. *See In re Estate of Barfield*, 736 A.2d 991, 996 n.8 (D.C. 1999) ("the trial court is entitled to take judicial notice of matters of public record"). Deeds, notices of foreclosure, and other instruments recorded with the D.C. Recorder of Deeds are public records. *See* D.C. Code § 42-1206 ("All public records which have reference to or in any way relate to real or personal property in the District of Columbia, whether the same be in the office of the Recorder of Deeds or in some other public office in the District of Columbia, shall be open to the public for inspection free of charge.") Such public records qualify as exceptions to the hearsay rule. *See* Federal Rule of Evidence 803(8).

However, in early April 2007, Countrywide learned of another title problem that made title uninsurable. Rubel Aff. ¶ 8; email from Nate Parks dated April 12, 2007, attached to Rubel Aff. ("Parks Email") (stating "This is exactly why the Foreclosure is invalid" and forwarding email from R. Fritts that explained the foreclosure notice was not in compliance with D.C. law). According to First American, which was the title insurer for the transaction, a defect in title arose from the foreclosure notice, and First American would have "little defense" to any challenges to the foreclosure as a result. *See* Parks Email. In other words, title was uninsurable. *See id.*; Rubel Aff. ¶ 8. Based on this, Countrywide cancelled the sales contract. Rubel Aff. ¶ 8.

C.      **Countrywide did not sell the Property to Litton before cancelling the Contract.**

Around this same time, the owner of the mortgage for whom Countrywide was the loan servicer requested that Countrywide release its servicing of the loan because a third party sought to purchase the Property, along with other properties and loans.[2] Rubel Aff. ¶ 9. The Property did not transfer to the third party at that time, however, because the Property was under contract to the Hansens and the third party agreed to let the sale go forward. *Id.* Countrywide's servicing of the loan was not released until after it became clear the sale with the Hansens was not going forward and was cancelled. *Id.* After the Hansens filed suit, Countrywide was able to make title insurable and offered to close on the sale, but the Hansens could not or would not perform.[3]

--------

[2]  The third party's loan servicer was Litton Loan Servicing. Rubel Aff. ¶ 9.

[3]  The Addendum also allows Countrywide to terminate the Contract if "a third party having an interest in the Property (or the loan that was secured by the Property) has requested that the servicing lender, or any other party, release the servicing of or repurchase such loan or the Property." Addendum ¶ 24(c).

**II.    The Undisputed Facts Warrant Summary Judgment in Countrywide's Favor**

While the Hansens would like to cloud this case with alleged disputed facts, there are no genuine issues of material fact for trial, and the Court should rule for Countrywide as a matter of law.

**A.    The Hansens cannot succeed on any claim under the D.C. Consumer Protection Procedures Act (Count One) because Countrywide was unaware of any defect in title when it entered into the Contract.**

The Hansens allege four violations of the D.C. Consumer Protection Procedures Act (the "Act"):  (1) misrepresentation as to a material fact which has a tendency to mislead or failure to state a material fact if such failure tends to mislead, (2) failure to state a material fact if such failure tends to mislead, (3) representation that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have, and (4) making or enforcing unconscionable terms or provisions of sales, specifically including "knowledge by the person at the time of the sale or lease of the inability of the consumer to receive substantial benefits from the property or services sold or leased."  Opp. Br. at 8.

The Hansens attempt to avoid summary judgment by listing nine allegedly disputed facts:

(1)    When, if ever, Countrywide obtained title to the Property;

(2)    Whether Countrywide ever had a colorable claim of title to the Property;

(3)    If Countrywide ever had title to the Property, what event, if any, prevented Countrywide from retaining claim of title to the Property;

(4)    Whether Countrywide, as an entity, was aware, at the time of contracting, that it did not have a colorable claim of title to the Property, or any claim of title to the Property;

5

(5)    Whether Countrywide, as an entity, should have been aware, at the time of contracting, that it did not have a colorable claim of title to the Property, or any claim of title to the Property;

(6)    How Countrywide learned of any alleged defect in title or other impairment on Countrywide's title to the Property, if any;

(7)    Whether Countrywide sold the Property to another purchaser, as represented by representative of Countrywide;

(8)    Whether Countrywide, as the lender, had any duty to the Hansens to further investigate the proper title of Countrywide at the time of contracting; and

(9)    Whether Countrywide willfully failed to obtain title to the Property or failed for reasons within its own control.

Opp. Br. at 16; Rule 56(f) Aff. of Aaron Hansen ¶ 7. However, the affidavits and documents before the Court explain that Countrywide was authorized to sell to the Property; why it was unable to transfer title to the Hansens; when it discovered the defect in title; the fact that the Property was not transferred to a third party prior to closing; that Countrywide was unaware of the title defect at the time of contracting; and that Countrywide did not willfully or for reasons within its own control fail to secure marketable title. The attached Notice of Foreclosure and Deed of Appointment of Substitute Trustee demonstrate the issue with title. *See* Exs. E and F.

None of the alleged disputed facts are relevant to Plaintiffs' claims under the Act because the first three of the four claims listed above deal with representations or misrepresentations. As set forth in its opening Memorandum, the clear terms of the Addendum make no representations about whether the Property's title was good and marketable, and in fact, set forth as an express condition of Countrywide's performance the ability to convey "good and marketable title to the Property insurable by a reputable title company at regular rates." *See* Addendum ¶ 24(b). The Plaintiffs' fourth claim under the Act regarding whether Countrywide knew "at the time of the sale or lease of the inability of the consumer to receive substantial benefits" from the Property is

6

defeated by Mari Parsamyan's unrebutted affidavit, which establishes that Countrywide did not know at the time it entered into the Contract of the title defect.

Plaintiffs' argument that Parsamyan's affidavit is insufficient to establish this fact is not supported by the law. Federal Rule of Civil Procedure 56(e)(1) requires that a supporting affidavit "must be made on personal knowledge . . . and show that the affiant is competent to testify on the matters stated." Ms. Parsamyan is uniquely qualified to attest about Countrywide's knowledge of the Property's title. She was the asset manager responsible for marketing the Property on behalf of Countrywide, and she represented Countrywide when it entered into the Contract and the Addendum. *See* Parsamyan Aff. ¶ 4. Indeed, it is her signatures and initials that appear on the Contract and Addendum on behalf of Countrywide. *See, e.g.,* Contract and Addendum. Therefore, she is the most competent person with personal knowledge at Countrywide to testify about whether Countrywide knew of any title defects at the time of contracting. She is the authorized agent of Countrywide and is authorized to testify on this or is deemed to do so. Certainly, the Hansens would be inclined so to argue if her testimony favored their erroneous assumptions.

Complaining that Parsamyan's affidavit is self serving in that it supports Countrywide's argument does not change the facts that it establishes: uncontroverted evidence that the person personally responsible for marketing and selling the Property and related activity on behalf of Countrywide at the time of contracting had no knowledge of any inability of the Hansens to receive substantial benefits from the Contract. Countrywide was not aware of the Property's title defect at the time of contracting, and so it could not have violated any prohibition under the Act against making or enforcing unconscionable terms or provisions of sales, including knowledge that the Hansens could not receive substantial benefits from the Contract.

7

To defeat a motion for summary judgment, the Hansens must raise "more than a mere scintilla of evidence in [their] favor" and may not simply rely on unsupported assertions, conclusory allegations, or mere suspicions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Hansens repeatedly criticize the lack of evidence propounded by Countrywide, but they only offer unsupported assertions that someone else at Countrywide *could* have had knowledge of something different than Ms. Parsamyan. This is not sufficient to defeat Countrywide's motion. *See* Fed. R. Civ. P. 56(e) (adverse party to a Rule 56 motion for summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading" but "must set forth specific facts showing that there is a genuine issue for trial").

**B.      Countrywide is entitled to judgment on Count Two as a matter of law because there is no breach and the remedies sought are expressly prohibited by the terms of the Addendum.**

It is black letter law that when a contract is clear and unambiguous, a court should interpret the contract terms as a matter of law. *Miller & Long Co., Inc. v. John J. Kirlin, Inc.*, 908 A.2d 1158, 1160 (D.C. 2006). The parol evidence rule bars the introduction of extrinsic evidence to contradict the terms of an unambiguous contract. *See District-Realty Title Ins. Corp. v. Ensmann*, 767 F.2d 1018, 1022 (D.C. Cir. 1985); *Federal Deposit Ins. Corp. v. Interdonato*, 988 F. Supp. 1, 4 (D.D.C. 1997); *Apartment Specialists, Inc. v. Purolator Courier Corp.*, 628 F. Supp. 55, 58 (D.D.C. 1986). The Hansens' response provides no argument or fact that undermines the indisputable facts supporting Countrywide's motion for summary judgment on the breach of contract claim.

The Addendum plainly set forth a condition precedent to Countrywide's performance -- that Countrywide must able to provide "good and marketable title" "insurable by a reputable title

8

company at regular rates." Addendum ¶ 24(b).  Further, the Addendum specifically limited the Hansens' remedies to a return of their deposit if the sale did not close.  Addendum ¶ 1.

First, there is no breach because the condition precedent was not satisfied.  *See* Addendum ¶ 24(b); *see also Aronoff v. Lenkin Co.*, 618 A.2d 669, 676 (D.C. 1992) (under law of conveyancing, parties may commit insurability of real estate title to judgment of designated title insurer and condition the buyer's obligation on vendor's tender of title meeting insurer's approval).  Countrywide foreclosed upon the Property on behalf of its principal FV-I, but unfortunately, learned after contracting that the Property had only imperfect, uninsurable title. *See* Parsamyan Aff. ¶ 7; Rubel Aff. ¶ 8; Parks Email.  It determined that it could not convey good and marketable title from a reputable insurer at regular rates to the Hansens at the time of the scheduled closing.  *See* Rubel Aff. ¶ 8; Parks Email.[4]

Second, even if there was a breach, the Addendum limited the Hansens' remedies to a return of their deposit.  None of the Hansens' arguments change the terms of the Addendum, which is precisely what the Hansens want the Court to do.  They ask the Court to read out of the parties' agreement the limitation on the Hansens' remedy if the sale did not close, contending that the limitation is unenforceable as a matter of common law.  In support of this contention, they point to two cases from the same appellate level state court in Florida.  These cases are inapposite.

---

[4]  While the Hansens would like to raise a fact dispute regarding whether Countrywide sold the Property to Litton, Patricia Rubel's affidavit explains the facts surrounding the release of Countrywide as the loan servicer for the Property. Ruble Aff. ¶ 9.  As set forth in the affidavit, it is an indisputable fact that the Property was not "sold to Litton" before the Contract was cancelled.

*Terraces of Boca Assocs. v. Gladstein*, 543 So.2d 1303 (Fla. Dist. Ct. App. 4th Dist. 1989), involved a seller attempting to enforce contract provisions in response to a breach by the buyers. The buyers breached but wanted their deposit back despite a provision in their contract stating that the seller could retain the deposit in the case of their breach. *Id.* Here, Countrywide is not attempting to prevent the Hansens from obtaining their deposit. In *Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo*, 463 So.2d 437 (Fla. Dist. Ct. App. 4th Dist. 1985), the sellers breached the contract by trying to sell the property at issue to a higher bidder than the buyers. The Florida court ordered specific performance, requiring the seller to convey the property to the buyers. *Ocean Dunes* at 440. Here, there is no breach by Countrywide because, as discussed above, a condition of Countrywide's performance was not satisfied. *See* Addendum ¶ 24(b). Also, Countrywide *offered to provide specific performance* as the Hansens demand in their Complaint, Compl. ¶ 44, but the Hansens subsequently declined their own requested remedy.

In any event, the Contract and Addendum are governed by D.C. law. *See* Contract ¶ 35 ("The interpretation of this Contract will be governed by the laws of the jurisdiction where the Property is located"). Under D.C. law, the limitation on the Hansens' remedies is valid. *See Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 102 (D.D.C. 2004) (in determining whether a contract is unconscionable, what is important is whether plaintiffs had the *opportunity* to read and understand the Agreement before they signed it; that they may not have comprehended the implications of their decision is irrelevant as to whether the agreement is valid); *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965) (emphasizing in its unconscionability analysis whether the contract at issue had important terms

hidden in a maze of fine print or whether the important terms were minimized by deceptive sales practices).

The Hansens do not allege that they did not have the opportunity to read and understand the Addendum before they entered into it; that they were unaware of the limitations; that they failed to understand the limitations; or that the limitations were hidden or minimized in any way. They only contend that Jessica Hansen (but not Aaron Hansen) was a first time homebuyer; they "relied on the representations in and outside of the Contract" by Countrywide; they placed their "faith and trust" in Countrywide; and they "believed" that they had remedies, beyond a "mere return" of their deposit, in the event of a breach by Countrywide. *See* Affidavits of Aaron and Jessica Hansen, Exs. 1 and 2. In other words, their complaint to this Court is that they evidently did not bother to read the bold, all capitalized text on the first page of the Addendum (or the rest of the Addendum) before signing it. They then argue that despite this failure, the Court should set aside the Addendum's limitation of remedies. There is no legal justification for such an extraordinary remedy. *See Pers Travel, Inc. v. Canal Square Assocs.*, 804 A.2d 1108, 1110-11 (D.C. 2002) ("one who signs a contract has a duty to read it and is obligated according to its terms"); *see also* Restatement (Second) of Contracts § 157, cmt. b ("one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms merely by contending that he did not read them"); *Booker*, 315 F. Supp. 2d. at 102 (that party may not have comprehended the implications of their decisions is irrelevant as to whether the agreement is valid).[5]

---

[5] The Hansens ask for this extraordinary remedy after acknowledging that they had the opportunity to confer with counsel about the agreement. *See* Addendum ¶ 41.

11

The Addendum's limitation of remedies is valid and enforceable, and the Court should grant Countrywide's motion for summary judgment on the breach of contract claim as a matter of law.

**C.    Countrywide is entitled to judgment on Count Three as a matter of law because Countrywide made no false statement or omission about the Property's title and because there was no reasonable reliance.**

The Hansens argue that Countrywide "failed to set forth any reason whatsoever for its failure to close, and thus any repeated reliance on a disclaimer for title defects, without the allegation of any facts surrounding title defects, is of no import." Opp. Br. at 21. As discussed above, Countrywide has set forth undisputed facts demonstrating the Property's title defect. The Hansens, on the other hand, have failed to present even a scintilla of evidence in support of their allegations that Countrywide made any misrepresentations about title to the Property. Therefore, the undisputed facts show that Countrywide's actions did not constitute negligent misrepresentation. The Hansens cannot succeed on their claim of negligent misrepresentation.

## CONCLUSION

Because there are no genuine issues of material fact, Countrywide respectfully requests that the Court grant its Motion for Summary Judgment.

Respectfully submitted,

Countrywide Home Loans, Inc.

By_____/s/_____
                    Counsel

Mark B. Bierbower (D.C. Bar #320861)
Dianne M. Keppler (D.C. Bar #468580)
HUNTON & WILLIAMS, LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
(202) 955-1500
(202) 778-2201 (fax)
*Counsel for Defendant Countrywide Home Loans, Inc.*

12

**CERTIFICATE OF SERVICE**

I certify that on this 23rd day of January 2008, I electronically filed the foregoing by electronic mail and with the clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

> Andrew J. Kline, Esq.
> Scott H. Rome, Esq.
> LAW OFFICES OF ANDREW J. KLINE
> 1225 19th Street, N.W.,
> Washington, D.C.  20036
> *Counsel for Plaintiffs*

                                        /s/

> Mark B. Bierbower (D.C. Bar #320861)
> Dianne M. Keppler (D.C. Bar #468580)
> HUNTON & WILLIAMS, LLP
> 1900 K Street, N.W.
> Washington, D.C.  20006-1109
> (202) 955-1500
> (202) 778-2201 (fax)

13

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON HANSEN and | ) |
| | ) |
| JESSICA HANSEN, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No.: |
| | )   1:07-cv-01107  PLF - JMF |
| | ) |
| COUNTRYWIDE HOME LOANS, INC., | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

## AFFIDAVIT OF PATRICIA RUBEL

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) ss. |
| COUNTY OF VENTURA | ) |

Before me, the undersigned Notary Public in and for the said State and County, came Countrywide Home Loans, Inc. ("Countrywide"), by and through its duly authorized representative Patricia Rubel, who being duly sworn according to law, does hereby depose and state that the following is true to the best of her knowledge, information and belief:

1.      I am over 18 years of age, and I have personal knowledge of the facts stated in this Affidavit.

2.      My name is Patricia Rubel, and I am a closing officer for Countrywide. In this capacity, I am responsible for reviewing documents prepared by an outside closer when Countrywide is selling property acquired through foreclosure. Specifically, I confirm the

PAGE 2/4  RCVD AT 1/23/2008 10:51:48 AM [Eastern Standard Time] * SVR:BRIGHTFAX/6 * DNIS:33785 * CSID * DURATION (mm-ss):

accuracy of such items as the property's information, the name of the buyer, whether the vesting of the deed to convey title is correct, and that any payments to be made by Countrywide on the HUD-1 are accurate and authorized by Countrywide.

3.    Countrywide acquires properties through foreclosure, whether Countrywide originated the loan foreclosed upon or served as the loan servicer for another mortgagor and foreclosed on behalf of the mortgagor. When Countrywide is a loan servicer for a third party mortgagor, it manages the third party's loan, sending payment notices, collecting payments, sending delinquency notices, and when necessary authorizing foreclosure and reselling the mortgaged property.

4.    Before the foreclosure on 521 Quintana Place, Washington , DC 20011 (the "Property"), the mortgage on the Property was owned by FV-1, Inc. ("FV-1"). FV-1 is a Morgan Stanley entity, and Countrywide served as the loan servicer for FV-1. As such, Countrywide was authorized to act as the attorney in fact for FV-1, meaning it had the power of attorney to act on behalf of FV-1, including selling the Property following foreclosure.

5.    I received Countrywide's file for the Property on or about March 2, 2007. According to the contract, the scheduled date for closing was March 23, 2007. I worked with Countrywide's outside closer, Nate Parks of Colchester Hunt Title and Escrow, on this sale. Upon receipt of the file, I saw that the foreclosure deed was not recorded and contacted Parks about this. At that time, he told me there was a "notary clause" issue when the foreclosure deed was originally sent for recording, that this issue was being corrected, and the deed would be sent again with the correction.

6.    I knew from Countrywide's records that the foreclosure deed for the Property needed to be vested in the name of FV-1, the granting entity and the entity on whose behalf

2

PAGE 3/4 * RCVD AT 1/22/2008 10:51:48 AM [Eastern Standard Time] * SVR:BRIGHTFAX/6 * DNIS:32765 * CSID : * DURATION (mm-ss):01-42

Countrywide was operating as loan servicer and for whom Countrywide had authority to close on the sale. I learned at the end of March, however, that that the foreclosure deed was being recorded in the name of Morgan Stanley. At that time, I started trying to determine if someone from Morgan Stanley could sign a deed in favor of FV-I to clear the chain of title and then have a deed prepared from FV-I to the buyer. I contacted Morgan Stanley to request that it sign the deed over to FV-I, and Morgan Stanley did so.

7.     By this time, the scheduled closing date had already passed. Because I understood that the deed from Morgan Stanley to FV-I would have addressed the title issue related to the foreclosure deed being put in Morgan Stanley's name, however, I still expected the sale to close.

8.     In early April 2007, I learned from Parks that there was a second title issue, one that made Property's title uninsurable. Based on this and after conferring with the Countrywide asset manager for the Property, I cancelled the contract on or about April 11, 2007 based on this title issue. On April 12, 2007, I received the email attached to this affidavit from Parks. It confirmed my understanding that the Property's title was not insurable, and that the property would have to be re-foreclosed upon to correct the title issue.

9.     Separately and during this same timeframe, Countrywide's loan servicing for the Property was to be released because a third party sought to purchase the Property as part of a larger purchase of other loans and properties. The third party's loan servicer was Litton Loan Servicing, Inc. However, the third party agreed not to release Countrywide's servicing of the loan so that the sale to the Hansens could go forward. Countrywide's servicing of the loan was, therefore, not released until after it became clear the sale to the Hansens was not going forward and was cancelled. The third party's request for the loan was not the reason the sales contract

3

PAGE 4/4 * RCVD AT 1/23/2008 10:54:58 AM [Eastern Standard Time] * SVR:BRIGHTFAX/6 * DNIS:3728 * CSID: * DURATION (mm-ss):01-42

was cancelled.  Rather, it was cancelled due to the issue with title.

**FURTHER AFFIANT SAYETH NOT.**

COUNTRYWIDE HOME LOANS, INC.

By: _Patricia Rubel_
        Patricia Rubel

SWORN TO AND SUBSCRIBED before me

this 22 day of January 2008.

_signature_
Notary Public

JENNIFER PERRY
Commission # 1771264
Notary Public • California
Ventura County
My Comm. Expires Oct 1, 2011

4

# ATTACHMENT TO
# AFFIDAVIT OF
# PATRICIA RUBEL



"Nate Parks"
&lt;Nate@colchesterhunt.com&gt;

04/12/2007 07:36 AM

Please respond to
"Nate Parks"
&lt;Nate@colchesterhunt.com&gt;

To  &lt;Maurice.sams@bgw-llc.com&gt;

cc  &lt;Joy_Katler-Ciancio@countrywide.com&gt;,
&lt;Patricia_Rubel@Countrywide.Com&gt;

bcc

Subject  Fw: Fw: Loan# 73073619 ruff

See below. This is exactly why the Foreclosure is invalid.

Nathaniel Parks
Head of Title Operations
Colchester Hunt Title & Escrow
5618-C Ox Rd
Fairfax Station, VA 22039
703-426-4966(O) ext 12
703-426-4967(F)
----- Original Message -----
**From:** Richard L. Fritts
**To:** Nate Parks
**Sent:** Thursday, April 12, 2007 10:35 AM
**Subject:** Re: Fw: Loan# 73073619 ruff

First American has said the following:

1. DC Statutes require that, in conducting a foreclosure sale, the
Notice of Foreclosure that is recorded in the Land Records and provided
to the owner of the property must be given by the then trustees under
the Deed of Trust being foreclosed and state the correct lender who is
foreclosing. The Notice of Foreclosure was dated and recorded December
1, 2006, was given by Berman, Geesing, and stated that the lender was
Morgan Stanley Mortgage Capital, Inc. The Deed of Appointment of
Substitute Trustees which appointed the attorneys at Berman, Geesing as
substitute trustees under the Deed of Trust was not dated or executed
until January 1, 2007 (1 month after the notice was given), and we are
informed that the lender was in fact FV-1, Inc. (the lender who executed
the Deed of Appointment of Substitute Trustees on January 1, 2007).
Thus, this was a foreclosure notice that was not in compliance with DC Law.

2. DC Statutes require that the foreclosing trustees selling the
property be the actual trustees under the Deed of Trust. The
foreclosure sale occurred January 4, 2007. While the Deed of
Appointment of Substitute Trustees was supposedly executed on New Years
Day (January 1, 2007), it was not recorded until January 18, 2007 (2
weeks after the foreclosure sale). Thus, the foreclosure sale appears
to have been made by trustees who were not at that time recorded

trustees under the Deed of Trust.

For the foregoing reasons, should the prior owner of the property seek to have the foreclosure sale overturned because it was not conducted in compliance with the DC statutes, First American has concluded that they would have little defense to such an action -- the prior owner would indeed be correct.  First American has concluded that there are 2 ways to fix these problems: (1) have the former owner of the property join in the Deed conveying the property (thus giving up any rights the former owner may have to file an action to overturn the foreclosure); or (2) reforeclose and conduct the foreclosure sale in compliance with DC statutes.

Dick Fritts

--
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Richard L. Fritts, Esq.
Paragon Title & Escrow Company
7415 Arlington Road
Bethesda, MD 20814
Tel: 301-986-1114
Fax: 301-652-6742
Fax: 301-907-2858
Email: dfritts@paragontitle.com
Website:  http://www.paragontitle.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT E

GOVERNMENT OF THE DISTRICT OF COLUMBIA
**DEPARTMENT OF FINANCE AND REVENUE**



RECORDER OF DEEDS                                                515 "D" STREET, N.W.
                                                                 WASHINGTON, DC 20001

NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
OR CONDOMINIUM UNIT

(Pursuant to Public Law 90-566, approved October 12, 1968)

TO:  (List Name and address of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

Lolita B. Ruff
521 Quintana Pl., NW, Washington, DC 20011; 10300 Marloro Woods Dr., Cheltenham, MD 20623
(240) 375-1970

Occupant
521 Quintana Pl., NW, Washington, DC 20011

FROM: Bierman, Geesing & Ward, LLC _____        PHONE: 301-961-6555 ____

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD AT THE OFFICE OF Alex Cooper Auctioneers, Inc., 5301 Wisconsin Ave., N.W., Suite 750, Washington, DC 20015 ON **January 4, 2007** at **10:54 AM**, THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCEED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deeds on June 30, 2006

Liber: _____  Folio: _____        Instrument No. 87056 _____

Maker(s) of Note secured by the instrument:
    Lolita B. Ruff
    521 Quintana Pl., NW, Washington, DC 20011; 10300 Marloro Woods Dr., Cheltenham, MD 20623     ; (240) 375-1970

Description of Property: _____ dwelling _____
                         (two-story brick, dwelling, apartment building, vacant lot, condominium unit, etc.)

Address: _521 Quintana Pl., NW, Washington, DC 20011 _____

Lot & Square No. _266_ / 3200_____    or Parcel No:_____

Holder of the Note: Morgan Stanley Mortgage Capital Inc.; (800) 262-4218 _____
          c/o  Bierman, Geesing & Ward, LLC, Suite 200
          4520 East West Highway Bethesda, MD  20814, 301-961-6555

Balance owed on the note: $394,528.25 approximately as of 11/17/2006, plus all attorney's fees, foreclosure costs, and all accruals, under the terms of the Deed of Trust and Note, through the date of tender.

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 "Right to Cure a Residential Mortgage Foreclosure Default Act of 1984" $13,348.88 approximately as of 11/17/2006 plus attorney's fees, foreclosure costs, and all accruals, under the terms of the Deed of Trust and Note, through the date of tender.

Person to contact to stop foreclosure sale: Howard N. Bierman, Esq., Bierman, Geesing & Ward, LLC, Suite 200, 4520 East West Highway, Bethesda, MD  20814 _____301-961-6555_____
        (Address)                                            (Phone Number)
                              (over)

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
••••••••••

I, hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on <u>December 1, 2006</u>; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

<u>December 1, 2006</u>                          _Jennifer Neilson_____, agent
(Date)                                    (Signature of the Noteholder or his agent)

I, <u>Jody S. Krieger</u>, a Notary Public in and for <u>the County of Montgomery, State of</u>

<u>Maryland</u>, DO HEREBY CERTIFY THAT <u>Jennifer Neilson</u> party/ies to this Notice of

Foreclosure Sale bearing date on the <u>1st</u> day of <u>December, 2006</u> personally

appeared before me and executed the said Notice of Foreclosure Sale and

acknowledged the same to be his/her/their act and deed.

Given under my hand and seal this the <u>1st</u> day of <u>December, 2006</u>.

_____
Notary Public

My commission expires <u>12/01/09</u>

ROD form ADM/04
Revised  1/86

AFTER RECORDING RETURN TO:                    JODY S. KRIEGER
Bierman, Geesing & Ward, LLC                    NOTARY PUBLIC
4520 East West Highway                       COUNTY OF MONTGOMERY
Suite 200                                    STATE OF MARYLAND
Bethesda, MD  20814

Alex Cooper Auctioneers, Inc.
Folio No. W-6988







# EXHIBIT F



LT1-5-2007008322-1

AFTER RECORDING PLEASE RETURN TO:
Bierman, Geesing & Ward, LLC
4520 East West Highway, Suite 200
Bethesda, MD 20814

BGW#: 36127
Loan#: 73073Aiv

## DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEE

THIS DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEE, is made this __1ST__ day of __January__ 2007, by and among FV-1, INC. ("FV-1, INC."), party of the first part, and HOWARD N. BIERMAN, JACOB GEESING AND CARRIE M. WARD, 4520 East West Highway, Suite 200, Bethesda, MD 20814, any of whom may act independently of the other (collectively, 'Substitute Trustees'), party of the second part. Each of the Substitute Trustees is licensed to practice law in the District of Columbia, and are members in good standing of the District of Columbia Bar.

WHEREAS, Lolita B. Ruff by Deed of Trust dated June 23, 2006, and recorded among the Land Records of the District of Columbia on June 30, 2006 as on __6-30-06__ bearing Instrument No. 2006087056, did grant and convey certain real estate known as:

LOT NUMBERED TWO HUNDRED SIXTY-SIX (0266) IN SQUARE NUMBERED THIRTY-TWO HUNDRED (3200) IN DOROTHY A. POWELL'S SUBDIVISION OF LOTS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 100 AT FOLIO 98.

Known as: 521 Quintana Place North West, Washington, DC 20011

in trust, to secure to WMC Mortgage Corp., payment of a note ("Note") of even date therewith in the original principal amount of $380,000.00; and

WHEREAS, said Deed of Trust provides that the holder of the Note shall have the power and authority to appoint, by an instrument duly executed, acknowledged and recorded among the Land Records aforesaid, substitute trustee(s) in the place and stead of the trustee(s) named therein; and

WHEREAS, the party of the first part is the owner and holder of the note secured by said Deed of Trust.

NOW, THEREFORE WITNESSETH, in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration, the party of the first part by the execution and delivery of these presents, hereby appoints Howard N. Bierman, Jacob Geesing and Carrie M. Ward, as substitute trustees under the said Deed of Trust in the place and stead of the trustee or trustees originally named therein, or in place of any other trustee or trustees who have heretofore been substituted for the originally named trustee or trustees, the said Substitute Trustees being vested with all of the right, title and interest and clothed with all the rights, powers and privileges of the trustee or trustees originally named in said Deed of Trust.

# 8322

1/18/07

00:08 FAX 2025476708                                                                    ☑011

IN WITNESS WHEREOF, FV-1, INC. has caused these presents to be executed the day hereinabove first written by Countrywide Home Loans, Inc., its authorized Servicing Agent, by ___JILL BALENTINE, SR. VICE PRESIDENT___, which individual the said FV-1, INC. has appointed as the party with proper authority so to act for the purposes contained herein.

FV-1, Inc.
By: COUNTRYWIDE HOME LOANS, INC.

Name: JILL BALENTINE, SR. VICE PRESIDENT
Title:      SR. VICE PRESIDENT

STATE OP TEXAS        **TEXAS**      )
COUNTY OF COLLIN   **COLLIN**    ) ss.

I, ___JORGE VARGAS___, a Notary Public in and for the State and County aforesaid, do hereby certify that ___Jill Balentine___, ___Sr. V.P.___ of COUNTRYWIDE HOME LOANS, INC., servicer/agent for FV-1, INC., personally appeared before me in the jurisdiction aforesaid and executed the foregoing Deed of Appointment of Substitute Trustee hereto annexed bearing the date of _____, 2007, and being duly sworn, he/she stated that he/she has lawful authority to execute said instrument, and he/she acknowledged the same to be his/her willful act and deed and that of the said party of the first part.

Given under my hand and seal this _1ST_ day of _January_, 2007.

Notary Public

My Commission Expires:

JORGE VARGAS
My Commission Expires
May 6, 2010

RGW# 38177

☑012

Party of the first part:

FV-I, Inc.
c/o Countrywide Home Loans, Inc.
7105 Corporate Drive, Mail Stop PTX-C-35
Plano, TX  75024

Party of the second part:

Howard N. Bierman, Substitute Trustee
Jacob Geesing, Substitute Trustee
Carrie M. Ward, Substitute Trustee
Ralph J. DiPietro, Substitute Trustee
4520 East West Highway, Suite 200
Bethesda, MD 20814

Doc# 2007006322 Fees:$33.00
01/18/2007   3:02PM Pages 3
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING            $      27.00
SURCHARGE            $       6.00